IN THE FEDERAL DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| LAITH SAUD, | |
| Plaintiff, | |
| v. | Case No.: 19-cv-3945 |
| DEPAUL UNIVERSITY, KAREN TAMBURRO, and MARLA MORGEN | Hon. Judge Robert M. Dow, Jr. |
| Defendants. | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MOTION TO STRIKE**

### 1. Plaintiff's Response to Defendants' Statement of Relevant Facts

It is necessary to directly address certain facts raised by Defendants that were either mischaracterizations of the facts alleged in Plaintiff's Amended Complaint, or which appear to be facts alleged by Defendants outside of the pleadings. Defendants also blatantly mischaracterize the statements in Plaintiff's Affirmative Defenses. Def. Mot. Dismiss, Ex 1, ECF No. 20-1, p.6-7, ¶¶ 2-8. The first was that "following the drink after class, [Plaintiff] and the Former Student engaged in a consensual sexual relationship." Def. Mem., p. 3. Plaintiff proved at trial that this did not occur, and this claim by the former student was false. Pl. Am. Compl., ¶ 67. Defendants also attempt to base Tamburro's second Title IX report on Plaintiff's affirmative pleadings in the underlying case. Def. Mem. p. 3. Defendants then (astonishingly) imply the Title IX report was the reason DePaul withdrew the offer to adjunct, when the offer to adjunct was withdrawn 3 months prior to Tamburro issuing her second report (Pl. Am. Compl. ¶ 41, 70), and prior to Plaintiff even having filed his affirmative defense (Def. Mot. Dismiss, Ex. 1). Plaintiff also never alleges, and in fact did not, "refuse to participate in any resolution discussions." The Plaintiff earnestly participated in said discussions, but the Defendants excluded him from the discussion when he expressed disagreement with the terms Defendants imposed on him. Pl. Am. Compl., ¶ 62. These facts as characterized by Defendants are either outside of the pleadings or patent misrepresentations of the pleadings and their own offered exhibits.

### 2. Legal Standard

A motion to dismiss tests the sufficiency of a complaint. *Collins v. Bd. of Educ.*, 792 F. Supp. 2d 992, 998 (N.D. Ill. 2011) (citing *Gibson v. City of Chicago*, 910 F. 2d 1510, 1520 (7th Cir. 1990). The Court must accept as true all of the well-pleaded facts alleged by the plaintiff

and draw all reasonable inferences in favor of the plaintiff. *Id.* The factual allegations in the complaint must be sufficient to raise the possibility of relief above the speculative level, assuming that all of the allegations in the complaint are true. *Id.*

### 3. Defendants acted under color of law

Generally, a plaintiff may not sue a private university under § 1983 because the statute does not protect individuals from the conduct of purely private actors. *Collins v. Northwestern Univ.*, 164 F. Supp. 3d 1071, 1076 (N.D. Ill. 2016). In considering whether a private entity acted under the color of law, the Court must consider the totality of the circumstances. *Collins v. Northwestern*, 164 F. Supp. 3d, at 1077. Private actors may become state actors "in several ways, including when the state delegates a public function to a private entity or when the state 'effectively directs or controls the actions of the private party such that the state can be held responsible for the private party's decision." *Id.*, at 1076.

Plaintiff alleges several facts in support of his claim that Defendants acted under the color of law. *See* Pl. Am. Compl. ¶¶ 73-76. Among these facts is that DePaul participates in a Dual Admission Partnership Program with the City of Chicago Community Colleges, shares facilities with the city colleges, has received taxpayer funds to expand its campus facilities, and provides its campus with security through the Chicago Police Department. *Id.*, ¶¶ 75-76. It also receives grants and financial assistance from the state, requiring it to report to the state, including reporting on steps the university takes to address allegations of sexual misconduct. *Id.*, ¶¶ 73-74. Considering the totality of the circumstances and drawing inferences in the light most favorable to Plaintiff, Defendants' motion should be denied as to the § 1983 claim.

