**IN THE FEDERAL DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | |
|---|---|
| LAITH SAUD, | |
| Plaintiff, | Case No.: 1:19-cv-3945 |
| v. | |
| | Hon. Judge Robert M. Dow, Jr. |
| DEPAUL UNIVERSITY, KAREN TAMBURRO, and MARLA MORGEN | |
| Defendants. | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

NOW COMES Plaintiff LAITH SAUD, by and through undersigned counsel, and submits this Reply in Support of his Motion for Preliminary Injunction.

1. **Introduction**

Plaintiff must reiterate his objection to Defendants' (now repeated) mischaracterization of how his relationship with the former student began. Defendants have more than once asserted that Plaintiff admitted that "following the drink after class, he and the Former Student engaged in a consensual sexual relationship." Def. Resp. Br., p. 2, Dkt # 29. As worded, the sentenced implies truth to the former student's false claim that when she went out for drinks with Plaintiff, sex followed. In other words, the sentence implies a causal and temporal connection between the two events. At trial, Plaintiff disproved this very notion. Defendants would likely assert that the way they have characterized this statement is not technically incorrect: Plaintiff admitted to going out for drinks with the former student, and that *sometime much later*, a consensual relationship developed between them. But there can be no way to explain why both statements would be together in the same sentence, save that Defendants want to create the impression that

1

one caused or followed closely the other. To be clear, as Plaintiff proved at his trial, there was never a night where he and the former student engaged in drinking and sex, and his romantic relationship with her would develop much later.

Defendants' section on the facts also contains an important typo regarding the date the former student dismissed her appeal against DePaul. The section states the dismissal was entered on "August 3, 3018". *Id.*, p. 3. According to one of Defendants' exhibits, attached in support of its Motion to Dismiss and Motion to Strike, the dismissal was *entered* on April 3, 2018: the day after the article was published in the *DePaulia*. Def. Mem. Supp. Mot. Dismiss, Ex. 4, p 33, Dkt # 20-1. It is highly improbable that DePaul and the former student would have settled on or after the day the court entered an order, upon the former student's own motion, dismissing DePaul. The *DePaulia* article was published on April 2, 2018. Pl. Am. Compl., ¶ 49, Dkt # 17. This supports Plaintiff's claims regarding the suspicious timing of the publication.

**2. DePaul's responsibility for the publication of the article in the *DePaulia***

Plaintiff's § 1983, Title IX and false light invasion of privacy claims regarding the *DePaulia* article rest on his assertion that Defendants were responsible for the publication. Plaintiff can show this by pointing to the following: student journalists were given access to Plaintiff's student lists by administrators. Pl. Am. Compl., ¶ 50, 54. Student journalists writing for the paper are advised by a faculty adviser. *Id.*, ¶ 48. Despite starting work on the article shortly after the former student's lawsuit was filed, the *DePaulia* did not publish the story until after DePaul was dismissed from the lawsuit the following year. *Id.* The timing of the publication also coincided with news of an NCAA investigation into DePaul's athletic department for violating NCAA rules and regulations. *Id.*, ¶ 60. The article was "pinned" on the *DePaulia* Twitter account for several months, something the *DePaulia* has not done with other

articles. *Id.*, ¶ 53. All of the above indicates DePaul had control over timing, access and content of the article, thus making it responsible for its publication and the false representations made therein.

### 3. Plaintiff has a likelihood of success on the merits of his § 1983 claim

Plaintiff addresses the arguments raised by Defendants against his § 1983 claim in his Response to Defendants' Motion to Dismiss and Motion to Strike, and incorporates it by reference here. Pl. Resp. Br. Mot. Dismiss, p. 2-4, Dkt. # 31. In sum, a private actor may become a state actor "in several ways, including when the state delegates a public function to a private entity or when the state 'effectively directs or controls the actions of the private party such that the state can be held responsible for the private party's decision." *Collins v. Northwestern Univ.*, 164 F. Supp. 3d 1071, 1076 (N.D. Ill. 2016).

