**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Laith Saud,

                Plaintiff,

     v.

DePaul University, Karen Tamburro and
Marla Morgen,

                Defendants.

No. 1:19-cv-3945

Judge Robert M. Dow

Magistrate Judge Sunil Harjani

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT AND MOTION TO STRIKE**

**INTRODUCTION**

Plaintiff's Response to Defendants' Motion to Dismiss ("Response") attempts to obfuscate the legal issues by creating a myriad of alternating legal and factual theories.  Nothing in Plaintiff's Response changes the fact that each of Plaintiff's claims are flawed as a matter of law and should be dismissed for the following reasons:

- Count I, violation of 42 U.S.C. § 1983 ("§ 1983"), still fails because Plaintiff has not pled DePaul, Tamburro or Morgen acted under the color of law.

- Count II, violation of Title IX, still fails because Title VII preempts it and Plaintiff has not alleged sufficient facts to give rise to a plausible inference of gender discrimination.

- Count III, violation of 42 U.S.C. § 1981 ("§ 1981"), still fails because, given Plaintiff's admission as to DePaul's "real reason" not to hire him, Plaintiff has not alleged sufficient facts to give rise to a plausible inference of national origin discrimination.

- Count IV, breach of indemnification contract, still fails because Plaintiff's alleged conduct, and his actual conduct, were outside the scope of his employment.

- Count V, breach of fiduciary duty, still fails because Plaintiff has not pled a special relationship that gave rise to a fiduciary duty or the breach of that duty.

- Counts VI and VII, breach of oral employment contract, still fails because Plaintiff has not pled the parties agreed on "definite and certain" material terms of a contract.

- Count VIII, promissory estoppel, still fails because Plaintiff has not pled DePaul breached a promise or Plaintiff actually relied to his detriment on an unambiguous promise made by DePaul.

- Count IX, false light, still fails because Plaintiff admits his claim is time-barred and there are no facts warranting the application of equitable estoppel to toll the limitations period.

The Court should dismiss Plaintiff's FAC in its entirety. This Court has afforded Plaintiff two opportunities to state legally sufficient claims against Defendants. Plaintiff should not be permitted any additional opportunities to re-plead his claims against Defendants. Defendants respectfully request the Court dismiss the FAC with prejudice.

## ARGUMENT[1]

## I. COUNT I SHOULD BE DISMISSED BECAUSE DEPAUL IS A PRIVATE ACTOR FOR PURPOSES OF § 1983

The Seventh Circuit has held, and Plaintiff does not dispute, "DePaul is a private university, so [a plaintiff] cannot use 42 U.S.C. § 1983" to assert violations of federal law. *Slovinec v. DePaul Univ.*, 332 F.3d 1068, 1069 (7th Cir. 2003). Plaintiff does not attempt to distinguish *Slovinec*, which is controlling precedent in this case. (*See* Plaintiff's Response ("Resp."), Dkt. No. 31). Nor does Plaintiff attempt to distinguish *Collins v. Northwestern Univ.*, 164 F. Supp. 3d 1071 (N.D. Ill. 2016), where, as here, the court held Northwestern University ("Northwestern") was not acting under the color of state law when it investigated and terminated employees for violating Northwestern's sexual harassment policy. *Collins*, 164 F. Supp. 3d at 1076-77.

Plaintiff's only assertion is DePaul's receipt of public taxpayer funds and other benefits, along with certain regulatory reporting requirements, shows DePaul acted under the color of state law. (Resp. at 2). As set forth in DePaul's Opening Brief, these allegations are insufficient to transform DePaul into a public actor. (*See* Opening Br. at 6). *See also Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982); *McDaniel v. Loyola University Med. Ctr.*, 2014 U.S. Dist. LEXIS 120042, at *32-33 (N.D. Ill. Aug. 28, 2014); *Rafi v. Yale Univ. Sch. of Med.*, 2017 U.S. Dist.

