**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LAITH SAUD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19-cv-3945 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| DEPAUL UNIVERSITY, KAREN | ) | |
| TAMBURRO, and MARLA MORGEN | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Laith Saud filed a complaint [1] and later an amended complaint [17] against his former employer, DePaul University, and two of its staff members, Karen Tamburro and Marla Morgen, alleging violations of 42 U.S.C. § 1983 ("§ 1983"), 20 U.S.C. § 1681 ("Title IX"), 42 U.S.C. § 1981 ("§1981"), breach of an indemnification contract, breach of oral employment contract, promissory estoppel, and false light. Plaintiff also filed a motion [25] for a preliminary injunction. Defendants moved to dismiss the amended complaint [17] and opposed the preliminary injunction [29].

For the reasons explained below, Defendants' motion to dismiss [19] is granted in part and denied in part. Specifically, Count I is dismissed with prejudice. Count II is dismissed with leave to amend by November 19, 2019. Counts IV through IX are dismissed without prejudice. The motion to dismiss is denied with respect to Count III. Plaintiff's motion [25] for a preliminary injunction is also denied. This case is set for further status hearing on November 26, 2019 at 9:30 a.m.

# I.  Background

Plaintiff Laith Saud, an Arab American male and former professor at Defendant DePaul University, brought this action against his former employer for an allegedly botched investigation into allegations of sexual misconduct involving a student, failing to defend him in the student's civil suit, and not rehiring him.  For the purposes of deciding the motion to dismiss, the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff.  *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

In 2005, Defendant DePaul University hired Plaintiff as an adjunct professor in its Religious Studies Department.  Plaintiff's courses were popular, and in 2010 he was promoted to Visiting Assistant Professor, a position with a contract subject to review and renewal at the end of each academic term.  In 2016, Plaintiff began a romantic relationship with a student in one of his classes.  At that time, DePaul had no policy prohibiting such relationships between students and faculty.  The amended complaint does not go into detail, but at some point the relationship apparently soured.  In spring 2017, Plaintiff received an attorney's lien letter from an attorney representing the student.  The letter accused Plaintiff of sexual misconduct but did not provide details of the allegedly wrongful acts.

Around the same time, DePaul told the two Visiting Assistant Professors in the Religious Studies department—Plaintiff and a white male—that their positions were being "shifted" due to "budgetary reasons."  [17] at 5.  The chair of the Religious Studies department, Khaled Keshk, proposed that Plaintiff and the other Visiting Assistant Professor teach as adjunct professors in the department.[1]  Keshk also emailed Plaintiff and the other Visiting Assistant Professor and invited

---

[1] The parties dispute whether the DePaul and Plaintiff formed a contract for Plaintiff to teach as an adjunct professor.

them to propose "Enhanced Pay," a bonus on top of the regular adjunct salary. Plaintiff did so. The other Visiting Assistant Professor returned to work as an adjunct the following academic year. Plaintiff did not.

In May 2017, Defendant Karen Tamburro, DePaul's Title IX Coordinator, began investigating alleged sexual misconduct by Plaintiff. Keshk told Plaintiff that he was being investigated and said he did not think Plaintiff would be treated fairly, because he is a male of Arab heritage. [17] at 6. Tamburro met with Plaintiff but did not convey to Plaintiff any specific allegations against him. Plaintiff said that he had been in a consensual relationship with the student and that she had become upset with him in February 2017 when he didn't respond to her text messages within a day. Plaintiff denied using his position as a professor for sexual favors and said that he gave A grades to all students who attended and participated in his course.

Tamburro attempted to contact the student, both directly and through her attorneys. Neither the student nor her attorneys cooperated with the investigation or provided further detail regarding the alleged sexual misconduct. Sometime in May 2017, Tamburro completed her investigation and issued a report finding that Plaintiff did not violate any of DePaul's policies.

On June 28, 2017, Plaintiff emailed Tamburro and wrote that he believed he was the victim of sexual misconduct by the student because he was being used as a conduit for her to sue DePaul. [17] at ¶ 27; see also [26-2]. Tamburro did not reply to Plaintiff's email, nor did she open a Title IX investigation in response.

