**IN THE FEDERAL DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| LAITH SAUD, | |
| Plaintiff, | |
| v. | Case No.: 19-cv-3945 |
| DEPAUL UNIVERSITY, KAREN TAMBURRO, and MARLA MORGEN | Hon. Judge Robert M. Dow, Jr. |
| Defendants. | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S PARTIAL MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

NOW COMES Plaintiff LAITH SAUD, by and through his attorney, responding to Defendants DEPAUL UNIVERSITY, KAREN TAMBURRO, and MARLA MORGEN's partial motion to dismiss Plaintiff's Second Amended Complaint as follows:

**I.      Introduction**

Defendants' partial motion to dismiss fails for a number of reasons.  First it mischaracterizes (again) Plaintiff's pleadings, selectively applies the facts, misrepresents other facts, and attempts to introduce new allegations or interpret the pleadings in a manner more appropriate for summary judgment, following an opportunity for discovery.  Finally, the main thesis of Defendants' argument is that Plaintiff deserved to be falsely accused and punished, an embarrassingly non-legal argument.  Defendants' motion should be denied because he does in fact state a claim for relief under the counts alleged.

Defendants assert, quite confidently, "Plaintiff made a decision to engage in a sexual relationship," and therefore essentially deserved to lose his profession, be portrayed in a false light, permanently banned from all university functions and rendered unemployable in his field. This is not a proper argument at this stage of litigation and it ironically highlights the illegality of Defendants' conduct. At this stage, only Plaintiff's pleading matters. Defendants' have not and cannot point to any conduct on the Plaintiff's part that violated their policy, and therefore cannot succeed under the rubric of "he deserved it." The Defendants' have not and cannot claim there is a policy prohibiting relationships between consenting adults who met during a class (their own publication, *The DePaulia* published this fact with their approval). And DePaul has not and cannot claim they treated the Plaintiff in the same way they have treated all other faculty members.

Plaintiff was not only cleared of the false accusations made against him. The judge conducting the bench trial, a fact-finder, found that the claims against him were impossible to occur and that Plaintiff did not coerce his accuser.[1] Pl. Sec. Am. Compl. ¶ 59, Dkt. # 40. DePaul even refuses to update his file, its Title IX investigation or its ongoing ban on the Plaintiff to reflect these facts. *Id.* ¶ 80. To DePaul, the Plaintiff, an Arab/Muslim, is simply not entitled to the same rights, processes and even appeal to facts as his non-Arab/non-Muslim colleagues or his white/female/non-Muslim accuser.

## II. Nature and Scope of the Plaintiff's Pleadings

Since Defendants continue to insist on mischaracterizing Plaintiff's pleadings and ignore parts of his pleadings that are detrimental to their motion to dismiss, it is important to state the nature and scope of the pleadings again. In the Spring of 2017, a white female falsely accused

---

[1] The judge's finding that no coercion took place between two adults was simple as the Plaintiff confessed so at trial.

Plaintiff of sexual assault. *Id.*. ¶ 20. Upon such accusation, DePaul employees colluded together to side with his false accuser. *Id.*, ¶ 1. Further, the Defendants treated Plaintiff demonstrably different from and in more punitive fashion than other similarly situated non-Arab, non-Muslim and non-male employees. *Id.*, ¶¶ 26, 43. That is to say that others not in these protected classes accused of sexual harassment (or perhaps other similar violations) were not treated in similar fashion. All of Defendants' actions were motived and animated by a discriminatory intent.

From the time Plaintiff was falsely accused in the summer of 2017 until his trial in April 2019, DePaul leveraged and misled Plaintiff to prevent him from seeking legal action against it. *Id.*, ¶ 53. This includes, but is not limited to, misrepresenting the reason for his termination – a fact which DePaul apparently now admits through the arguments in its motion. DePaul admits they found Plaintiff guilty of violating its sexual harassment policy because he simply had a relationship with a student, but this is not how it enforces the policy on other employees. *Id.*, ¶¶ 26, 43. Further, DePaul employees acted in conspiracy with one another to discriminate against him, and that conspiracy was not complete until the end of trial in April 2019. *Id.*, ¶¶ 61-62.