### 4. Plaintiff has pled a § 1981 claim[1]

Plaintiff states a claim for relief under § 1981. A plaintiff in a § 1981 case need only prove that membership in a protected class was a motivating factor in the employment decision, not that it was the sole, or even the "but for" factor. *Boyd v. Ill. State Police*, 384 F.3d 888, 985 (7th Cir. 2004). Plaintiff is a member of a protected class, he excelled at his work, and quite importantly, he has a comparator. Pl. Am. Compl., ¶ 98. Plaintiff was not the only person in his department to face the elimination of the Visiting Assistant Professor ("VAP") position, or to be offered a position to adjunct thereafter. *Id.* Both he and his comparator were invited to request Enhanced Pay. *Id.* Plaintiff's comparator went on to adjunct, while Plaintiff was told there was no room in the budget for him. *Id.;* see also *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (establishing prima facie elements for discrimination); *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 940 (7th Cir. 1996) (noting Title VII and § 1981 are essentially identical in the methods of proof and elements of the case). Plaintiff was even warned by his supervisor that DePaul will discriminate against him because of his origins. Pl. Am. Compl., ¶ 25.

### 5. Plaintiff's Title IX claim is not preempted by Title VII[2]

Title VII does not preempt Plaintiff's Title IX claim. DePaul cites two cases to support its argument that preemption applies: *Waid v. Merrill*, a Seventh Circuit decision from 1996, and *Ludlow v. Northwestern*, a 2015 district court case from the Northern District of Illinois. *Waid v. Merrill Area Pub. Sch.*, 91 F.3d 857 (7th Cir. 1996); *Ludlow v. Northwestern Univ.*, 125 F. Supp. 3d 783 (N.D. Ill. 2015). Both of these cases are mischaracterized and misapplied.

---

[1] In a footnote, DePaul also tries to argue Plaintiff's § 1981 claim fails because he refers to himself as "Arab American" and of "Arab heritage". Def. Mem., p. 9, fn 2. The argument should be disregarded, as § 1981 has been interpreted to include U.S. citizens of Arab descent. *St. Francis College v. Al-Khazraji*, 481 U.S. 604 (1987).

[2] In a footnote, Defendants argue that Title IX does not permit claims against individuals. Def. Mem., p. 6 ,fn 1. Plaintiff has not asserted Title IX liability against Morgen or Tamburro; the argument is therefore moot.

DePaul seems to argue that simply because Plaintiff was a former employee, Title VII preempts any claim he can make under Title IX. This basic construction reflects an incorrect reading of both *Waid* and *Ludlow* and would conflict with the Supreme Court, which instructs courts to apply Title IX broadly. For example, in *Jackson v. Birmingham*, the Supreme Court allowed a school teacher to bring a retaliation claim under Title IX. *Jackson v. Birmingham Bd. Of Educ.*, 544 U.S. 167, 172 (2005). The schoolteacher was given poor evaluations and removed as the girls' basketball coach following his complaint about discriminatory funding in girls' sports. *Jackson*, at 171-172. *Jackson* is one of a number of Supreme Court decisions that have interpreted Title IX broadly to address various forms of gender discrimination in educational institutions. *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 514 (1982) (holding Title IX encompassed a prohibition on employment discrimination in educational institutions receiving federal funding); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 709 (1979) (holding Title IX conferred a private right of action for individual victims of discrimination); *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 256 (2009) (holding Title IX did not preclude a § 1983 claim, partially reversing the 7th Circuit decision in *Waid*, supra. The case did not involve an employee, and therefore the Supreme Court did not address the issue of Title VII preemption).

Even applying *Waid*, Title VII does not categorically preempt an employee of an educational institution to bring a private right of action through Title IX just by virtue of their status as an employee. In *Waid*, the Seventh Circuit reviewed the case of a teacher who had sought and been denied a full-time teaching position, and who had sought and won a state administrative agency claim for sex discrimination. *Waid*, 91 F. 3d., at 860. Following her victory in the state forum, the plaintiff raised federal claims under Title IX and § 1983 for

4

intentional discrimination. *Id.* The Court considered the issue of whether Title VII preempted all of Waid's claims, **and held that it did not**. *Id.* at 862. The Court stated:

> We must next consider whether Title VII's remedial mechanisms preempted *all* claims against MAPS under Title IX and *all* claims against Wedul and Beottcher under § 1983. The district court seemed to presume that they did. As we have noted, Title VII did preempt some of those claims, specifically any claim for equitable relief. But Waid had a claim that she was the victim of *intentional* discrimination, and we have previously held that Title VII does not preempt a cause of action for intentional discrimination in violation of the Constitution.