Defendants have pointed to cases that hold that one or the other of these facts alone is not sufficient to support a § 1983 claim. Def. Resp. Br., p. 5-6, Dkt. # 29. But in determining whether an individual or entity acted under the color of law, the court must consider the totality of the circumstances. *Collins*, 164 F. Supp. 3d, at 1077. Plaintiff can show a likelihood of success on the merits of his § 1983 claim, including that Defendants acted under the color of law. Specifically, Plaintiff can show he has a better than negligible chance at succeeding because he can show: DePaul participates in a Dual Admission Partnership Program with the City of Chicago Community Colleges, shares facilities with the city colleges, has received taxpayer funds to expand its campus facilities, and provides its campus with security through the Chicago Police Department. Pl. Am. Compl., ¶¶ 75-76, Dkt. # 17. It also receives grants and financial assistance from the state, requiring it to report to the state, including reporting on steps the

university takes to address allegations of sexual misconduct. *Id.*, ¶¶ 73-74. The totality of the circumstances supports Plaintiff's claim that Defendants acted under the color of state law.

> **4. Plaintiff has a likelihood of success on the merits of his Title IX claim**

Plaintiff addresses Defendants' preemption argument in his Response to Defendant's Motion to Dismiss and Motion to Strike, and incorporates it by reference here. Pl. Resp. Mot. Dismiss, p. 3-9, Dkt. #31. In sum, Title VII does not preempt Plaintiff's Title IX claim. The Supreme Court has instructed courts to apply Title IX broadly. See *Jackson v. Birmingham Bd. Of Educ.*, 544 U.S. 167 (2005) (holding a teacher could bring a retaliation claim under Title IX); *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 514 (1982) (holding Title IX encompassed a prohibition on employment discrimination in educational institutions receiving federal funding); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 709 (1979) (holding Title IX conferred a private right of action for individual victims of discrimination); *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 256 (2009) (holding Title IX did not preclude a § 1983 claim, partially reversing the 7th Circuit decision in *Waid*, supra. The case did not involve an employee, and therefore the Supreme Court did not address the issue of Title VII preemption).

The cases cited by Defendant, *Waid v. Merrill* and *Ludlow v. Northwestern*, do not apply a rule of categorical Title VII preemption for all Title IX claims involving employees of educational institutions; in fact, they recognized the opposite. *Waid v. Merrill Area Pub. Sch.*, 91 F.3d 857 (7th Cir. 1996); *Ludlow v. Northwestern Univ.*, 125 F. Supp. 3d 783 (N.D. Ill. 2015). Most notably, the Seventh Circuit in *Waid*, held that preemption did not apply to a plaintiff's claim that she was the victim of intentional discrimination as defined under Title IX, and "Title VII does not preempt a cause of action for intentional discrimination in violation of the Constitution." *Waid v. Merrill Area Pub. Sch.*, 91 F.3d, at 862. In *Ludlow*, the other case

cited by Defendants, the district court dismissed a university employee's Title IX claim, holding it was preempted specifically because what Ludlow was ultimately alleging was adverse employment action based on gender discrimination, which was preempted by Title VII, but noting preemption did not always apply. *Ludlow v. Northwestern*, 125 F. Supp. 3d., 791.

Plaintiff has not alleged his severance from DePaul was tied to the Title IX investigation. Plaintiff has alleged intentional discrimination, pointing to several facts in support: DePaul adversely changed a credibility finding against him while having never spoken to his accuser and having no new evidence (Pl. Am. Compl, ¶¶ 2, 42); Plaintiff can show this was not simply victim bias, because he also made a complaint of sexual misconduct directly to Tamburro, and Tamburro never responded to it (*Id.*, ¶¶ 27, 94); Plaintiff has further pointed to a petition that was sent to Tamburro and other administrators, which made comments regarding his gender, to support an inference of gender discrimination (*Id.*, ¶ 33); DePaul issued penalties against Plaintiff, including barring him from future employment and participation in any events sponsored or co-sponsored by DePaul (*Id.*, ¶ 44);. DePaul also later exacted another punishment against Plaintiff; after it had been dismissed from the lawsuit, it published an article, identifying Plaintiff with the former student's accusations of sexual assault and professional misconduct, without rebuttal and knowing that at least some of what it was reporting was false. *Id.*, ¶¶ 48-60. DePaul was responsible for the publication because it exercised direction and control over the publication's content and timing. *Id.*, ¶¶ 50, 54, 56, 60. Title VII is not designed to address all of the claims raised by Plaintiff, and therefore does not preempt his Title IX claim.