---

[1] At the outset, Defendants dispute Plaintiff's description of Defendants' Relevant Factual Background in their motion to dismiss as mischaracterizing the facts set forth in Plaintiff's FAC. Defendants have read the facts in the FAC in a light favorable to Plaintiff as they themselves try to discern the nature of Plaintiff's claims.

LEXIS 117678, at *38 (D. Conn. 2017); *Bailey v. N.Y. Law Sch.*, 2017 U.S. Dist. LEXIS 29653, at *14 (S.D.N.Y. 2017). Plaintiff's Response does not address any of these decisions, nor does Plaintiff cite to a single case in which a court found a private university acted under the color of law because of receipt of public funds. Count I should be dismissed with prejudice.[2]

## II. COUNT II SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER TITLE IX.

Plaintiff's Title IX claim (Count II) should be dismissed, with prejudice, because: (A) it is preempted by Title VII; and (B) Plaintiff has not pled either: (1) specific facts to cast doubt on DePaul's findings; or (2) factual circumstances suggesting gender bias was a motivating factor.[3] Plaintiff's Response does not refute these legal flaws.

### A. Plaintiff Has Not Come Forward with Any Legal Support Refuting Preemption of His Title IX Claim.

"Title VII provides a comprehensive statutory scheme for protecting rights against discrimination in employment." *Waid v. Merrill Area Pub. Schs.*, 91 F.3d 857, 861-62 (7th Cir. 1996). Therefore, "[a]n action that can be brought under Title VII cannot be brought under Title IX." *Blazquez v. Bd. of Educ. of the City of Chi.*, 2006 U.S. Dist. LEXIS 83264, *37 (N.D. Ill. Nov. 14, 2006).

In his Response, Plaintiff relies on a number of Supreme Court decisions purportedly supporting the application of Title IX to claims for employment discrimination. (Resp. at 4). Each of these cases are inapposite. In *Jackson v. Birmingham*, 544 U.S. 167 (2005), the Supreme Court

---

[2] Plaintiff also does not dispute Morgen and Tamburro are private citizens and, thus, cannot be sued under § 1983. (*See* Resp. at 2). As such, Count I should be dismissed against Morgen and Tamburro as well. *See also Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (finding it is the long-standing rule within the Seventh Circuit a litigant waives an argument where he "effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss").
[3] In his Response, Plaintiff clarifies he "has not asserted Title IX liability against Morgen or Tamburro[.]" (Resp. at 3 n.2). To the extent any such claims are contained in Plaintiff's FAC, they should be dismissed.

held the plaintiff could pursue a Title IX *retaliation* claim – not discrimination – for complaining about violation of Title IX funding requirements in a school's athletic program. The *Jackson* decision did not address Title VII preemption and the retaliation claim at issue could not have been brought under Title VII. *Id.* In *Cannon v. University of Chicago*, 441 U.S. 677 (1979), the Supreme Court held a prospective student – not an employee – had a private right of action for sex discrimination when she was denied admission to medical school at various private universities. In *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009), a case addressing the sexual assault of a public school kindergarten student – not an employee – the Supreme Court held Title IX does not preclude a § 1983 action for sex discrimination in schools. Lastly, in *North Haven Board of Education v. Bell*, 456 U.S. 512 (1982), the Supreme Court held only the Department of Health, Education and Welfare had authority to withhold federal funds from schools that discriminated against employees of educational programs – without addressing the availability of a private right of action for such employees. None of these cases negates the preemptive effect of Title VII in cases, such as this, where a private litigant seeks to use Title IX as a vehicle for asserting claims of discrimination in employment.