On June 29, 2017, the student filed a lawsuit alleging common law battery and violation of the Illinois Gender Violence Act ("GVA") against Plaintiff and negligent hiring and supervision against DePaul. Among other things, the lawsuit alleged that Plaintiff had been the subject of "many complaints of harassment" at DePaul, had taken the student to dinner and had "plied her

with alcohol," and "forcibly" pursued sex with her twice. See [17] at 8. Plaintiff denies these allegations.[2] Defendant Marla Morgen, Senior Associate General Counsel at DePaul, told Plaintiff that pursuant to the terms of DePaul's Bylaws, DePaul would indemnify and defend him. DePaul selected and began paying for Plaintiff's attorneys, who entered into a Joint Defense Agreement ("JDA") with DePaul.

Shortly after the student filed her lawsuit, DePaul withdrew its offer to have Plaintiff teach as an adjunct in the upcoming academic year. Tamburro also reopened her investigation into Plaintiff's alleged misconduct. Neither the student nor her attorneys cooperated with the second investigation either, but the school's findings changed. According to Tamburro's second report, a preponderance of the evidence did not support a finding that Plaintiff committed battery or abused his position, but it did support a finding that he had sexually harassed the student. Plaintiff alleges that Tamburro's methods and findings failed to adhere to federal guidelines, or DePaul's procedures, on conducting Title IX investigations. [17] at ¶ 42. DePaul then sent Plaintiff a letter stating that he was not eligible for future employment at DePaul and was barred from DePaul-sponsored or co-sponsored events. Furthermore, DePaul told Plaintiff that the investigation was closed and would not be reopened, even if new evidence was obtained, and that he could not appeal the decision.

The student's lawsuit continued. Plaintiff filed a verified answer denying that he ever used his position or grades for sexual favors and that the encounters alleged by the student ever took place. He also countersued for defamation. DePaul was dismissed from the case in February 2018, and the student filed a notice of appeal.

---

[2] As described below, the state trial court found Plaintiff not liable for battery or for violations of the Gender Violence Act and also found for Plaintiff in his defamation counterclaim against the student.

On April 2, 2018, the DePaulia published an article about the lawsuit. The DePaulia is DePaul's school newspaper, which publishes articles written by student journalists who are advised by faculty at DePaul's College of Communication. The article, entitled "Power Player: Former DePaul student sues ex-professor for sexual coercion," described the litigation and repeated allegations from the state court complaint that Plaintiff denies, including that Plaintiff had been the subject of "many complaints of harassment" at DePaul, "plied" the student with alcohol, and used his position to coerce the student into having sex with him. The article was posted on the DePaulia website and was "pinned" on the DePaulia's Twitter account for several months, meaning that it appeared at the top of the Twitter page, above articles more recently published and tweeted by the paper. Plaintiff, on the advice of his attorneys, provided no statement to the DePaulia, and his attorneys did not comment either.

Later in April 2018, DePaul and the student settled. DePaul pressured Plaintiff to settle, but he refused. DePaul, via Morgen, informed Plaintiff that it would no longer defend or indemnify him (but did not notify Plaintiff that it was terminating the Joint Defense Agreement). A year later, on April 15 and 16, 2019, a bench trial was held in the case. The trial judge denied the student's claims and granted Plaintiff's defamation claim. The trial court found that, on the night the student claimed the assault had occurred, she and Plaintiff had dinner together but did not have sexual intercourse at all; Plaintiff did not force her to drink alcohol; and Plaintiff never offered her anything, threatened her, or had any *quid pro quo* arrangement with her.

Since being barred from teaching at DePaul, Plaintiff has been unable to find work. The DePaulia article remains on the first page of search results when conducting a Google search of Plaintiff's name, and at least one prospective employer told Plaintiff that news of the student's lawsuit is the reason that he was not considered for employment.

On June 12, 2019, Plaintiff filed the complaint [1] in the instant case. On July 19, 2019, he filed an amended complaint [17]. Defendants filed a motion to dismiss [19] on August 8, 2019. Plaintiff also filed a motion for a preliminary injunction [25] on August 29, 2019, which Defendants oppose [29].