### III.    Legal Standard

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff pleads factual content that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering motions to dismiss, the court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). The purpose of a motion to dismiss is to decide the adequacy of the complaint, not the merits of the case. *Gibson v. City of Chicago*,

910 F.2d 1520 (7th Cir. 1990). A complaint should only be dismissed when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

**IV.     Plaintiff's Title VII discrimination and retaliation claims are timely (Counts I-V)**

The EEOC defines a continuing action as one in which the facts are sufficient to indicate the complainant may have been subjected to an ongoing unlawful practice which continued into the statutory timeframe. Digest of EEO Law, Vol. XIII, No.2, "Continuing Violation." The Supreme Court has dealt with the issue of continuing violations with respect to hostile work environment claims. A continuing violation involves a claim where the nature of the claim involves repeated conduct that may not be actionable on its own. *National Railroad Passenger Corporation v. Morgan,* 536 U.S. 101, 115 (2002); see also *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 724 (7th Cir. 2004). "Such claims are based on the cumulative effect of individual acts." *Id.*

Post-employment adverse actions have also been recognized as violative of Title VII, including by the Seventh Circuit. See *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997); *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 885 (7th Cir. 1996). "[F]ormer employees, in so far as they are complaining of retaliation that impinges on their future employment prospects or otherwise has a nexus to employment, do have the right to sue their former employers under section 704(a)." *Id.* at 891. Further, the Seventh Circuit has held that post-employment adverse actions are not limited to job actions. *Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742, 745. (7th Cir. 2002) (citing *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986-87 (10th Cir. 1996).

Plaintiff has asserted DePaul has banned him from future employment at DePaul and banned him from participating events even co-sponsored by DePaul. Pl. Sec. Am. Compl., ¶ 41.

4

These bans are ongoing. *Id.*, ¶ 80. In addition, DePaul published an article, which remains publicly available, professionally disparaging him and preventing him from finding gainful employment. *Id.*, ¶¶ 64-79. That article has in effect blacklisted Plaintiff from work in his profession. *Id.*, ¶ 81. Plaintiff has also asserted DePaul employees engaged in a conspiracy to discriminate and retaliate against him, and that conspiracy did not complete until his trial in April of 2019. *Id.*, ¶ 1. The facts alleged by Plaintiff can reasonably support his claim that every act DePaul took toward him was an act in furtherance of the conspiracy to discriminate and retaliate against him in violation of Title VII, and to coverup those unlawful motives and actions.

V. **DePaul is estopped from asserting the 300 day time bar regarding any of DePaul's actions that may have fallen outside the time bar (Counts I-V)**

As an initial matter, the statute of limitations is a defense that need not be anticipated in the complaint to survive a motion to dismiss. *Hobbs v. Cappelluti*, 899 F. Supp 2d 738, 754 (N.D. Ill. 2012). "Unless the complaint alleges facts that create an ironclad defense, however, a limitations argument must await factual development of the record." *Id.* (internal quotations omitted). Equitable estoppel "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time." *Smith v. Chicago Heights,* 951 F.2d 834, 840 (7th Cir. 1992). Among other factors, the court should look for "a showing of the plaintiff's actual and reasonable reliance on the defendant's conduct or representations" and "evidence of improper purpose on the part of the defendant and the defendant's actual or constructive knowledge of the deceptive nature of its conduct." *Id.*, 841 (internal citations omitted). "It is not necessary that the defendant intentionally mislead or deceive the plaintiff, or even intend by its conduct to induce delay." *Id.* (quoting *Bomba v. W.L. Belvidere*, 579 F.2d 1067, 1071 (7th Cir. 1978)).