*Id.* (emphasis original). The *Waid* Court reversed dismissal of the plaintiff's Title IX claim and remanded it back to the district court.

The court in *Ludlow,* recognizing the Supreme Court ruling in *Jackson* allowed employees to bring private right of action suits via Title IX and weighing the Supreme Court's holding with *Waid*, concluded that while Title VII preempted "employment discrimination" claims under Title IX, Title VII would not preempt a claim brought by an employee for intentional discrimination that was not a claim of an adverse employment action. *Ludlow*, 125 F. Supp. 3d, at 788; see also *Ludlow v. Northwestern Univ.*, 79 F. Supp. 3d 824, 834-35 (N.D. Ill. 2015 (prior decision in the same case, holding plaintiff's Title IX claim was not preempted by Title VII so long as plaintiff was not asserting an adverse employment action, but injuries beyond employment action). The court ultimately dismissed Ludlow's Title IX claim because he only pled adverse employment action in his complaint. *Ludlow*, 125 F. Supp. 3d, at 791.

Thus, even applying preemption as described by the courts in *Waid* and *Ludlow*, Plaintiff's claim is not preempted by Title VII. Plaintiff does not allege his severance from DePaul was tied to the Title IX investigation. His severance is the basis of his § 1981 claim. Pl. Am. Compl., ¶¶ 97-99. Rather, Plaintiff alleges that DePaul intentionally discriminated against him in violation of his constitutional rights. Plaintiff points to some of the following in support:

5

DePaul ignored his complaint of misconduct reported to Tamburro (*Id.*, ¶ 2, 27.); DePaul adversely changed a credibility finding against him while having never spoken to his accuser and having no new evidence (*Id.*, 2, 42); DePaul issued penalties against Plaintiff, including barring him from future employment and participation in any events sponsored or co-sponsored by DePaul (*Id.*, ¶ 44). DePaul also later exacted another punishment against Plaintiff; after it had been dismissed from the lawsuit, it published an article, identifying Plaintiff with the former student's accusations of sexual assault and professional misconduct, without rebuttal and knowing that at least some of what it was reporting was false. *Id.*, ¶¶ 48-60. DePaul was responsible for the publication because it exercised direction and control over the publication's content and timing. *Id.*, ¶¶ 50, 54, 56, 60. Title VII is not designed to address all of the claims raised by Plaintiff, and therefore does not preempt his Title IX claim.

### 6. Plaintiff has pled sufficient facts to establish a Title IX claim

Plaintiff states a claim for relief under Title IX. As a first matter, DePaul mischaracterizes Plaintiff's pleadings as only alleging an erroneous outcome. This reading ignores the allegations clearly stated in Plaintiff's Amended Complaint. More importantly, the Seventh Circuit has rejected the need to superimpose doctrinal tests that identify general bias in the context of university discipline in the Title IX context. *Doe v. Purdue Univ.*, 928 F. 3d 652, 667 (7th Cir. 2019). In *Doe*, the Court identified at least four categories of bias in the Title IX framework identified by other circuits: (1) erroneous outcome; (2) selective enforcement; (3) deliberate indifference; and (4) archaic assumptions. *Id.* But, the Court noted, these categories simply describe ways in which a plaintiff might show that sex was a motivating factor in a university's decision to discipline. *Id.* "We prefer to ask the question more directly: do the

6

alleged facts, if true, raise a plausible inference that the university discriminated against [the plaintiff] 'on the basis of sex'?" *Id.*, 667-68.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a). Plaintiff has undeniably alleged he has been excluded from participation in, denied the benefits of and subjected to discrimination in an educational program or activity because of his sex. His constitutional rights were violated during the Title IX investigation. Plaintiff was barred from future employment and from participation in any event sponsored or cosponsored by DePaul. Later, after DePaul was dismissed from the lawsuit, it imposed another penalty on Plaintiff when it published an article naming him, repeating allegations it knew were false, publicly branding him. All of this occurred, at least in part, because Plaintiff is male.