For the reasons above, Plaintiff can also show a likelihood of success on his Title IX claim. DePaul compares the case to *Ludlow*, but the two cases are substantively different. *See* Pl. Resp. Mot. Dismiss, p. 8, Dkt #31. Plaintiff's case is more analogous to *Doe v. Purdue Univ.*,

5

928 F.3d 652 (7th Cir. 2019). DePaul's argument that Plaintiff's admission to a consensual relationship somehow substantiates the second Title IX finding is also flawed, as DePaul does not prohibit such relationships and Tamburro was informed of the relationship during the first phase of her investigation, in which she cleared him of any wrongdoing. *Id.*, ¶¶ 26, 29, 30.

5. **Defendants should be estopped from asserting the statute of limitations with respect to Plaintiff's false light invasion of privacy claim**

Plaintiff incorporates by reference his argument regarding estoppel. Pl. Resp. Mot. Dismiss, p. 12-14, Dkt # 31. The statute of limitations is a defense that need not be anticipated in the complaint to survive a motion to dismiss. *Hobbs v. Cappelluti*, 899 F. Supp 2d 738, 754 (N.D. Ill. 2012). "Unless the complaint alleges facts that create an ironclad defense, however, a limitations argument must await factual development of the record." *Id.* (internal quotations omitted). Equitable estoppel "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time." *Smith v. Chicago Heights,* 951 F.2d 834, 840 (7th Cir. 1992). Among other factors, the court should look for "a showing of the plaintiff's actual and reasonable reliance on the defendant's conduct or representations" and "evidence of improper purpose on the part of the defendant and the defendant's actual or constructive knowledge of the deceptive nature of its conduct." *Id.*, 841 (internal citations omitted). "It is not necessary that the defendant intentionally mislead or deceive the plaintiff, or even intend by its conduct to induce delay." *Id.* (quoting *Bomba v. W.L. Belvidere*, 579 F.2d 1067, 1071 (7th Cir. 1978)).

As argued in his Response to Defendants' Motion to Dismiss and Motion to Strike, Defendants should be estopped from asserting the statute of limitations because it communicated to the Plaintiff information that obscured their misconduct and mislead him. The Plaintiff relied on these communications in good faith. These communications were facilitated through two arrangements DePaul had with the Plaintiff; 1) the indemnification/defense arrangement and 2)

6

the Joint Defense Agreement. The Plaintiff did not and could not assume an appropriate impression of his legal situation until April 15, 2019 (when his trial took place), nearly two weeks after the statute of limitations expired, as more fully described in his response brief to Defendants' motion to dismiss.

6. **Plaintiff has a likelihood of success on the merits of his false light invasion of privacy claim**. **Neither the substantial truth doctrine nor the fair reporting privilege applies.**

Defendants argue that Plaintiff's false light claim does not have a likelihood of success on the merits because the statements in the article were "substantially true", and because the publication is protected by the "fair reporting privilege." Def. Resp. Br., p. 10-11, Dkt. # 29. Neither of these arguments hold. Libelous statements are not immune from constitutional limitations. *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964). In cases involving public figures, where false statements are made with actual malice, *i.e.* "with knowledge that the statement was false or with reckless disregard" of its falsity, then a public figure is allowed recovery. *New York Times v. Sullivan*, 376 U.S., at 280. A private individual does not become a public figure even though the defamatory statements may concern an issue of public interest. *Geertz v. Welch*, 418 U.S. 323, 339-348 (1974); *see also Cantrell v. Forest City Publishing Co.*, 419 U.S. 245, 254 (1974). Plaintiff does not claim to be a public figure, and Defendants have not established why he should be considered one. Nevertheless, assuming *arguendo* Plaintiff is a public figure within the meaning of *New York Times v. Sullivan* and *Geertz v. Welch*, Defendants' arguments still fail because Plaintiff can show they acted with actual malice, and no privilege applies to the publication.