Courts in this district, relying on *Waid*, have found Title VII – which provides a comprehensive remedy for the conduct complained of by Plaintiff – preempts claims for sex discrimination in employment. *See Kowal-Vern v. Loyola Univ. of Chi.*, 2002 U.S. Dist. LEXIS 15018, *15 (N.D. Ill. Aug. 13, 2002) (wherein plaintiff could not bring a Title IX claim to challenge Loyola University's decision not to renew her faculty appointment for another academic term), *aff'd*, 66 F. App'x 649 (7th Cir. 2003); *Ludlow v. Nw. Univ.*, 125 F. Supp. 3d 783, 790 (N.D. Ill. 2015) (Title VII preempted plaintiff's Title IX claim as the investigation into sexual assault against a student "was conducted because of [plaintiff's] position as a professor at Northwestern").

Just like the claims in *Kowal-Vern* and *Ludlow*, Plaintiff has brought a claim for employment discrimination. In his Response, Plaintiff claims: (1) DePaul investigated Plaintiff's sexual relationship with the Former Student because of his position as a professor, and (2) because of his conduct as a professor, DePaul barred Plaintiff from teaching at DePaul and prohibited him from participating in DePaul-sponsored events. (Resp. at 6; *see also* FAC ¶¶ 84, 95). Plaintiff also pleads the "real reason" DePaul did not allow him to continue as an adjunct professor was because DePaul wished to protect itself from the allegations by the Former Student. (FAC ¶¶ 90, 106, 113).[4] Put simply, Plaintiff's alleged injuries are employment adverse actions DePaul instituted against Plaintiff because of his conduct as a professor. (Resp. at 5-6). Plaintiff's claim is a Title VII claim, now time-barred, that Plaintiff is trying to disguise as a Title IX claim. As in *Kowal-Vern* and *Ludlow*, Plaintiff's Title IX claims are preempted by Title VII and must be dismissed.

**B.      Plaintiff Failed to Plead Facts Sufficient to Support a Title IX Claim.**

Even if Plaintiff's Title IX claims were not preempted, which they are, Plaintiff's claims still fail because he failed to plead sufficient facts to establish a violation of Title IX. Despite Plaintiff's reliance on *Doe v. Purdue University*, 928 F.3d 652 (7th Cir. 2019) ("*Purdue*"), the facts alleged in Plaintiff's FAC do not come close to those alleged in *Purdue*.

Unlike *Purdue*, where administrators made a questionable adverse credibility decision against the plaintiff, Tamburro initially issued a report finding Plaintiff did not violate any of DePaul's policies. (FAC ¶ 29). The following month, the Former Student filed a lawsuit against Plaintiff and DePaul asserting Plaintiff "forcibly" pursued sex with Plaintiff while she was in his class. (FAC ¶¶ 32, 35). In his Verified Answer to the Former Student's complaint, Plaintiff

---

[4] Plaintiff's assertion his Title IX claim is not related to his "severance" from DePaul contradicts the allegations in Plaintiff's FAC.

affirmatively admitted: (a) "he sent [the Former Student] an email while she was a student in his class" inviting her to get a drink after class, which she accepted; and (b) some days following the drink after class, while the Former Student remained a student in his class, Plaintiff began a sexual relationship with the Former Student.  (Opening Br., Exhibit 1 at Answer, ¶ 6; Affirmative Defense ¶¶ 2-8, 11-13).  Plaintiff's admissions make it clear he pursued a female student whom he was teaching for a sexual relationship while she was a student in his class.  Tamburro reopened her investigation and issued a second report, this time finding Plaintiff had violated DePaul's sexual harassment policy.  (FAC ¶¶ 40, 42).  The adverse finding – which, notably, was made by the same individual who had previously found Plaintiff had not violated a university policy– against Plaintiff was because of Plaintiff's own admissions in public filings, not because he was a male.  *See Doe v. Valencia Coll.*, 903 F.3d 1220, 1236 (11th Cir. 2018) (student could not succeed on a Title IX claim when he admitted to the underlying conduct).  There are no facts to plausibly infer DePaul found Plaintiff violated its sexual harassment policy because of his gender.