## II.    Legal Standard

When ruling on a motion to dismiss, a district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The Court need not "accept as true any legal assertions or recital of the elements of a cause of action supported by mere conclusory statements." *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir.) (citation omitted). A motion to dismiss for failure to state a claim tests the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990). To survive such a motion, the complaint must allege sufficient facts that, if true, would raise a right to relief above the speculative level, showing that the claim is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 at 555 (2007). To be plausible on its face, the complaint must plead facts sufficient for "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, a plaintiff can "plead himself out of court by pleading facts that show that he has no legal claim." *Epstein v. Epstein*, 843 F.3d 1147, 1150 (7th Cir. 2016) (quoting *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011)). This can occur when the complaint includes "facts that establish an impenetrable defense to its claims." *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008)).

III.    **Analysis**

A.    **§1983 Claim**

Count I of the amended complaint asserts a claim under 42 U.S.C. § 1983 against all Defendants on the basis that Plaintiff was deprived "of his constitutional right to substantive and procedural due process." [17] at ¶ 86. To state a claim under § 1983, a plaintiff must show: (1) his constitutional rights were violated (2) by a person acting under color of state law. *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). A private actor may be sued under § 1983 only if the private actor's conduct is "fairly attributable to the state." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). A private party will be deemed to have acted under "color of state law" when the state either (1) effectively directs or controls the actions of the private party such that the state can be held responsible for the private party's decision, or (2) delegates a public function to a private entity. See *Johnson v. LaRabida Children's Hosp.*, 372 F.3d 894, 896 (7th Cir. 2004)

DePaul is, as Plaintiff pled, a private university. [17] at ¶ 7. Nevertheless, Plaintiff alleges that DePaul acted under the color of state law because it receives grants and funding from the State of Illinois, has certain reporting obligations to the State, received funds from the City of Chicago to build its basketball arena, shares facilities with and has a partnership with the City's community college program, and receives special treatment from the city related to security services, traffic management, and "access to coveted property." [17] at ¶¶ 73-76. None of these facts rises to the level of the state directing or controlling DePaul's actions, or of the state delegating a public function to DePaul. See, *e.g.*, *Rendell–Baker v. Kohn*, 457 U.S. 830, 840 (1982) (holding that private school did not engage in state action despite receipt of public funds and high degree of state regulation); *Hu v. Am. Bar Ass'n*, 568 F. Supp. 2d 959, 963–64 (N.D. Ill. 2008) (finding that private law school was not a state actor because education is not a public function and "neither

7

general government involvement nor detailed and extensive regulation or public funding is sufficient to find state action").  Because the amended complaint fails to allege facts showing that either DePaul or the individual defendants acted under color of law, he has failed to plead a §1983 claim and Count I is dismissed with prejudice.  See *Slovinec v. DePaul Univ.*, 332 F.3d 1068, 1069 (7th Cir. 2003) (affirming dismissal with prejudice and noting that "DePaul is a private university, so [plaintiff] cannot use 42 U.S.C. § 1983" to enforce federal statutes against DePaul); *Covington v. Nat'l Univ.*, 2015 WL 7568462, at *2 (N.D. Ill. Nov. 25, 2015) ("Plaintiff's allegations do not implicate state action on the part of the individual defendants [who were university employees] and his [§ 1983] claims against them may not proceed."); *Collins v. Nw. Univ.*, 164 F. Supp. 3d 1071, 1077 (N.D. Ill. 2016) (dismissing § 1983 claims because private university's human resources department did not serve an exclusive governmental function and could not act under color of law in investigating and disciplining employees for university policy violations).

## B.     Title IX Discrimination Claim

Plaintiff asserts that Defendants discriminated against him on the basis of his gender by denying him access to educational benefits and programs, in violation of Title IX of the Education Amendments Act of 1972, 20 USC § 1681 *et seq.*  See [17] at 20.  Defendants respond that Plaintiff's Title IX claim is employment-related and therefore preempted by Title VII.  Defendants are correct.

The relevant Seventh Circuit precedent is *Waid v. Merrill Area Public Schools,* 91 F.3d 857, 862 (7th Cir. 1996), overruled on other grounds, *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009).  In *Waid*, the Seventh Circuit held that Title VII preempted an employee's claim for equitable relief under Title IX.  *Id.* at 862.  Since then, counts have consistently adhered to *Waid*'s holding Title VII provides the exclusive remedy for gender discrimination in employment.