Plaintiff has alleged sufficient facts to support estoppel. DePaul lied to Plaintiff about the reason it was not renewing his contract, initially citing budget constraints. It did so in order to in

part to prevent him from taking legal action against them, and they continued to mislead him throughout the term of the JDA, up until his trial of April 2019. In other words, to cover up its unlawful conduct. DePaul also lured him into entering a joint defense agreement and began paying for his attorneys so that it could leverage and control him, in part so that he could not exercise his rights.

### VI. Plaintiff States A Claim for Retaliation Under Title VII (Count IV)

Defendants make the argument that "Title VII is not a cause of action for perjury." Def. Mem. Mot. Dismiss, p. 6 (quoting *St. Mary's Honor Ctr. V. Hicks*, 509 U.S. 502, 521 (1993). They misapply the caselaw on this subject. *St. Mary's Honor* dealt with the review of a judgment in favor of a plaintiff's Title VII case after the lower court had determined the employer's proffered reason for termination was pretextual. The Supreme Court reviewed the judgment of a trial court after a bench trial; the trial court found the defendant employer discriminated against the plaintiff because it determined the employer's proffered reason for the adverse action was pretextual. The trial court concluded that since the employer's proffered reason was pretext, then the plaintiff's proffered reason (discrimination) was true. It was in this context that the Supreme Court stated: "Title VII is not a cause of action for perjury;" the Court was commenting on alleged perjured statements made during the course of litigating the plaintiff's Title VII claim. *Id.*,521-524 ("That the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason of race is correct. That remains a question for the factfinder to answer…", at 524). The holding in *St. Mary's Honor* is therefore not applicable to this case.

DePaul's unpublished district court decisions from circuits outside of the Seventh Circuit are also not analogous. For example, in *Mamman v. Chao*, the federal district court for New

Jersey dealt with claims that the plaintiff's federal government employer committed perjury during a Merit Systems Protection Board ("MSPB") proceeding that reviewed the employee's claim of discrimination and retaliation by his employer. The district court in that case applied the Supreme Court's logic in *St. Mary's Honor*, reasoning that the employer's perjury in the course of the MSPB case could have been raised during that case, as it was reviewing directly the employee's discrimination and retaliation claims. *Id.* ("[A]ny issues plaintiff had about fraud, mishandling and perjury in his MSPB cases should have been raised in administrative and/or judicial appeals of those decisions"). Plaintiff's case is obviously different from *Mamman* and *St. Mary's Honor* in that the conduct he is complaining of did not occur within the course of litigating a discrimination claim between DePaul and the Plaintiff.

On the contrary, the Seventh Circuit has recognized that "retaliatory acts come in infinite variety." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998). In *Steffes*, the Seventh Circuit observed that recognizing a litigation privilege such as the one argued by DePaul "could interfere with policies underlying the anti-retaliation provisions of Title VII and the ADA." *Id.* In reaching its holding, the Seventh Circuit reviewed several cases, including some from other circuits. *Id.* (ref. *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986-88 (10th Cir. 1996); *Power Systems, Inc. v. NLRB*, 601 F.2d 936, 940 (7th Cir. 1979) (noting that the filing of a malicious prosecution action against an employee who had filed unfair labor practice charges could itself violate federal labor laws); *Mardell v. Harleysville Life Ins. Co.*, 31 F.3d 1221, 1238 n. 1 (3d Cir. 1994), vacated on other grounds, 514 U.S. 1034 (1995), reinstated in relevant part, 65 F.3d 1072 (3d Cir. 1995) (holding that investigation of an employee who files a discrimination complaint to discover evidence of resume fraud or some other misconduct to justify terminating the employee could also constitute unlawful retaliation). The Seventh Circuit also recognized post-

7

employment retaliation claims in *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881 (7th Cir. 1996). "The ability to 'blacklist' a former employee, and thus foreclose future employment possibilities, is but one example of an employer's power to punish a former employee for the exercise of her Title VII rights." *Id.* at 890. "[W]e believe that post-termination acts of retaliation that have a nexus to employment are actionable under Title VII" *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 888 (7th Cir. 1996).