DePaul likens Plaintiff's case to *Ludlow*, but apart from the fact that Ludlow and Plaintiff both taught at their respective universities, the two cases are quite different. For starters, both parties in *Ludlow* participated in the process, and that process was prompted by his accuser. Ludlow's Title IX claim alleged the investigation was biased against him because of his gender; *i.e.* erroneous outcome and selective enforcement. *Ludlow*, 125 F. Supp. 3d., at 791. In reviewing his claim, the court held that Ludlow had not pled sufficient allegations to allow the court to infer a causal connection between his treatment and gender bias "and raise the possibility of relief under Title IX above the speculative level." *Id.* at 792. At best, Ludlow was alleging bias in favor of the victim, but not gender bias. *Id.*

DePaul provided no comparable process to Plaintiff. DePaul made an adverse credibility determination when, during the second phase of the Title IX investigation, it neither spoke with

7

Plaintiff nor his accuser (and never spoke to his accuser at all). Pl. Am. Compl., ¶ 94. After first clearing Plaintiff of any wrongdoing in its initial Title IX investigation, DePaul, through Tamburro, contrived a false Title IX report. *Id.*, ¶ 42. Plaintiff can show this was not simply victim bias, because he also made a complaint of sexual misconduct directly to Tamburro, and Tamburro never responded to it. *Id.*, ¶ 94. Plaintiff has further pointed to a petition that was sent to Tamburro and other administrators, which made comments regarding his gender, to support an inference of gender discrimination. *Id.*, ¶ 33. Defendant's argument that Plaintiff's admission to a relationship somehow substantiates the second Title IX finding is also flawed, as DePaul does not prohibit such relationships and Tamburro was informed of the relationship during the first phase of her investigation, in which she cleared him of any wrongdoing. *Id.*, ¶¶ 26, 29, 30.

Taken together, these facts more closely resemble the fact pattern in *Doe v. Purdue University*, a recent Seventh Circuit decision. *Doe v. Purdue Univ.*, 928 F. 3d 652, 669 (7th Cir. 2019). In *Doe*, the Court considered the sort of facts that could support an inference of gender discrimination in a Title IX claim. In reaching its decision to reverse and remand the district court's dismissal of Doe's claim, the Court considered that the university made an adverse credibility determination against Doe and in favor of Jane, when it never heard directly from Jane. *Id.* The Court considered the credibility determination "perplexing, given that [the defendant] never talked to Jane. Indeed, Jane did not even submit a statement in her own words to the Advisory Committee." *Id.* The Court noted: "It is plausible that [defendant] and her advisors chose to believe Jane because she is a woman and to disbelieve John because he is a man." *Id.* The Court further noted that the plausibility of that inference was strengthened by an article posted by the advocacy group that interceded on behalf of Doe's accuser, which disparaged men. *Id.* The article "could be understood to blame men as a class for the problem of

8

campus sexual assault rather than the individuals who commit sexual assault." *Id.* Taking the allegations together, the Seventh Circuit concluded Doe's allegations raised a plausible inference that Title IX was violated. *Id.*, at 670. These facts closely resemble the facts alleged by Plaintiff. Accordingly, this Court should also hold Plaintiff states a claim for Title IX gender discrimination.

### 7. DePaul had a duty to defend Plaintiff

The duty to defend is determined by the allegations in a complaint. *New Hampshire Ins. Co. v. Patrick Cadillac Co.*, 1990 U.S. Dist. LEXIS 6476, * 2 (N.D. Ill. 1990) (citations omitted). To ascertain whether the duty is triggered, the court would look to the allegations in the underlying complaint, compare the allegations to the relevant coverage provisions and if the facts alleged fall within, or *potentially* within, the coverage, then the duty to defend is triggered. *Malaker v. Cincinnati Ins. Co.*, 2011 U.S. Dist. LEXIS 37768, * 19 (N.D. Ill. 2011) (emphasis added). The Seventh Circuit has recognized instances that there was no duty to defend only where "there wasn't even arguably coverage of … liability." *Id.*, at *20 (quoting *Guaranty Bank v. Chubb Corp.*, 538 F.3d 587, 593 (7th Cir. 2008). The former student filed a complaint alleging DePaul negligently hired and employed Plaintiff. The former student also alleged some of the conduct occurred at the DePaul campus and that Plaintiff used his authority as her instructor. The former student alleged she was *incapable* of consent by virtue of the fact that Plaintiff was an instructor and she was a student. *Id.* ¶ 35, 69. It does not matter that the former student was not able to substantiate any of her claims, what matters is that what she alleged trigged DePaul's duty to defend. The duty is triggered even if not all of the claims alleged in the complaint would trigger the duty.