Regarding Defendants' claim that the statements in the article were substantially true: the article repeated, without rebuttal, the false claim that Plaintiff had been the subject of many complaints of harassment at DePaul. DePaul knew the claim was false: it not only maintained

7

Plaintiff's employee file, but DePaul itself was dismissed from the former student's lawsuit because she was not able to substantiate that claim. Not only did the article repeat the false allegation, but it bolstered it by including a quote from a student the article falsely reported had been in the same class as the former student, who disparaged Plaintiff's professionalism. Pl. Am. Compl., ¶ 54, Dkt. # 17. In other words, the article does not simply quote the former student's complaint that Plaintiff was the subject of many complaints of harassment, but also attempts to corroborate it. Defendants' argument that the statements made by the student were opinions, and therefore not actionable, are irrelevant. The false statements together placed Plaintiff in false light. The student was represented to have been in the same class as the former student (which was not true), and her comments were presented to corroborate the claim made by the former student that he was the subject of many complaints of harassment (which DePaul knew was false).

This leads to Defendants' next argument, that the article is covered by the fair report privilege. A false statement is not actionable if it is privileged, and whether a privilege applies is a question of law. *Solaia Tech v. Specialty Publish. Co.*, 221 Ill. 2d 558, 585 (Ill. 2006). The fair report privilege is a qualified privilege aimed at promoting transparency in official proceedings, including judicial proceedings. *Id.* Taking from the second Restatement of Torts, the Illinois Supreme Court has held that the fair report privilege has two requirements: "(1) the report must be of an official proceeding; and (2) the report must be a complete and accurate or a fair abridgement of the official proceeding." *Id.*, at 588. A fair abridgement means that the report must convey to readers "a substantially correct account" of the proceedings. Quoting again the second Restatement, the Court observed that this meant "nothing be omitted or misplaced in such a manner as to convey an erroneous impression to those who hear or read it."

8

*Id.*, at 590 (quoting Restatement (Second) of Torts § 611, Comment f, at 300-01 (1977)). "The reporter is not privileged under this Section to make additions of his own that would convey a defamatory impression, nor to impute corrupt motives to any one, nor to indict expressly or by innuendo the veracity or integrity of any of the parties." *Id.*

At the time the article was published, much was omitted regarding the proceedings in question. First, the article did not mention that Plaintiff had filed a defamation claim, or that DePaul and the former student had settled, even though both had happened at the time the article was published. The article provided the details of the former student's complaint, but only briefly and generally referenced Plaintiff's responsive pleading. This cannot, by any stretch of the imagination, be considered a "fair abridgement of the proceedings." The article also intersperses allegations from the former student's complaint with quotes from the student falsely reported to have taken the same class, which gives a false impression to the reader that the former student's claims were corroborated. For these reasons, the article is not shielded by the fair report privilege, as it did not provide a fair abridgement of the proceedings.

Defendants do not properly address Plaintiff's claim that Defendants are responsible for the publication of the article in the *DePaulia*. This is an important point, because when dealing with false light claims between employers and employees, the court applies a five-part test to determine whether a qualified privilege even applies. *Babb v. Minder*, 806 F.2d 749, 753 (7th Cir. 1986). The elements of a qualified privilege are: (1) good faith by the defendant; (2) an interest or duty to be upheld; (3) a statement limited in its scope to that purpose; (4) a proper occasion; and (5) publication in a proper manner and to proper parties only. *Id.* If the court decides that a privilege exists, the burden shifts to the plaintiff to show that the defendant abused and lost the privilege by acting with actual or express malice. *Id.* The question of whether the

9

privilege exists is a question of law. *Id.* The question of whether a defendant abused such a privilege is a factual issue for the jury. *Id.*