Despite the significant admissions in Plaintiff's public filings, Plaintiff asserts he pled sufficient facts showing gender motivated the findings in Tamburro's second report.  In *Doe v. Columbia College Chicago*, 933 F.3d 849 (7th Cir. 2019) ("*Columbia College*"), decided less than two months after *Purdue*, the Seventh Circuit made clear, "[a] plaintiff cannot rely on . . . generalized allegations alone, however, but must combine them with facts particular to his case to survive a motion to dismiss."  There, the Seventh Circuit found insufficient allegations about the supposed influence of a 2011 letter from the Department of Education addressing the problem of on-campus sexual violence, allegedly anti-male on-campus programming events and university-sanctioned social media posts.  *Id.; see also Ludlow*, 125 F. Supp. 3d at 791 ("Ludlow's claim is essentially that the investigation was biased against him because he is a man and was motivated

by Northwestern's desire to placate outside political interests and end bad publicity created by the undergraduate's lawsuit, and that its conclusions were flawed. As in the last round of briefing, Ludlow does not point the Court to any cases that would support this use of Title IX to attack the outcome of a single internal investigation of an employee and the Court could find none.").

Here, Plaintiff alleges DePaul students filed a petition with several comments regarding Plaintiff's gender (Plaintiff does not identify the "comments" nor does he allege they were negative), and DePaul found in favor of the Former Student, a female, against Plaintiff, a male. (FAC ¶¶ 33, 94). Plaintiff also argues Tamburro ignored his complaint of sexual misconduct (Resp. at 8), which Plaintiff attached to his motion for preliminary injunction. (Dkt. No. 26-2). Plaintiff's email to Tamburro never mentions sexual misconduct or anything that would trigger a separate investigation by Tamburro. (Dkt. No. 26-2). In short, Plaintiff makes no allegation particular to this case to suggest DePaul found Plaintiff violated its sexual harassment policy because Plaintiff is a man rather than because, as a professor, Plaintiff pursued and engaged in a sexual relationship with a student in his class. Plaintiff's allegations are precisely the type of generalized allegations the Seventh Circuit in *Columbia College* found to be insufficient to survive a motion to dismiss. In accordance with *Columbia College* and *Ludlow*, Plaintiff's Title IX claim should be dismissed.

## III. COUNT III SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILED TO PLEAD A CLAIM FOR INTENTIONAL RACE DISCRIMINATION UNDER § 1981.

"As the *Bell Atlantic* Court explained, it is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief, by providing allegations that 'raise a right to relief above the speculative level.'" *EEOC v. Concentra Health Servs., Inc.,* 496 F.3d 773, 777-78 (7th Cir. 2007) (internal citation omitted) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007)). Plaintiff has not met that burden.

As argued in Defendants' Opening Brief, Plaintiff pled a legitimate, non-discriminatory reason for DePaul's decision not to contract with Plaintiff – *i.e.*, "DePaul's real motivation for [the decision] was to protect its own legal and public relations interests." (FAC ¶¶ 90, 106, 113). Plaintiff does not address this admission in his Response, and thus he has abandoned any arguments to the contrary. *See Alioto*, 651 F.3d at 721. If, according to the FAC, the "real reason" for DePaul deciding Plaintiff would not return to work at DePaul was "to protect its own legal and public relations interests," then the FAC cannot raise the right to relief for national origin discrimination above a speculative level.

Plaintiff argues a "comparator" – whom Plaintiff does not identify – also was invited to request Enhanced Pay, and the "comparator" went on to adjunct while Plaintiff did not. (Resp. at 3). Plaintiff's allegation falls far short of raising a plausible inference of national origin discrimination, especially given Plaintiff does not – and cannot – allege the "comparator" also was accused of sexual assault or requested similar Enhanced Pay. *See Blackwell v. Bob Evans Farms, Inc.*, 1996 U.S. Dist. LEXIS 10044, at *14 (N.D. Ill. July 16, 1996) (wherein the plaintiff could not show that his comparator was similarly situated for purposes § 1981 because the plaintiff was accused of engaging in sexual misconduct which violated the employer's sexual harassment policy, whereas the comparator was not). The fact that another professor, who was not facing sexual assault allegations by a former student, was hired to adjunct, while Plaintiff was not hired "does not suggest [national origin discrimination] any more than money changing hands suggests robbery." *Concentra Health Servs., Inc.*, 496 F.3d at 778. Accordingly, Plaintiff's § 1981 claim (Count III) should be dismissed with prejudice.