See, *e.g.*, *Brown v. Illinois Dep't of Human Servs.*, 717 F. App'x 623, 625–26 (7th Cir. 2018) (referring to "our precedent that all employment-discrimination claims must be brought under Title VII" and citing *Waid*); *Jones v. Sabis Educ. Sys., Inc.,* 1999 WL 1206955, at *10 n. 7 (N.D. Ill. Dec. 13, 1999) (finding Title VII preempted Title IX wrongful discharge claim); *Kowal–Vern v. Loyola Univ. of Chicago,* 2002 WL 1880131, at *5 (N.D. Ill. Aug. 14, 2002) ("Title VII is the exclusive remedy for [plaintiff's] claim of employment discrimination based on gender."); *Blazquez v. Bd. of Educ. of City of Chicago,* 2006 WL 3320538, at *11 (N.D. Ill. Nov. 14, 2005) ("While the overall scope of Plaintiff's claims might seem more appropriately addressed as a systemic educational problem under Title IX, this particular claim [failure to provide a teacher's aide] is based upon the harassment Plaintiff herself suffered. There is therefore no reason to look beyond the comprehensive scope of remedies and actions available to Plaintiff under Title VII.").

   *Ludlow v. Northwestern University*, as Defendants point out, is particularly instructive. 125 F. Supp. 3d 783, 789 (N.D. Ill. 2015).  In *Ludlow*, a graduate student in a romantic relationship with a professor asserted that the professor had non-consensual sex with her.  Northwestern investigated and, according to the professor, gave the graduate student preferential treatment during the investigation, including sending her confidential emails without the professor's permission and refusing to tell the professor the details of the allegations against him.  The investigation ultimately found insufficient evidence to support the claim of non-consensual sex, and because the professor did not grade or evaluate the graduate student, he did not violate Northwestern's policy prohibiting professors from dating students.  However, the investigation did find that the professor violated Northwestern's sexual harassment policy because he had unequal power in the relationship based on his purchase of expensive dinners and the exercise of his "charm." *Ludlow*, 125 F. Supp. 3d at 787.

The professor brought a Title IX claim against Northwestern, but the court found that it was preempted by Title VII, because it alleged a form of employment discrimination. The court reached that conclusion because (1) the investigation "was conducted because of [his] position as a professor at Northwestern," (2) the "finding of sexual harassment was based on his status as a professor with 'unequal power' over a graduate student with whom he had a relationship," and (3) he "would not be subject to Northwestern's sexual harassment policies and procedures but for his job there." *Id.* at 790. Furthermore, the professor argued that the damages he suffered were a materially adverse employment action that could be classified as "changes to the employee's work conditions" and "employee's future career prospects." *Id.* at 790-91. Because the professor's Title IX claim was for employment discrimination, the court determined that it was preempted under Title VIII and dismissed it with prejudice. *Id.*

Plaintiff's amended complaint in this case lays out similar relevant facts. Plaintiff, a professor at DePaul, had a romantic relationship with a student. [17] at ¶ 26. The student alleged sexual misconduct on Plaintiff's part. *Id.* at ¶¶ 23-24. The university investigated, and Plaintiff alleges deficiencies in the investigation, including reaching a conclusion despite lack of cooperation from the accuser and her attorneys (*id.* at ¶¶ 28, 40) and making credibility determinations in the accuser's favor without speaking to her (*id.* at ¶ 86). DePaul's investigation did not support a finding that Plaintiff committed battery or abused his position, but it did determine that Plaintiff had violated the school's sexual harassment policy. *Id.* at ¶ 42. The damages alleged by Plaintiff include DePaul withdrawing an offer to have Plaintiff teach as an adjunct (*id.* at ¶ 41), DePaul barring Plaintiff from future employment and participation in DePaul-sponsored events (*id.* at ¶¶ 44, 77, 79, 95), and Plaintiff losing other professional and employment opportunities (*id.* at ¶¶ 81-84).

Like the professor in *Ludlow*, Plaintiff was subject to DePaul's policies and procedures because he was a professor, and the university investigated him because of his actions as a professor. The damages he claims include losing an adjunct position and future employment. Plaintiff's Title IX claim is for employment discrimination; it is therefore preempted by Title VII and must be dismissed.