In this case, Plaintiff has asserted the post-termination conduct leading all the way up until his trial in April 2019 had a nexus to his employment because the purpose of the conduct was to justify and coverup DePaul's discriminatory and retaliatory conduct. It was also for the purpose of justifying its ban and public disparagement of Plaintiff. This is conduct that is covered by Title VII. That conduct is not precluded from Plaintiff's Title VII claim merely because it occurred during the course of someone else's litigation. The trial court in Plaintiff's case involving the accuser did not review discrimination and retaliation claims by Plaintiff against DePaul, it reviewed (false) claims by the accuser and involved Plaintiff and DePaul. This, concurrently, relates to DePaul's argument that Plaintiff did not suffer an adverse employment action because he won his trial. Plaintiff did indeed win his trial, but that is not where the analysis should stop. As Plaintiff has alleged, DePaul's conduct has rendered him unemployable, and he has pointed to examples of this in his complaint.

Lastly, DePaul should be estopped from arguing that the post-termination conduct was not related to Plaintiff's employment because during previous arguments it made in support of dismissal of Plaintiff's Title IX claim, DePaul argued Title VII preemption applied because the conduct alleged was related to Plaintiff's employment at DePaul. See *Ogden Martin Systems of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 527 (7th Cir. 1998). That DePaul is trying to

8

argue there is a "gray area" in which its conduct fell outside the scope of any civil rights statute is not surprising, but we ask that it not be adopted by this Court. This position would contradict the reasoning of this Court's order regarding Title VII preemption of the Title IX claim. However, to the extent that Title VII would not cover some of the alleged conduct, then Title IX should apply to address that conduct.

### VII. Plaintiff's Title VII harassment claim is proper (Count V)

DePaul's argument regarding Plaintiff's harassment claim mirrors its arguments regarding his discrimination and retaliation claims and should fail for the same reasons. As explained above, the Seventh Circuit applies a broad interpretation of adverse actions and recognizes post-employment retaliation. DePaul's use of *Knight v. United Farm Bureau Mut. Ins. Co.* is entirely inapplicable; that case dealt with the Title VII claim of an independent contractor. *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991). Regarding his pleading, Plaintiff did plead the harassment was on the basis of his protected class: "Said harassment is motivated by discriminatory bias and in retaliation, as more fully described above." Pl. Sec. Am. Compl. ¶ 104, Dkt. # 40. Plaintiff's previously pled facts and counts, as referenced under Count V, had already enumerated the protected classes to which he belongs.

### VIII. Plaintiff has reasserted the Title IX claim to preserve his rights on appeal (Count VI)

Plaintiff understands that the Court dismissed his Title IX claim with prejudice in its previous ruling. Plaintiff has reasserted the count in order to preserve his rights on appeal. As it stands, there is a split amongst circuit courts as to whether Title VII preempts a Title IX claim made by an employee of an educational institution.[2] The Seventh Circuit is among the circuits

---

[2] See *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 896 (1st Cir. 1988) (Title VII and Title IX prohibit the same conduct, utilizing Title VII as "the most appropriate analogue" in a Title IX case); *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 564 (3d Cir. 2017) (reasoning that whether a plaintiff "could also proceed under Title VII is of no moment, for Congress provided a variety of remedies, at times overlapping, to eradicate private-sector employment

that support preemption. *Waid v. Merrill Area Pub. Sch.*, 91 F.3d 857 (7th Cir. 1996). The Supreme Court has never directly addressed the issue but has on several occasions applied Title IX to employees. *Jackson v. Birmingham Bd. Of Educ.*, 544 U.S. 167, 172 (2005) (school teacher allowed to bring retaliation claim under Title IX); *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 514 (1982) (holding Title IX encompassed a prohibition on employment discrimination in educational institutions receiving federal funding); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 709 (1979) (holding Title IX conferred a private right of action for individual victims of discrimination).