9

DePaul's reliance on *Deloney v. Board of Educ.* is flawed. *Delony v. Board of Educ.*, 281 Ill. App. 3d 775 (Ill. App. 1st Dist., 1996). In that case, the conduct alleged was criminal sexual abuse of a minor; there was no theory of liability proffered by the accuser but an intentional tort. In Plaintiff's case, the former student was in her mid-twenties and the relationship violated no policy of DePaul (*Id.*, ¶ 30). There was no law or school policy that the relationship violated. The former student's claims were broad enough such that even Plaintiff's unintentional conduct was alleged to have constituted a violation. Because part of the allegations made by the former student involved unintentional conduct, the duty to defend was triggered. DePaul must acknowledge that they saw a potential that the duty was triggered, as they began defending Plaintiff. DePaul continued to defend Plaintiff, until he protested terms being imposed on him, after DePaul had been dismissed from the complaint.

Moreover, the Illinois Supreme Court has held that courts may, "under certain circumstances, look beyond the underlying complaint in order to determine an insurer's duty to defend." *Id.*, *21 (quoting *Pekin Ins. Co. v. Wilson*, 237 Ill. 2d 446 (Ill. 2010). If the scope of the duty to defend is ambiguous, further proceedings are required. *Dribeck Importers, Inc. v. G. Heilman Brewing Co.*, 883 F. 2d 569, 574 (N.D. Ill. 1989). Reading Plaintiff's Amended Complaint in the light most favorable to him, DePaul owed a duty to defend him both because the former student's allegations potentially fell within the scope of Plaintiff's employment and because DePaul's intent in taking up the duty, based on their actions, was not entirely based on the bylaws.

Further, DePaul and Morgen as its agent, owed fiduciary duties to Plaintiff while it took up the duty to defend. In order to recover for a breach of fiduciary duty in Illinois, a plaintiff must prove (1) existence of a fiduciary duty; (2) breach of that duty; and (3) injury as the

10

proximate cause of that injury. *Malaker,* at *8 (N.D. Ill. 2011). Fiduciary duties arise under the duty to defend, including the duty to consider the insured's interest. *Id.*, at *9. As Plaintiff's Amended Complaint alleges, DePaul and Morgen violated those duties when they pursued DePaul's interests at Plaintiff's expense, while at the same time taking up the duty to defend him.

### 8. Plaintiff has pled material terms to form an employment contract, and the statute of frauds does not bar his claim

Plaintiff has pled sufficient facts to support a claim for breach of employment contract. Following elimination of the VAP position, DePaul offered to have Plaintiff teach as an adjunct for the Religious Studies department. Plaintiff's 12 previous years at DePaul, excellent record with the Religious Studies department and the fact that his classes were in popular demand, lend reasonable inference that he would be assigned to teach the same classes he had always taught. Pl. Am. Compl., ¶ 11, 17. The terms were clear: Plaintiff would teach his courses in Religious Studies, he would be paid a minimum of $4,800 per course. *Id.* The contract was limited in terms of timeframe as well, as an adjunct contract is renewed each academic Quarter. *Id.*, ¶ 21. Plaintiff has pled all of the elements of a breach of contract claim. *Fednav Int'l Ltd. V. Cont'l Ins. Co.*, 624 F. 3d 834, 839 (7th Cir. 2010). Defendant contends that the statute of frauds bars Plaintiff's employment claim because his *last position* at DePaul, VAP, was a one-year contract. That point is entirely irrelevant. An adjunct, per DePaul's own policies, is a limited-term contract that covers only the duration of the academic quarter in which the course is taught. Pl. Am. Compl. ¶ 21. The statute of frauds, therefore, does not apply.