Defendants would not be able to meet the standard of the five-part test described by the Seventh Circuit in *Babb*. Defendants did not act in good faith; Plaintiff's Amended Complaint is replete with allegations that would support this conclusion. Second, it was not the duty of DePaul administrators to control publication of an article regarding the Plaintiff in a student newspaper. For the same reason, the statements in the article were not limited in scope. There is no reason for DePaul, a university, to cause the publication of an article naming one of its employees, and repeating claims made against the employee known by Defendants to be false. Defendants' conduct (and even their admissions thus far) belies any assertion that the article was published on the proper occasion, or in the proper manner to proper parties only. The article could have discussed the lawsuit without mentioning names, following the journalistic standard known to DePaul at the time. Three other news outlets reported this story (a full nine months prior); none published the names of the Plaintiff or his accuser. The article purports to be about faculty/student dating, yet the Plaintiff is literally the only employee whose dating life was discussed; upon information and belief, there are other cases of relationships between students and faculty at DePaul, these stories were conveniently suppressed.

Finally, Defendants list three bullet points in their Response regarding the false statements made in the article. Def. Resp. Br., p. 10-11, Dkt # 29. The first two have already been addressed. The last one warrants addressing separately for a few reasons. First, it appears DePaul is asking the court to make findings of fact outside of the pleadings, and to draw inferences in favor of Defendants, with no evidentiary support. The argument asserts that the *DePaulia* journalists finished researching the article before January 24, 2018, the date the former

student filed a notice of appeal. There is no allegation in a pleading, nor evidence presented that would support this, only a conclusion drawn by inference from a quote taken from the former student's attorney. It should go without saying that just because the journalists quoted the attorney prior to the filing of the former student's appeal, does not necessarily mean they finished "researching the article" before then. More importantly, Defendants do not explain how this helps their case. That the journalists would "finish researching" an article months before it was published (supposedly for a piece that was of great public interest), and take no action to update their information before publishing it, screams of bad faith. This is especially so in light of the other claims made by Plaintiff regarding the article's publication: that it was published, in order to punish him in a discriminatory manner, in order to punish him for not agreeing to DePaul's settlement terms, and in order to distract bad publicity from DePaul regarding the NCAA's investigation into DePaul. A story broken on April 2, 2018, the same day DePaul published the article in question, entitled "Power Player". Pl. Am. Compl., ¶ 60, Dkt. # 17.

For the above reasons, Plaintiff can show a likelihood of success on the merits of his false light invasion of privacy claim.

7. **Injunctive relief is warranted**

    a. **Plaintiff did not delay in seeking a preliminary injunction**

Plaintiff's delay in seeking this preliminary injunction is not unreasonable. First, as his Amended Complaint notes, he only just won the lawsuit filed by the former student in April of this year. He filed the lawsuit and preliminary injunction relatively quickly after that. It was necessary for Plaintiff to have waited until after his trial, as establishing the falsity of the former student's claims is central to his claims against Defendants. Further, as his Amended Complaint states, Plaintiff has been unemployed and represented himself for months *pro se* until he found

an attorney to represent him *pro bono*. Pl. Am. Compl., ¶ 64. Plaintiff simply did not have the resources to pursue his claims against multiple fronts, and this is in part the result of Defendants' misconduct and misdeeds towards him. His delay in seeking this injunction does not, therefore, undercut the importance of this preliminary relief or the fact that he will suffer irreparable harm should he not obtain it. If anything, the fact that this time has passed has allowed Plaintiff to demonstrate to the Court the irreparable harm he faces, as he has attempted to seek work while the article remains posted and has been told that it was the reason he would not be hired.

      **b. The harm is irreparable**

Defendants point to two cases to argue that the "loss of future employment" is not an irreparable harm. *Bedrossian v. New. Mem'l Hosp.*, 409 F.3d 840, 846 (7th Cir. 2005); *Lariviere v. Bd. of Trs. Of S. Ill. Univ.*, No. 16-cv-1138-DHR-SCW, 2017 U.S. Dist. LEXIS 89077, at *7 (S.D. Ill. 2017). However, both cases are not analogous, because the preliminary relief sought in both cases was reinstatement following a plaintiff's termination. Plaintiff in this case is not requesting DePaul reinstate him. He is requesting very limited injunctive relief: take down the article that places him in false light. Alternatively, the Court can order DePaul to remove reference to Plaintiff's name and any "tags" (tag words that enable search engines to populate the article in any search) of his name in the article.