IV.     **COUNTS IV AND V SHOULD BE DISMISSED BECAUSE PLAINTIFF DID NOT PLEAD A DUTY TO DEFEND CLAIM IN HIS FIRST AMENDED COMPLAINT AND CANNOT PROVE A BREACH OF DEPAUL'S BYLAWS.**

In his Response, Plaintiff now alleges DePaul owed a duty to defend him in the Former Student's lawsuit, citing to several irrelevant insurance coverage cases to support this theory. (Resp. at 9).  The FAC does not contain any count for a breach of an insurer's duty to defend, much less any allegations showing DePaul was an insurer or had such a legal duty.  (*See* FAC). To the contrary, Plaintiff alleges breach of an alleged contractual provision:  "Each person who is or was . . . an employee or agent of the University acting within the scope of his or her responsibilities . . . shall be indemnified by the University in accordance with, and to the fullest extent authorized by, the General Not-for-Profit Corporation Act of the State of Illinois as it may be in effect from time to time."  Plaintiff's claim fails because Plaintiff was not acting in the scope of his employment and, thus, this provision does not apply.

The Circuit Court dismissed the Former Student's complaint against DePaul because the Former Student failed to allege, beyond conclusions, Plaintiff's conduct was within the scope of his employment.  (FAC ¶ 47; *see also* Exhibits 2 and 3 to Opening Brief).  Moreover, in his Verified Answer, Plaintiff denied he "was acting in the scope of his employment for the benefit and profit of his employer."  (Opening Br., Exhibit 1 at Answer, ¶ 2).  Article XI of DePaul's Bylaws does not apply to Plaintiff because it only provides indemnification for an employee acting within the scope of his employment.

Plaintiff nonetheless argues, "[b]ecause part of the allegations made by the former student involved unintentional conduct, the duty to defend was triggered."  (Resp. at 10).  Plaintiff does not explain how this statement relates to Article XI of DePaul's Bylaws.  Regardless, the factual record belies Plaintiff's characterization of the Former Student's claims.  The Former Student alleged two intentional torts against Plaintiff: (A) battery, which is unquestionably an intentional

tort, and (B) violation of the Illinois Gender Violence Act, 740 ILCS 82/1 *et seq.*, which prohibits acts of gender-based violence or physical aggression constituting a battery. (Opening Br., Exhibit 1). The Former Student accused Plaintiff only of intentional torts, which were outside the scope of his employment. Just as in *Deloney*, DePaul did not owe a duty to defend or indemnify Plaintiff.

Under no circumstances – whether based on Article XI or another unidentified legal duty – can Plaintiff prove DePaul breached an obligation to defend Plaintiff. Thus, Count IV should be dismissed with prejudice.

In his Response, Plaintiff also asserts Count V is a breach of fiduciary duty claim against Morgen and DePaul. Citing *Malaker v. Cincinnati Insurance Company*, 2011 U.S. Dist. LEXIS 37768 (N.D. Ill. Apr. 7, 2011), Plaintiff asserts "[f]iduciary duties arise under the duty to defend, including the duty to consider the insured's interest." (Resp. at 10). First, that explanation has nothing to do with Morgen, a former in-house attorney for DePaul. There is no allegation she owed any duty to Plaintiff. Second, directly contradicting Plaintiff's assertion, *Malaker* dismissed a breach of fiduciary duty claim because the "insurer-insured relationship does not in itself give rise to a fiduciary relationship under Illinois law." *Id.* at *8. Just as in *Malaker*, Plaintiff has not pled any facts that would establish a special relationship giving rise to a fiduciary duty between Plaintiff and DePaul or Morgen. Accordingly, Count V should be dismissed with prejudice.