Defendants argue in the alternative that the amended complaint does not state a claim for gender discrimination under Title IX. Because the Court dismisses Count II on preemption grounds, it will not address this argument. But Plaintiff's allegations, if true, are concerning, especially in light of recent Seventh Circuit precedent on universities' obligations in investigating allegations of sexual misconduct. See *Doe v. Purdue Univ.*, 928 F.3d 652 (7th Cir. 2019) (university student accused of sexual violence adequately pled that procedures employed by university in disciplinary hearing were fundamentally unfair in violation of his due process rights, by alleging that university did not disclose its evidence to him, that two of three panel members admitted that they had not read investigative report, that panel never spoke to accuser or received sworn statement from her, and that he was not given opportunity to present impeachment evidence). It may be that Plaintiff can state a Title VII claim and/or a claim for gender discrimination under a cause of action other than Title IX, so the Court will give him the opportunity to do so, if can consistent with his obligations under Rule 11 of the Federal Rules of Civil Procedure. Plaintiff may submit an amended complaint on or before November 19 , 2019.

### C.    §1981 Claim

Count III asserts, in somewhat summary fashion, a claim of racial discrimination under 42 U.S.C. § 1981. [17] at 21. Defendants argue that Plaintiff has failed to state a claim under § 1981 because the amended complaint does not state that race was the "but-for" cause of any adverse

action taken against him, but rather asserts that "DePaul's real motivation * * * was to protect its own legal and public relations interests." [20] at 9, citing [17] at ¶ 113, and ¶¶ 90, 106. A footnote also argues that Plaintiff fails to identify his race or ethnicity. [20] at 9, fn. 2.

The Court addresses the last point first: the amended complaint notes Plaintiff's "Arab heritage" ([17] at ¶¶ 10, 25) and describes Plaintiff as "Arab American" (*id*. at ¶ 98). The Supreme Court has interpreted § 1981 to include persons of Arab descent. *St. Francis College v. Al-Khazraji*, 481 U.S. 604 (1987). So has the Seventh Circuit. *Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 829 (7th Cir. 2007) ("We note initially that the Supreme Court has recognized that the § 1981 protection against racial discrimination applies to discrimination based on a person's status as an Arab."). The Court sees no deficiency in Plaintiff's identification of his race for §1981 purposes.

The Court now turns to the question whether Plaintiff stated a claim for discrimination based on his race. The bar he must meet is low. "A plaintiff alleging race discrimination need not allege each evidentiary element of a legal theory to survive a motion to dismiss." *Freeman v. Metro. Water Reclamation Dist. of Greater Chicago*, 927 F.3d 961, 965 (7th Cir. 2019) (citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510–14 (2002). Rather, all the complaint needs to say is that Plaintiff was fired, or not rehired, because of his race. See *id.;* see also *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("'I was turned down for a job because of my race' is all a complaint has to say."); *Sroga v. City of Chicago*, 2019 WL 5208870, at *5 (N.D. Ill. Oct. 16, 2019) ("Sroga is merely at the pleading stage where the requirements in the race-discrimination context are minimal, and he need only allege that he was passed over for employment because of his race.").[3] Furthermore, Plaintiff is correct that a § 1981 claim requires showing that race was a

---

[3] While these cases address primarily claims under Title VII, the Seventh Circuit has noted that "the methods of proof and elements of [a Section 1981] case are essentially identical" to those in a Title VII case,

"motivating factor" in, not the but-for cause of, an employment decision. See *Boyd v. Ill. State Police*, 384 F.3d 888, 985 (7th Cir. 2004). "A motivating factor is a factor that weighs in the defendant's decision to take the action complained of * * *. It is a, not necessarily the, reason that he takes the action." *Hasan v. U.S. Dep't of Labor*, 400 F.3d 1001, 1006 (7th Cir. 2005) (citations omitted).

The amended complaint meets the low bar for pleading a § 1981 claim. It alleges that Plaintiff is an Arab American, that he and a white male professor were both Visiting Assistant Professors whose positions were eliminated, that both were offered an adjunct position with the opportunity to request pay, and that Plaintiff's "comparator" was offered an adjunct position, but Plaintiff was "treated disparately" and not offered an adjunct position. [17] at 98. That is close enough to 'I was turned down for a job because of my race' to state a claim under § 1981 claim. See *Bennett*, 153 F.3d at 518. Defendants' motion to dismiss is denied as to Count III.