At the same time, there is also a split amongst circuit courts as to whether a litigant must replead a claim in order to preserve it for appeal. The Seventh Circuit adopts the "no repleading" approach, but other circuits have different approaches.[3] The Supreme Court has not addressed this split. Respectfully to the Court, Plaintiff reasserted the Title IX claim to render the issue regarding waiver moot in any potential future appeal, given that both the issues have seen splits among the circuit courts that have not yet been resolved by the Supreme Court.

IX. **Plaintiff's § 1981 claim states a claim (Count VII)**

For the same reasons Plaintiff states a claim for race and national origin discrimination, Plaintiff's § 1981 claim should proceed. See *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922,

---

discrimination." (internal quotation omitted)); *Preston v. Comm. of Va. ex rel. New River Cmty. Coll.*, 31 F.3d 203, 205-06 (4th Cir. 1994) (holding that a private right of action separate from Title VII exists under Title IX for employment discrimination); *Ivan v. Kent St. Univ.*, 92 F.3d 1185, 1996 WL 422496, at * 2 (6th Cir. 1996) (allowing plaintiff to proceed with an independent Title IX claim for alleged sex discrimination in employment); *Brine v. Univ. of Iowa*, 90 F.3d 271, 276 (8th Cir. 1996) (agreeing with First and Fourth Circuit decisions in *Lipsett* and *Preston*).

[3] *Bastian v. Petren Resources Corp.*, 892 F.2d 680, 682-83 (7th Cir. 1990); but see *Williamson v. Liverpool & London & Globe Ins. Co.*, 141 F. 54, 56-57 (8th Cir. 1905) (holding a litigant does not waive objections to a substantial part of the cause of action by not repleading it, but does waive objections on "indefiniteness, incompleteness or insufficiency, or mere technical defects."); see also *Blazer v. Black*, 196 F.2d 139, 143-44 (10th Cir. 1952); comp. *Studio Carpenters Local Union v. Loew's, Inc.*, 182 F.2d 168, 170 (9th Cir. 1950) (holding all types of claims be repleaded in order to preserve them for appellate review).

940 (7th Cir. 1996) (noting Title VII and § 1981 are essentially identical in the methods of proof and elements of the case). Plaintiff has not only alleged disparate treatment, he supports his claim that his race and national origin were motiving factors in that treatment by pointing to additional facts: the warning from his Chair (¶ 22), the comment of one of the *DePaulia* journalists (¶ 72), the fact that Plaintiff's religion and national origin were referenced in the *DePaulia* article where they had no relevance to the subject of the article (¶ 75); and the fact that DePaul did not treat other employees similarly (¶¶26, 43). Pl. Sec. Am. Compl., Dkt. # 40. This inference was drawn by the court regarding Plaintiff's Title IX claim. See Order, Oct. 29, 2019, Dkt. # 36, p. 10.

    **X.**    **Plaintiff's state law claims are related to his federal claims**

As Plaintiff reads this Court's Order of October 29, 2019, the Court declined to exercise supplemental jurisdiction over the state law claims because they do not arise out of a common nucleus of operative fact and because the state law claims would predominate the lone federal claim. Order, Oct. 29, 2019, Dkt. # 36, pp. 14-15. The Court did so without prejudice and gave Plaintiff leave to amend his complaint to plead a Title VII claim and/or gender discrimination claim, thereby providing a common nucleus of operative fact between the federal and state claims. Plaintiff's Second Amended Complaint has done so, and therefore asks the Court to exercise supplemental jurisdiction over the state law claims. The state law claims emerge from the same set of facts surrounding Plaintiff's Title VII and § 1981 claims. Respectfully, Plaintiff requests the Court reevaluate whether it will exercise supplemental jurisdiction in light of Plaintiff's second amended complaint.