### 9. Plaintiff has pled sufficient facts to support his promissory estoppel claim

Plaintiff states a claim for promissory estoppel. To state claim, a plaintiff must plead (1) defendant made an unambiguous promise to plaintiff; (2) plaintiff relied on such promise; (3) plaintiff's reliance was expected and foreseeable by defendants; and (4) plaintiff relied on the

promise to his detriment. *Firestone Fin. Corp. v. Meyer*, 797 F.3d 833, 828 (7th Cir. 2015). Plaintiff has pled that his department chair invited him to propose bonus pay on the basis of "Enhanced Pay" – a program commonly used for senior adjunct faculty at DePaul. Pl. Am. Compl., ¶ 19. The chair told Plaintiff that he would solicit the proposed amount from the dean of the college. *Id.* Plaintiff reasonably relied on this representation and sent his department chair a request proposing an amount under Enhanced Pay. *Id.*, ¶ 20. Plaintiff also did not make Enhanced Pay a condition of his employment and he did not reject the $4,800 per course base pay provided to adjunct instructors. *Id.* His reliance on the chair's promise that he could request Enhanced Pay and that Enhanced Pay would be "solicited" from the dean, was entirely reasonable and foreseeable. Plaintiff relied on the promise to his detriment, as this was used as a basis to deny him employment as an adjunct. *Id.*, ¶¶ 115-118.

### 10. Defendants should be estopped from asserting the statute of limitations defense regarding Plaintiff's false light invasion of privacy claim.

Defendants should be estopped from asserting the statute of limitations regarding Plaintiff's false light invasion of privacy claim. As an initial matter, the statute of limitations is a defense that need not be anticipated in the complaint to survive a motion to dismiss. *Hobbs v. Cappelluti*, 899 F. Supp 2d 738, 754 (N.D. Ill. 2012). "Unless the complaint alleges facts that create an ironclad defense, however, a limitations argument must await factual development of the record." *Id.* (internal quotations omitted). Equitable estoppel "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time." *Smith v. Chicago Heights,* 951 F.2d 834, 840 (7th Cir. 1992). Among other factors, the court should look for "a showing of the plaintiff's actual and reasonable reliance on the defendant's conduct or representations" and "evidence of improper purpose on the part of the defendant and the defendant's actual or constructive knowledge of the deceptive nature of its conduct." *Id.*, 841

12

(internal citations omitted). "It is not necessary that the defendant intentionally mislead or deceive the plaintiff, or even intend by its conduct to induce delay." *Id.* (quoting *Bomba v. W.L. Belvidere*, 579 F.2d 1067, 1071 (7th Cir. 1978)).

DePaul should be estopped from asserting the statute of limitations because it communicated to the Plaintiff information that obscured their misconduct and mislead the Plaintiff. The Plaintiff relied on these communications in good faith. These communications were facilitated through two arrangements DePaul had with the Plaintiff; 1) the indemnification/defense arrangement and 2) the Joint Defense Agreement. The Plaintiff did not and could not assume an appropriate impression of his legal situation until April 15, 2019 (when his trial took place), nearly two weeks after the statute of limitations expired.

In June of 2017, DePaul and Plaintiff were co-defendants in a former student's civil suit. The Defendant was the employer of the Plaintiff. DePaul conducted an internal investigation of the Plaintiff, including a full review of his record, with which the Plaintiff fully cooperated. After the investigation and DePaul's review of the former student's pleadings, DePaul made the decision to defend Plaintiff. Shortly after, DePaul chose the Plaintiff's attorneys and communicated through those attorneys their request he enter a JDA.

Plaintiff alleges Defendants misled him at every stage of the facts in question. Pl. Am. Compl., ¶ 2. Unemployed, he relied on DePaul's conduct and representations that it would indemnify and defend him and that the JDA was in their mutual interest. *Id.*, ¶¶ 36-39. DePaul took advantage of the JDA, all the way up until trial. *Id.*, ¶ 39. Plaintiff also alleges that DePaul administrators were behind the article published in the *DePaulia*. *Id.*, ¶ 48-60. Plaintiff was advised indirectly by DePaul not to provide a statement for the article, also letting him believe they had no control over its publication. *Id.*, ¶ 58. In early 2018, DePaul was dismissed from the