      **c. The balance of equities favors Plaintiff. Public interest would not be abridged by the narrow injunctive relief sought.**

Defendants point to cases in which an injunction was held unconstitutional because it constituted a prior restraint on free speech. But a prior restraint is an injunction that restrains speech before it happens. That is what the Supreme Court was addressing in the cases cited by Defendants. *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419-20 (1971); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976). The third case cited by Defendants also did not hold

12

that all injunctions restricting speech were unconstitutional, rather that case held that an injunction was too broad, and remanded it to the district court to apply a more restrictive injunction. *e360 Insight v. The Spamhaus Project*, 500 F.3d 594 (7th Cir. 2007).

*e360 Insight* is an example of a case where the court was able to apply injunctive relief to a situation involving a defamation claim. In this case, the Seventh Circuit reviewed an injunction against the defendant, who had placed the plaintiff on an internet "spammers" list as part of its business of maintaining a register of known spam operators. *e360 Insight*, 500 F.3d, 595. The defendant purposefully defaulted, and part of the judgment involved an injunction that prohibited the defendant from listing the plaintiff on its internet spammers list unless it could demonstrate by "clear and convincing evidence" that the plaintiff had violated "relevant United States law", required defendant to put a notice on its website that stated plaintiff had erroneously been listed as a spammer in language to be approved by the plaintiff, and prohibited the defendant from contacting any of plaintiff's customers or suppliers to assert or allege plaintiff was a spammer. *Id.*, 603. In reversing the district court, the Seventh Circuit first noted the Court had not engaged in an inquiry as to whether injunctive relief was appropriate. *Id.*, 604. The Court also noted that injunctive relief should be tailored to the scope of the violation found. *Id.*

In another case, *Huskey v. National Broadcasting Co., Inc.*, a district court denied the defendant NBC's motion to dismiss a false light claim, and addressed the issue of whether the plaintiff in that case could request an injunction preventing telecast of the footage as part of his relief. *Huskey v. National Broadcasting Co., Inc.*, 632 F. Supp. 1282, 1284 (N.D. Ill. 1986). The case involved NBC's videotaping a prison inmate in a caged exercise area, without the inmate's consent, and the footage had not yet been used. *Huskey*, 632 F. Supp., at 1295. While the court was not tasked with determining whether an injunction at that time applied, it rejected an

13

argument by NBC that the plaintiff could not, under any circumstances, merit injunctive relief because such relief would constitute prior restraint on free speech. The court held that a narrowly-tailored injunction could serve the privacy interests of the plaintiff, while not unduly restricting the defendant's free speech. *Id.*

What Plaintiff is requesting in this case is a narrowly tailored injunction that would remove the only identification of the Plaintiff with false accusations that the publisher knew to be false at the time of publication. Such narrowly-tailored relief would not impose undue restriction on Defendants' free speech.

## CONCLUSION

Wherefore, Plaintiff respectfully requests the Honorable Court grant him the preliminary injunctive relief sought.

 

Respectfully submitted,
LAITH SAUD
Plaintiff


\_\_\_\_\_/s/Christina Abraham_____
By:     Christina Abraham
            Attorney for Plaintiff


September 17, 2019


Attorney No. 6298946
Christina Abraham, Esq.
Attorney for Plaintiff
161 N. Clark Street, Suite 1600
312-588-7150

**Certificate of Service**

The undersigned attorney hereby certifies that she caused a copy of **Plaintiff's Reply in Support of Motion for Preliminary Injunction** to be served upon the all parties assigned for service through the CM/ECF filing system on September 17, 2019.

/s/Christina Abraham

Christina Abraham
Attorney for the Plaintiff

Attorney No. 6298946
Christina Abraham, Esq.
Abraham Law & Consulting, LLC
161 N. Clark Street, Suite 1600
312-588-7150

15