## V.     COUNTS VI AND VII SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS NOT PLED THE FORMATION OF AN ORAL EMPLOYMENT CONTRACT.

Plaintiff's breach of oral employment contract (Count VI) and breach of the covenant of good faith and fair dealing (Count VII) should be dismissed because Plaintiff failed to plead material terms sufficient to form an oral contract and the statute of frauds bars each claim.

Plaintiff has pled he was negotiating a contract to be an adjunct professor with DePaul, which never came to fruition. (FAC ¶¶ 11-21). He is now attempting to transform those

negotiations into an oral contract of employment, which the law does not permit. "[O]ral employment contracts, at least under Illinois law, are viewed with more skepticism than their formal, written counterparts." *Tolmie v. United Parcel Serv., Inc.*, 930 F.2d 579, 580 (7th Cir. 1991). "To be enforceable, an oral contract must contain terms which are definite and certain." *Baxi v. Ennis Knupp & Assocs., Inc.*, 2011 U.S. Dist. LEXIS 99857, at *8 (N.D. Ill. Sept. 2, 2011). This requirement both "sav[es] the judiciary from the very difficult task of reconstructing *ex post facto* the uncertain terms of an uncertain agreement" and "prevents employers from incurring contractual liability for informal statements that were never intended to be anything more than expressions of long continuing good will and hope for eternal association" *Id.* (citing *Tolmie*, 930 F.2d at 581). "An enforceable contract is not created where 'material terms are not ascertainable,' and '[t]he court will not supply missing essential terms to an alleged contract.'" *Gentry v. Allied Tube & Conduit Corp.*, 2017 U.S. Dist. LEXIS 13088, *7 (N.D. Ill. Jan. 24, 2017). Under these standards, Plaintiff has not pled an oral contract.

In his Response, Plaintiff argues the terms of his alleged employment contract were clear because Plaintiff understood he "would teach his courses in Religious Studies, [and] he would be paid a minimum of $4,800 per course." (Resp. at 11). These allegations do not create a reasonable inference the parties agreed upon the "definite and certain" terms of the contract – *i.e.*, the number of courses he would teach, the amount he actually would be paid, the date he would start, or the time period he would teach – because Plaintiff concedes his position in the Religious Studies department was eliminated and he was negotiating for a new role. (Resp. at 11; FAC ¶ 15). Counts VI and VII should be dismissed on this ground alone.

Even if Plaintiff could plausibly allege an oral agreement to pay Plaintiff "a minimum" of $4,800 per class he taught, Plaintiff's claim still would fail because the alleged oral contract did

not obligate DePaul to assign Plaintiff to teach any particular number of courses. Without such a requirement, Plaintiff cannot state a breach of contract because DePaul is not alleged to have breached a contractual term. For this reason as well, Counts VI and VII should be dismissed.

Plaintiff also has not demonstrated any facts to overcome the statute of frauds. Plaintiff alleged he entered into an alleged oral contract with the Chair of the Religious Studies department in the Spring of 2017 to teach for the 2017-18 academic term, which ended June 30, 2018. (FAC ¶¶ 12, 15-18; *see also* Opening Br., Exhibit 5 at ¶ 6). Plaintiff admits his contract was "renewed each academic term after a review of Plaintiff's performance", Keshk promised Plaintiff could "adjunct in the next academic year [*i.e.*, 2017-18]", "the other VAP in the department returned to work the next academic year as an adjunct", and "Defendant agreed to have Plaintiff adjunct in the upcoming year." (FAC ¶¶ 12, 22, 113, and 116). Plaintiff cannot now change the allegations in his FAC to attempt to circumvent the statute of frauds.

Plaintiff now claims DePaul's "policies" provide adjunct contracts expire at the end of each quarter or semester. (Resp. at 11). Plaintiff's argument is inconsistent with the FAC and falls woefully short of showing *his* contract could be performed within one year of formation. *See Brown v. St. Xavier Univ.*, 2015 IL App (1st) 142824-U, ¶ 21. Counts VI and VII should be dismissed, with prejudice, for this additional reason.