### D.     State Law Claims and Supplemental Jurisdiction

Plaintiff also brings five state law claims, over which he says this Court has supplemental jurisdiction. Where a district court has original jurisdiction over one claim, it may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United State Constitution." 28 U.S.C. § 1367(a). Supplemental jurisdiction is a "doctrine of discretion, not of plaintiff's right," (*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)), but "judicial power to hear both state and federal claims exists where the federal claim has sufficient substance to confer subject matter jurisdiction on the court, and the state and federal

---

*McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009), and analyzed Title VII and Section 1981 claims together. See, *e.g, Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013); *Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 649 (7th Cir. 2011).

claims derive from a common nucleus of operative facts." *Ammerman v. Sween*, 54 F.3d 423 (7th Cir.1995) (citing *Gibbs*, 383 U.S. at 725). The phrase is somewhat amorphous,[4] but "[a] loose factual connection between the claims is generally sufficient." *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007) (quoting *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995), and *Sween*, 54 F.3d at 424). However, it is not enough that the claims be tangentially related. *Hernandez v. Dart*, 635 F. Supp. 2d 798, 814 (N.D. Ill. 2009) (citing *Chaney v. City of Chicago.*, 901 F. Supp. 266, 270 (N.D. Ill. 1995)). Furthermore, the "facts linking state to federal claims must be 'operative,' *i.e.*, they must be 'relevant to the resolution of' the federal claims." *U.S. v. Clark*, 2010 WL 476637, * 1 (N.D. Ill. 2010) (citing *Berg*, 372 F. Supp. 2d at 1093); see also *General Auto Serv. Station v. The City of Chicago*, 2004 WL 442636, at *12 (N.D. Ill. 2004) (state law claim that provided "factual background" for federal constitutional claim was not sufficiently related to give rise to supplemental jurisdiction).

### 1. Common Nucleus of Operative Fact

At this point, the only surviving federal claim is Count III, a claim of racial discrimination under 42 U.S.C. § 1981. The state law claims alleged in the amended complaint are:

- Count IV, Breach of Contractual Obligation to Defend and Indemnify;

- Count V, Breach of Fiduciary Duties / Defense and Indemnification;

- Count VI, Breach of Employment Contract;

- Count VII, Breach of Fiduciary Duty in Employment Contract;

- Count VIII, Promissory Estoppel; and

- Count IX, False Light Invasion of Privacy.

---

[4] "No one has come up with a better phrase, despite a lot of trying, so we apply this one as best we can." *Prolite Bldg. Supply, LLC v. MW Manufacturers, Inc.*, 891 F.3d 256, 258 (7th Cir. 2018).

The state law claims do not share a common nucleus of operative fact with the surviving § 1981 claim.

Plaintiff's § 1981 claim asserts that he was not offered an adjunct professor position, but a similarly situated white professor was. This claim will require evidence about Plaintiff's qualifications, his alleged comparator's qualifications, whether the two were actually similarly situated, and DePaul's motivations for declining to offer Plaintiff an adjunct position. The state law claims have little, if any, overlap with that evidence. First, Count IV and Count V deal with DePaul's alleged duties to defend and indemnify Plaintiff in a suit by the student who accused him of sexual misconduct. The facts that will show whether DePaul had contractual or fiduciary duties to defend and indemnify Plaintiff have no bearing on whether Plaintiff was denied an adjunct position because of his race. Second, Counts VI, VII, and VIII are essentially claims that DePaul had a contract with Plaintiff for an adjunct professor position, but breached by not offering him the position and by misleading him about the effect that seeking enhanced pay would have on his application. These issues are closer to the § 1981 claim, but the facts necessary to resolve them— including whether a contract or promise of employment existed, and what DePaul's duties in negotiating with Plaintiff were—are not relevant to the resolution of the remaining federal claim for racial discrimination. *U.S. v. Clark*, 2010 WL 476637, * 1 (N.D. Ill. 2010) (citing *Berg*, 372 F. Supp. 2d at 1093). Finally, Plaintiff's False Light Invasion of Privacy claim (Count IX) focuses on the DePaulia newspaper article on the state court suit against Plaintiff, which is entirely unrelated to whether DePaul declined to hire Plaintiff as an adjunct due to his race.