        **a.**  **Plaintiff states a claim for breach of duty to defend and indemnify (Count VIII)**

The duty to defend is determined by the allegations in a complaint. *New Hampshire Ins. Co. v. Patrick Cadillac Co.*, 1990 U.S. Dist. LEXIS 6476, * 2 (N.D. Ill. 1990) (citations omitted). To ascertain whether the duty is triggered, the court looks to the allegations in the underlying complaint, compares the allegations to the relevant coverage provisions and if the facts alleged fall within, or *potentially* within, the coverage, then the duty to defend is triggered. *Malaker v. Cincinnati Ins. Co.*, 2011 U.S. Dist. LEXIS 37768, * 19 (N.D. Ill. 2011). The Seventh Circuit recognizes instances that there was no duty to defend only where "there wasn't even arguably coverage of … liability." *Id.*, at *20 (quoting *Guaranty Bank v. Chubb Corp.*, 538 F.3d 587, 593 (7th Cir. 2008). The former student filed a complaint alleging DePaul negligently hired and employed Plaintiff. The former student also alleged some of the conduct occurred at the DePaul campus and that Plaintiff used his authority as her instructor. The former student alleged she was *incapable* of consent by virtue of the fact that Plaintiff was an instructor and she was a student. It does not matter that the former student was not able to substantiate any of her claims, what matters is that what she alleged trigged DePaul's duty to defend. The duty is triggered even if not all of the claims alleged in the complaint would trigger the duty.

DePaul's reliance on *Deloney v. Board of Educ.* is flawed. *Delony v. Board of Educ.*, 281 Ill. App. 3d 775 (Ill. App. 1st Dist., 1996). In that case, the conduct alleged was criminal sexual abuse of a minor; there was no theory of liability proffered by the accuser but an intentional tort. In Plaintiff's case, the former student was in her mid-twenties and the relationship violated no policy of DePaul. The former student's claims were broad enough such that even Plaintiff's unintentional conduct was alleged to have constituted a violation. Because part of the allegations made by the former student involved unintentional conduct, the duty to defend was triggered. DePaul must acknowledge that they saw a potential that the duty was triggered, as they began

12

defending Plaintiff. DePaul continued to defend Plaintiff, until he protested terms being imposed on him, after DePaul had been dismissed from the complaint.

Moreover, the Illinois Supreme Court has held courts may, "under certain circumstances, look beyond the underlying complaint in order to determine an insurer's duty to defend." *Id.*, *21 (quoting *Pekin Ins. Co. v. Wilson*, 237 Ill. 2d 446 (Ill. 2010). If the scope of the duty to defend is ambiguous, further proceedings are required. *Dribeck Importers, Inc. v. G. Heilman Brewing Co.*, 883 F. 2d 569, 574 (N.D. Ill. 1989). Reading Plaintiff's Second Amended Complaint in the light most favorable to him, DePaul owed a duty to defend him both because the former student's allegations potentially fell within the scope of Plaintiff's employment and because DePaul's intent in taking up the duty, based on their actions, was not entirely based on the bylaws.

### b. Plaintiff has alleged special relationships that trigger fiduciary duties (Counts IX and XI)

DePaul and Morgen as its agent owed fiduciary duties to Plaintiff while it took up the duty to defend. In order to recover for a breach of fiduciary duty in Illinois, a plaintiff must prove (1) existence of a fiduciary duty; (2) breach of that duty; and (3) injury as the proximate cause of that breach. *Malaker*, at *8 (N.D. Ill. 2011). Fiduciary duties arise under the duty to defend, including the duty to consider the insured's interest. *Id.*, at *9. As Plaintiff's Second Amended Complaint alleges, DePaul and Morgen violated those duties when they pursued other interests at Plaintiff's expense, while at the same time taking up the duty to defend him.

Plaintiff has also pled a special relationship with respect to his breach of employment contract claim. DePaul was Plaintiff's employer. DePaul, through the Chair of Plaintiff's department, misled Plaintiff by telling him it would bring him back as an adjunct, telling him to

13

request Enhanced Pay, and then used this as a basis to withdraw the offer to adjunct. DePaul therefore did not act in good faith with Plaintiff regarding the adjunct contract.