13

case. *Id.*, ¶ 47. DePaul settled with the former student after she filed her Notice of Appeal and pressured Plaintiff to settle as well. ¶ 61-62. Plaintiff did not want to pay his accuser, maintaining the suit was baseless and filed in bad faith. *Id.*, ¶ 62. Indeed, in the ten months that DePaul had been entangled in the case, not one of DePaul's administrators, nor any of its attorneys, had yet to even speak with the accuser. *Id.*, ¶ 2. In response to the Plaintiff's protest, DePaul stopped defending him. *Id.*, ¶ 62. DePaul never stated why it stopped defending Plaintiff. *Id.* DePaul did however keep the JDA with the Plaintiff open. *Id.*, ¶ 63, 65. DePaul provided documents to the Plaintiff's defense and communications occurred between the Plaintiff and DePaul, wherein DePaul was kept apprised of the case. *Id.*

It can reasonably be inferred from the facts alleged that DePaul's communications and conduct impressed upon the Plaintiff that what prevented a reconciliation between he and his employer was the legal case that remained. This impression was catastrophically destroyed during the Plaintiff's trial by his accuser, which took place on April 15, 2019, over a year after the article's publication. At trial, DePaul abruptly violated the JDA by refusing to authenticate documents vital to Plaintiffs defense. *Id.*, ¶ 71. Furthermore, two key witnesses from DePaul, including Tamburro, significantly changed their testimonies from their depositions to optimize damage upon the Plaintiff. *Id.*, 70. The changes at trial were so significant, it was clear that DePaul officials could not keep any facts straight.

Only after his trial did it become apparent that DePaul mislead and managed the Plaintiff in an effort to minimize their own legal liabilities in his regard. Reading these facts in the light most favorable to the Plaintiff, DePaul should be estopped from asserting the statute of limitations.

### 11. Punitive damages are not precluded for Plaintiff's Title IX claim (Count II) and breach of fiduciary duties claims (Counts V and VII). Punitive damages are not available for Counts IV, VI and VIII, only.

While Plaintiff has not specified under which counts he seeks punitive relief, the only counts he has asserted that would preclude an award for punitive damages are counts IV, VI and VIII. Defendants incorrectly assert that punitive damages are not available for Title IX claims; they are. *Waid v. Merrill Area Pub. Sch.*, 91 F.3d 857, 862 (7th Cir. 1996) (overruled on other grounds *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 251 (2009)). Defendants do not explain how the case they have cited, *Lozier v. Quincy Univ. Corp*, changes this precedent. Def. Mem. Supp. Mot. Dismiss, p. 15. In *Lozier*, the parties stipulated to punitive damages not being applicable in that plaintiff's Title IX claim. *Lozier v. Quincy Univ. Corp.*, No. 3:18-cv-3077, 2019 U.S. Dist. LEXIS 15348, at *3 (C.D. Ill. 2019). We do not know why, because the court did not delve into the matter beyond noting the stipulation. *Id.* The Seventh Circuit has recognized that Title IX claims permit punitive damages. *Waid.*, 91 F.3d 857, 862.

Similarly, punitive damages are available in breach of fiduciary duty claims; in this case, Plaintiff's counts V and VII. Breach of fiduciary duty claims sound in tort, they are separate and independent of a breach of contract claim, and they can support an award of punitive damages. *Seerveld v. Gerstenberg*, 1986 U.S. Dist. LEXIS 29097, * 6 (N.D. Ill. 1986); see also *Target Mkt. Publishing v. Advo. Inc.*, 1995 U.S. Dist. LEXIS 2203, *28-29 (N.D. Ill. 1995).

### CONCLUSION

Wherefore, Plaintiff respectfully requests the Honorable Court deny Defendants' Motion to Dismiss in its entirety.

> Respectfully submitted,
> LAITH SAUD
> Plaintiff

        _____/s/Christina Abraham_____
      By:  Christina Abraham
         Attorney for Plaintiff


September 12, 2019


Attorney No. 6298946
Christina Abraham, Esq.
Attorney for Plaintiff
161 N. Clark Street, Suite 1600
312-588-7150

16

**<u>Certificate of Service</u>**

The undersigned attorney hereby certifies that she caused a copy of **Plaintiff's Response to Defendants' Motion to Dismiss and to Motion to Strike** to be served upon the all parties assigned for service through the CM/ECF filing system on September 12, 2019.

/s/Christina Abraham

Christina Abraham
Attorney for the Plaintiff

Attorney No. 6298946
Christina Abraham, Esq.
Abraham Law & Consulting, LLC
161 N. Clark Street, Suite 1600
312-588-7150

17