Finally, Plaintiff's Response does not address, and thus has abandoned, the arguments DePaul set forth for the dismissal of Count VII (breach of the covenant good faith and fair dealing). *See Alioto*, 651 F.3d at 721. Count VII should be dismissed with prejudice for this reason as well.

## VI.   COUNT VIII FOR PROMISSORY ESTOPPEL FAILS AS A MATTER OF LAW.

Plaintiff's Response does nothing to save his promissory estoppel claim. Plaintiff now asserts the promise he relied on was Keshk's promise that Plaintiff could propose Enhanced Pay, and Keshk would solicit the proposed amount from the Dean of the college. (Resp. at 12; *see also*

FAC ¶¶ 19, 116). Plaintiff asserts he reasonably relied on this representation and sent Keshk a proposal for Enhanced Pay. (Resp. at 12). According to Plaintiff, he "relied on the promise to his detriment, as this was used as a basis to deny him employment as an adjunct." (*Id.* at 12; *see also* FAC ¶ 118). Plaintiff's claim fails because Keshk did exactly as he allegedly promised he would.

According to Plaintiff, Keshk solicited the Enhanced Pay from the Dean and, as a result, DePaul denied Plaintiff's opportunity to adjunct. (FAC ¶ 118). Keshk did not promise Plaintiff's request for Enhanced Pay would be accepted, he did not promise Plaintiff employment as an adjunct professor, and he did not promise how the Dean would react to Plaintiff's request for Enhanced Pay. (*See* FAC ¶¶ 11-19). It was not foreseeable Plaintiff would rely on Keshk's representations about Enhanced Pay as a promise of how DePaul would respond because Plaintiff was informed it was subject to approval by the Dean. (FAC ¶ 19). Finally, Plaintiff does not – and cannot – allege he actually relied to his detriment on Keshk's statements. *See Ross v. May Co.*, 377 Ill. App. 3d 387, 394 (1st Dist. 2007) (affirming trial court's dismissal of plaintiff's estoppel claim because plaintiff could not have reasonably relied on employer's statements in foregoing other possible employment opportunities).

Even if Plaintiff could overcome these critical deficiencies, which he cannot, the statute of frauds bars Plaintiff's promissory estoppel claim for the same reason his breach of oral contract is barred by the statute of frauds. *See Brown*, 2015 IL App (1st) 142824-U, ¶ 28. Therefore, Count VIII should be dismissed with prejudice.

## VII.    THE DOCTRINE OF EQUITABLE ESTOPPEL DOES NOT SAVE PLAINTIFF'S TIME-BARRED FALSE LIGHT CLAIM.

Plaintiff concedes his false light claim (Count IX) is time-barred. (*See* Resp. at 12). Plaintiff asserts DePaul is equitably estopped from asserting a statute of limitations defense. As Plaintiff concedes, equitable estoppel only "comes into play if the defendant takes active steps to

prevent the plaintiff from suing in time." (Resp. at 12 (citing *Smith v. Chi. Heights*, 951 F.2d 834, 840 (7th Cir. 1992)). "In essence, equitable estoppel focuses on whether the defendant acted *affirmatively* to stop or delay the plaintiff from bringing suit within the limitations period." *Smith*, 951 F.2d at 841 (emphasis in original).

Here, there are no factual circumstances contained in the FAC warranting application of this limited doctrine. Plaintiff does not – and cannot – allege DePaul took active steps to conceal the DePaulia article from Plaintiff. To the contrary, the DePaulia contacted Plaintiff and his attorney multiple times for comment before the article was published on April 2, 2018. (FAC ¶ 49; *see also* Pl.'s Mot. for Preliminary Injunction, Exhibit C, Dkt. No. 26). Plaintiff has further admitted after the article's publication, Plaintiff was "devastated" and "feared that the article would end [his] career." (Pl.'s Mot. for Preliminary Injunction, Exhibit A at ¶ 17). At the time of publication, Plaintiff certainly was aware of not only the fact of publication, but also the potential negative consequences. Plaintiff cannot identify a single active step DePaul, Morgen or Tamburro took to stop Plaintiff from filing a lawsuit regarding the DePaulia article.