In sum, none of the facts necessary to resolution of the state law claims are more than tangentially related to sole remaining federal claim. Therefore, the Court concludes that it lacks supplemental jurisdiction over Counts IV through IX in the amended complaint. Counts IV

through IX are dismissed. The dismissal is without prejudice, because the Court is giving Plaintiff the opportunity to amend the complaint, in case he can plead a Title VII claim and/or a gender discrimination claim. If he can, it may be that the Court will have supplemental jurisdiction over some or all of the state law claims. The Court defers that question unless and until it is properly presented.

### 2. State Law Claims Would Substantially Predominate Over Federal Claims

28 U.S.C. § 1367(c) permits a district court to decline to exercise supplemental jurisdiction over a claim if it substantially predominates over the original claim or in exceptional circumstances in which there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c)(2), (4); see also *Koresko*, 503 F.3d at 614–15. The "power [to adjudicate state law claims] need not be exercised in every case in which it is found to exist. [Rather] [i]t has consistently been recognized that pendent [now supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right." *Gibbs*, 383 U.S. at 726. The Seventh Circuit has "acknowledge[d] the broad discretion of district judges in making judgments concerning the retention of supplemental claims." *Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (7th Cir. 1997). "[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Gibbs*, 383 U.S. at 726–277; see also *Green Valley Investments v. Winnebago Cty., Wis.*, 794 F.3d 864, 869–70 (7th Cir. 2015).

Here, the scope and proof of the issues raised in the state law claims would substantially predominate over the sole federal claim left in the case. Deciding the state law claims would require significant forays into Illinois contract law, regarding both DePaul's alleged duty to defend and indemnify and Illinois's rules on contract formation and promissory estoppel, as well as

16

Illinois law on false light claims and applicable statues of limitations. The scope and variety of the issues in these five state law claims would threaten to eclipse the sole federal count left in the complaint. Therefore, even if the Court had supplemental jurisdiction over Counts IV through IX, the Court would decline to exercise it at this time, as those state law claims would predominate over the lone federal claim in Count III. See *Dargis v. Sheahan*, 526 F.3d 981, 991 (7th Cir. 2008) (concluding that district court did not abuse its discretion in declining to exercise supplemental jurisdiction over plaintiff's seven state law claims, on which no other judicial resources had been expended). As noted above, Plaintiff has leave to amend the complaint, and if he does, the supplemental jurisdiction analysis may change. The Court defers that question for now.

### E.    Motion for a Preliminary Injunction

Plaintiff also filed a motion [25] for a preliminary injunction, which asks the Court to order DePaul to remove an article regarding Plaintiff that is posted on the DePaulia website and Twitter account. The Seventh Circuit uses a two-step analysis to assess whether preliminary injunctive relief is warranted. See *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc.,* 549 F.3d 1079, 1085–86 (7th Cir. 2008). "In the first phase, the party seeking a preliminary injunction must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661–62 (7th Cir. 2015). If the movant makes the required threshold showing, then the court moves on to the second stage and considers: "(4) the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted; and (5) the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties," *i.e.* the public interest. *Id.* at 662. The Court balances the

potential harms on a sliding scale against the movant's likelihood of success. The greater the movant's likelihood of success, "the less strong a showing" the movant "must make that the balance of harm is in its favor." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003).

### 1. Reasonable Likelihood of Success on the Merits

"At the preliminary injunction stage, the plaintiff must show that 'it has a better than negligible chance of succeeding on the merits so that injunctive relief would be justified.'" *Personeta, Inc. v. Persona Software, Inc.*, 418 F. Supp. 2d 1013, 1016 (N.D. Ill. 2005) (quoting *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 897 (7th Cir. 2001)). Plaintiff has failed to make this showing. Only one of Plaintiff's nine claims survived Defendant's motion to dismiss, and the surviving § 1981 claim is not related to the DePaulia article that is the subject of Plaintiff's motion for a preliminary injunction. Furthermore, while the amended complaint meets the low bar for pleading a § 1981 claim, the little relevant information that the amended complaint contains does not suggest a high chance of succeeding on the merits. One professor's personal opinion that Plaintiff may not be treated fairly in a sexual misconduct investigation because of his race (see [17] at 6) is quite limited evidence of a § 1981 violation. And the comparator that the amended complaint suggests, a white Visiting Assistant Professor who was offered an adjunct position, may not be very similarly situated; based on the limited evidence before the court, it does not appear that the white professor had any romantic relationships with students, while Plaintiff did. Perhaps the evidence developed as the case continues will show differently, but at this point, Plaintiff has failed to demonstrate a reasonable likelihood of success on the merits of his claims, and this factor weighs in favor of denying the motion for a preliminary injunction.