### c. Plaintiff has pled material terms to form an employment contract, and the statute of frauds does not bar his claim

Plaintiff has pled sufficient facts to support a claim for breach of employment contract. Following elimination of the VAP position, DePaul offered to have Plaintiff teach as an adjunct for the Religious Studies department. Plaintiff's 12 previous years at DePaul, excellent record with the Religious Studies department and the fact that his classes were in popular demand, lend reasonable inference that he would be assigned to teach the same classes he had always taught. Pl. Sec. Am. Compl., ¶ 2, 11. The terms were clear: Plaintiff would teach his courses in Religious Studies, he would be paid a minimum of $4,800 per course. *Id*., ¶ 122. The contract was limited in terms of timeframe as well, as an adjunct contract is renewed each academic Quarter. *Id*. Plaintiff has pled all of the elements of a breach of contract claim. *Fednav Int'l Ltd. V. Cont'l Ins. Co.*, 624 F. 3d 834, 839 (7th Cir. 2010). Defendant contends that the statute of frauds bars Plaintiff's employment claim because his *last position* at DePaul, VAP, his contract was reviewed annually. That point is entirely irrelevant. An adjunct, per DePaul's own policies, is a limited-term contract that covers only the duration of the academic quarter in which the course is taught. The statute of frauds, therefore, does not apply.

### d. Plaintiff has pled sufficient facts to support his promissory estoppel claim

Plaintiff states a claim for promissory estoppel. To state claim, a plaintiff must plead (1) defendant made an unambiguous promise to plaintiff; (2) plaintiff relied on such promise; (3) plaintiff's reliance was expected and foreseeable by defendants; and (4) plaintiff relied on the promise to his detriment. *Firestone Fin. Corp. v. Meyer*, 797 F.3d 833, 828 (7th Cir. 2015). Plaintiff has pled that his department chair invited him to propose bonus pay on the basis of

14

"Enhanced Pay" – a program commonly used for senior adjunct faculty at DePaul. Pl. Am. Compl., ¶ 16. The chair told Plaintiff that he would solicit the proposed amount from the dean of the college. *Id.* Plaintiff reasonably relied on this representation and sent his department chair a request proposing an amount under Enhanced Pay. *Id.*, ¶ 20. Plaintiff also did not make Enhanced Pay a condition of his employment and he did not reject the $4,800 per course base pay provided to adjunct instructors. *Id.* His reliance on the chair's promise that he could request Enhanced Pay and that Enhanced Pay would be "solicited" from the dean, was entirely reasonable and foreseeable. Plaintiff relied on the promise to his detriment, as this was used as a basis to deny him employment as an adjunct. *Id.*, ¶¶ 128-131.

### e. **Defendants should be estopped from asserting the statute of limitations defense regarding Plaintiff's false light invasion of privacy claim.**

Defendants should be estopped from asserting the statute of limitations regarding Plaintiff's false light invasion of privacy claim for the same reasons they should be estopped from asserting the time bar for Plaintiff's Title VII claims.

## Conclusion

WHEREFORE, Plaintiff respectfully requests the Honorable Court deny Defendants' partial motion to dismiss.

Respectfully submitted,<br>
LAITH SAUD<br>
Plaintiff<br>
<br>
_____/s/Christina Abraham_____<br>
By:    Christina Abraham<br>
         Attorney for Plaintiff

January 14, 2020

Attorney No. 6298946
Christina Abraham, Esq.
Attorney for Plaintiff
161 N. Clark Street, Suite 1600
312-588-7150

**Certificate of Service**

The undersigned attorney hereby certifies that she caused a copy of **Plaintiff's Response to Defendants' Motion to Dismiss and to Motion to Strike** to be served upon the all parties assigned for service through the CM/ECF filing system on January 14, 2020.

/s/Christina Abraham

Christina Abraham
Attorney for the Plaintiff

Attorney No. 6298946
Christina Abraham, Esq.
Abraham Law & Consulting, LLC
161 N. Clark Street, Suite 1600
312-588-7150