Despite these facts, Plaintiff argues his delay in filing the lawsuit was because DePaul's "conduct impressed upon the Plaintiff that what prevented a reconciliation between he and his employer was the legal case that remained." (Resp. at 14). Plaintiff's explanation lacks any factual support. Plaintiff alleged DePaul informed him in 2017 he was barred from teaching at DePaul ever again based on its finding he violated its sexual harassment policy. (FAC ¶ 42). Plaintiff does not argue DePaul told him or suggested in any way he should not sue DePaul based on the DePaulia article.

Plaintiff's Response makes clear the alleged facts do not demonstrate DePaul, Morgen or Tamburro took any active step to prevent Plaintiff from bringing his claim within the limitations

period. *See Struthers v. Minooka Cmty. High Sch. Dist. No. 111*, 2015 U.S. Dist. LEXIS 78959, at *6-7 (N.D. Ill. June 17, 2015) (dismissing plaintiff's defamation claim under Rule 12(b)(6) where there were no allegations the defendants actively sought to prevent plaintiff from filing a lawsuit). Therefore, Count IX should be dismissed with prejudice.

## VIII. PLAINTIFF'S PUNITIVE DAMAGES REQUEST IN COUNTS II AND IV–VIII MUST BE STRICKEN.

In *Barnes v. Gorman*, 536 U.S. 181, 187-88 (2002), the Supreme Court held punitive damages are not available under Title VI, which it stressed has been interpreted consistently with Title IX. Federal courts have interpreted *Barnes* as holding Title IX precludes an award of punitive damages. *See, e.g.*, *Mercer v. Duke Univ.*, 401 F.3d 199, 202 (4th Cir. 2005); *Lalowski v. Corinthian Sch., Inc.*, 2012 U.S. Dist. LEXIS 9189, *10 (N.D. Ill. Jan. 26, 2012) (holding punitive damages are not available under Title IX); *Lozier v. Quincy Univ. Corp.*, 2019 U.S. Dist. LEXIS 15348 (C.D. Ill. Jan. 31, 2019); *Cartwright v. Regents of the University of California*, 2009 U.S. Dist. LEXIS 62953 (E.D. Cal. July 21, 2009). The Court should strike Plaintiff's request for punitive damages under Title IX, as well as under each of his contract claims (Counts II and IV–VIII).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court dismiss Plaintiff's First Amended Complaint in its entirety and with prejudice, and strike from Plaintiff's prayer for relief his claim for punitive damages with respect to Counts II and IV–VIII.

Dated:  September 26, 2019

Respectfully submitted,

DePaul University, Karen Tamburro and
Marla Morgen, Defendants

By:  /s/ Brian P. Paul
One of Their Attorneys

Brian P. Paul
Kerryann M. Haase
Sara R. Whaley
Michael K. Chropowicz
Michael Best & Friedrich LLP
444 West Lake Street, Suite 3200
Chicago, Illinois  60606
Telephone: 312.222.0800

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2019, I electronically filed the foregoing ***Defendants' Reply in Support of Their Motion to Dismiss Plaintiff's First Amended Complaint and Motion to Strike***, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

**Christina W. Abraham**
Abraham Law & Consulting, LLC
161 N. Clark St., Suite 4700
Chicago, Illinois 60601
Email: christina.w.abraham@gmail.com

/s/ Brian P. Paul
Attorney for Defendants, DePaul University,
Karen Tamburro and Marla Morgen
Michael Best & Friedrich LLP
444 West Lake Street, Suite 3200
Chicago, Illinois 60606
E-mail: bppaul@michaelbest.com