### 2. Irreparable Harm and Adequacy of Remedy at Law

A party seeking a preliminary injunction must show that he has "no adequate remedy at law,' and * * * that he will suffer 'irreparable harm' if the preliminary injunction is not granted." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). Irreparable harm is harm that is "not fully compensable or avoidable by the issuance of a final judgment (whether a damages judgment or a permanent injunction, or both) in the plaintiff's favor." *Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc*., 735 F.3d 735, 740 (7th Cir. 2013).

Plaintiff's first problem is delay; he moved for a preliminary injunction more than a year after the article was published, and two and a half months after filing the complaint. That delay suggests Plaintiff will not suffer irreparable harm if the Court does not immediately order DePaul to take down the article Plaintiff objects to. *Arjo, Inc. v. Handicare USA, Inc.*, 2018 WL 5298527, at *9 (N.D. Ill. Oct. 25, 2018) ("a significant delay in filing a motion for preliminary injunction undermines the moving party's argument that it will suffer irreparable harm without an injunction"); *Traffic Tech, Inc. v. Kreiter*, 2015 WL 9259544, at *17 (N.D. Ill. Dec. 18, 2015) (plaintiff's delay of over a year in seeking preliminary injunction prevented plaintiff from showing irreparable harm); *Lancaster Found., Inc. v. Skolnick*, 1992 WL 211063, at *5 (N.D. Ill. Aug. 21, 1992) (delay of ten months after an allegedly defamatory article was published was too long to show irreparable harm).

Furthermore, the Seventh Circuit has held that "inability to find another job * * * is not irreparable harm." *Bedrossian v. Nw. Mem'l Hosp.*, 409 F.3d 840, 846 (7th Cir. 2005). But that is exactly the harm Plaintiff seeks to remedy with the motion for a preliminary injunction. See [26] at 4 (asserting that Plaintiff "has been told by prospective employers that news of the accusations [in the 2018 DePaulia article] was the reason they could not work with him. * * * If Plaintiff is not afforded preliminary relief at this stage, he will continue to suffer harm and be

prevented from mitigating his damages by finding employment elsewhere."). Because inability to find other employment is not an "irreparable harm" under Seventh Circuit precedent, this factor weighs in favor of denying the motion for a preliminary injunction. *Bedrossian*, 409 F.3d at 846; *see also Lariviere v. Bd. of Trs. of S. Ill. Univ.*, 2017 WL 2505005, at *3 (S.D. Ill. June 9, 2017) (denying a university employee's request for an injunction because assertions of "unemployment, inability to provide for herself and her family, * * * inability to regain professional status, position and tenure in other employment" did not establish irreparable harm). Plaintiff has also presented no evidence that his injuries could not be remedied by an injunction issued after final judgment, should he prevail, and by monetary compensation for harms suffered in the intervening time. In fact, Plaintiff's reference to mitigating his damages ([26] at 4) suggests that monetary compensation *could* remedy the harms he has suffered.

Because Plaintiff has failed to make the three showings required by the first phase of the preliminary injunction inquiry, the Court denies the motion for a preliminary injunction (see *Bedrossian*, 409 F.3d at 846) and need not address the balance of harms or effects on non-parties, including the serious First Amendment implications of ordering DePaul to de-publish a newspaper article concerning a matter of considerable debate and public interest—namely, the propriety of relationships between teachers and university students.

## IV.     Conclusion

For the reasons stated above, Defendants' motion to dismiss [19] is granted in part and denied in part. Specifically, Count I is dismissed with prejudice. Count II is dismissed with leave to amend by November 19, 2019. Counts IV through IX are dismissed without prejudice. The motion to dismiss is denied with respect to Count III. Plaintiff's motion [25] for a preliminary

injunction is also denied.  This case is set for further status hearing on November 26, 2019 at 9:30 a.m.

Dated: October 29, 2019

_____
Robert M. Dow, Jr.
United States District Judge