**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LAITH SAUD, )
 )
 Plaintiff, )
 ) Case No. 19-cv-3945
 v. )
 ) Judge Robert M. Dow, Jr.
DEPAUL UNIVERSITY, KAREN )
TAMBURRO, and MARLA MORGEN, )
 )
 Defendants. )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Laith Saud ("Plaintiff") brings suit against Defendants DePaul University ("DePaul"), Karen Tamburro ("Tamburro"), and Marla Morgen ("Morgen") (together, "Defendants") for various state and federal claims arising out of Plaintiff's employment at DePaul as an adjunct professor. Currently before the Court are Defendants' motion [43] to dismiss Plaintiff's governing second amended complaint ("Complaint") for failure to state a claim and Plaintiff's motion [51] for leave to file a third amended complaint. For the following reasons, Defendants' motion to dismiss [43] is granted in part and denied in part. Plaintiffs' Title VII claims are dismissed due to Plaintiff's failure to file a timely charge with the EEOC and/or failure to state a claim. Plaintiff's Section 1981 racial discrimination claim will be allowed to proceed. Plaintiff's Title IX gender discrimination claim, which he filed to preserve his right to appeal the Court's previous dismissal of that claim, is dismissed. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims for violation of state law, for the same reasons explained in its last opinion, see [36] at 13-20. Plaintiff's motion for leave to file a third amended complaint [51] is denied without prejudice as it pertains only to Plaintiff's state law claim for false light invasion of privacy and proposed state law claim for intentional infliction of emotional

distress, see [51] at 1, over which the Court thus far has declined to exercise supplemental jurisdiction. However, Plaintiff is given leave to file a renewed motion for leave to file a third amended complaint if he wishes to pursue a Title VII post-employment retaliation claim based on the republication of the student newspaper article at issue in this case and believes that such a claim can be maintained consistent with Rule 11. If Plaintiff files a renewed motion for leave to amend to add another federal claim, he may also include in the proposed amended complaint his state law claims provided that he also files a motion to reconsider the Court's ruling that declines to exercise supplemental jurisdiction, along with reasons that the new federal claim, if allowed to proceed, shifts the discretionary analysis in regard to maintaining supplemental jurisdiction [see 36, at 13-20]. Any further motions to amend and/or for reconsideration must be filed no later than October 23, 2020. If Plaintiff does not wish to file any additional motions and will proceed on the Section 1981 racial discrimination claim only, he should advise the Courtroom Deputy as soon as that decision is made so that the Court can request a joint status report and/or set the matter for a telephonic status hearing. If one or more motions is filed, the Court will set a briefing schedule.

## I.     Motion to Dismiss

### A.     Background

The following facts are taken from Plaintiff's Complaint and assumed to be true for purposes of Defendants' motion to dismiss. Plaintiff, an Arab American male and former professor at DePaul, brought this action against his former employer for an allegedly botched investigation into allegations of sexual misconduct involving a student, failing to defend him in the student's civil suit, and not rehiring him. For purposes of deciding the motion to dismiss, the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences

in favor of Plaintiff. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

In 2005, DePaul hired Plaintiff as an adjunct professor in its Religious Studies Department. Plaintiff's courses were popular, and in 2010 he was promoted to Visiting Assistant Professor, a position with a contract subject to review and renewal at the end of each academic term. In 2016, Plaintiff began a romantic relationship with a student in one of his classes. At that time, DePaul had no policy prohibiting such relationships between students and faculty. The Complaint does not go into detail, but at some point the relationship apparently soured. In spring 2017, Plaintiff received an attorney's lien letter from an attorney representing the student. The letter accused Plaintiff of sexual misconduct but did not provide details of the allegedly wrongful acts. Around the same time, DePaul told the two Visiting Assistant Professors in the Religious Studies department—Plaintiff and a white male—that their positions were being "shifted" due to "budgetary reasons." [40] at 5. The chair of the Religious Studies department, Khaled Keshk ("Keshk"), proposed that Plaintiff and the other Visiting Assistant Professor teach as adjunct professors in the department. Keshk also emailed Plaintiff and the other Visiting Assistant Professor and invited them to propose "Enhanced Pay," a bonus on top of the regular adjunct salary. Plaintiff did so. Ultimately, the other Visiting Assistant Professor returned to work as an adjunct the following academic year. Plaintiff did not.

In May 2017, Tamburro, DePaul's Title IX Coordinator, began investigating alleged sexual misconduct by Plaintiff. Keshk told Plaintiff that he was being investigated and said "he did not think Plaintiff would be treated fairly because he is a male of Arab heritage, considering DePaul's history." [40] at 6. Tamburro met with Plaintiff but did not convey to Plaintiff any specific allegations against him. Plaintiff said that he had been in a consensual relationship with the student

and that she had become upset with him in February 2017 when he didn't respond to her text messages within a day. Plaintiff denied using his position as a professor for sexual favors and said that he gave A grades to all students who attended and participated in his course. Tamburro attempted to contact the student, both directly and through her attorneys. Neither the student nor her attorneys cooperated with the investigation or provided further detail regarding the alleged sexual misconduct. Sometime in May 2017, Tamburro completed her investigation and issued a report finding that Plaintiff did not violate any of DePaul's policies.

In June 2017, Plaintiff emailed Tamburro and wrote that he believed he was the victim of sexual misconduct by the student because he was being used as a conduit for her to sue DePaul. [40] at 7. Tamburro did not reply to Plaintiff's email, nor did she open an investigation in response.

On June 29, 2017, the student filed a lawsuit alleging common law battery and violation of the Illinois Gender Violence Act ("GVA") against Plaintiff and negligent hiring and supervision against DePaul. Among other things, the lawsuit alleged that Plaintiff had been the subject of "many complaints of harassment" at DePaul, had taken the student to dinner and had "plied her with alcohol," and "forcibly" pursued sex with her twice. See [40] at 8. Plaintiff denies these allegations.

Morgen, Senior Associate General Counsel at DePaul, told Plaintiff that pursuant to the terms of DePaul's Bylaws, DePaul would indemnify and defend him. DePaul selected and began paying for Plaintiff's attorneys, who entered into a Joint Defense Agreement ("JDA") with DePaul. Shortly after the student filed her lawsuit, DePaul withdrew its offer to have Plaintiff teach as an adjunct in the upcoming academic year. Tamburro also reopened her investigation into Plaintiff's alleged misconduct. Neither the student nor her attorneys cooperated with the second investigation either, but the school's findings changed. According to Tamburro's second report, a

4

preponderance of the evidence did not support a finding that Plaintiff committed battery or abused his position, but it did support a finding that he had sexually harassed the student. Plaintiff alleges that Tamburro's methods and findings failed to adhere to federal guidelines, or DePaul's procedures, on conducting Title IX investigations. [40] at 10. DePaul then sent Plaintiff a letter stating that he was not eligible for future employment at DePaul and was barred from DePaul sponsored or co-sponsored events. Further, DePaul told Plaintiff that the investigation was closed and would not be reopened.

The student's lawsuit continued. Plaintiff filed a verified answer denying that he ever used his position or grades for sexual favors and that the encounters alleged by the student ever took place. He also countersued for defamation. DePaul was dismissed from the case in February 2018, and the student filed a notice of appeal. As described below, the state trial court ultimately found Plaintiff not liable for battery or for violations of the Gender Violence Act and also found for Plaintiff in his defamation counterclaim against the student.

On April 2, 2018, the *DePaulia* published an article about the lawsuit. The *DePaulia* is DePaul's school newspaper, which publishes articles written by student journalists who are advised by faculty at DePaul's College of Communication. The article, entitled "Power Player: Former DePaul student sues ex-professor for sexual coercion," described the litigation and repeated allegations from the state court complaint that Plaintiff denies, including that Plaintiff had been the subject of "many complaints of harassment" at DePaul, "plied" the student with alcohol, and used his position to coerce the student into having sex with him. [40] at 15-16. The article was posted on the *DePaulia* website and was "pinned" on the *DePaulia*'s Twitter account for several months, meaning that it appeared at the top of the Twitter page, above articles more recently published and tweeted by the paper. Plaintiff, on the advice of his attorneys, provided no

statement to the *DePaulia*, and his attorneys did not comment either. Later in April 2018, DePaul and the student settled. DePaul allegedly pressured Plaintiff to settle, but he refused. DePaul, via Morgen, informed Plaintiff that it would no longer defend or indemnify him (but did not notify Plaintiff that it was terminating the Joint Defense Agreement).

A year later, on April 15 and 16, 2019, a bench trial was held in the case. The trial judge found for Plaintiff on his defamation claim and on the student's claims. The trial court found that, on the night the student claimed the assault had occurred, she and Plaintiff had dinner together but did not have sexual intercourse at all; Plaintiff did not force her to drink alcohol; and Plaintiff never offered her anything, threatened her, or had any quid pro quo arrangement with her.

Since being barred from teaching at DePaul, Plaintiff has been unable to find work. The *DePaulia* article remains on the first page of search results when conducting a Google search of Plaintiff's name, and at least one prospective employer told Plaintiff that news of the student's lawsuit is the reason that he was not considered for employment.

On June 12, 2019, Plaintiff filed the complaint [1] in the instant case. On July 19, 2019, he filed an amended complaint [17], which the Court dismissed in part. Specifically, the Court dismissed Count I (Section 1983 due process) with prejudice; dismissed Count II (Title IX discrimination) without prejudice and leave to replead Title VII claims; denied the motion to dismiss Count III (Section 1981 racial discrimination); and declined to exercise supplemental jurisdiction over Plaintiff's state law claims. See [36]. The Court also denied Plaintiff's motion for a preliminary injunction.

Plaintiff then filed the currently operative Complaint, which contains thirteen counts: Title VII claims based on race (I), national origin (II), gender (III), retaliation (IV), and "harassment," *i.e.* hostile work environment (V); a Title IX claim based on gender (VI); a claim for racial/ethnic

6

discrimination in violation of 42 U.S.C. § 1981 (VII); and state law claims for breach of contractual obligations to defend and indemnify (VIII), breach of fiduciary duties to defend and indemnify (IX), breach of employment contract (X), breach of fiduciary duty in employment contract (XI), promissory estoppel (XII), and false light invasion of privacy (XIII).

Currently before the Court is Defendants' motion [43] to dismiss the Complaint. Also before the Court is Plaintiff's motion [51] for leave to file a fourth amended complaint.

### B. Legal Standard

Defendants' Rule 12(b)(6) motion challenges the legal sufficiency of the Complaint. For purposes of a motion to dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). To survive a motion to dismiss under Rule 12(b)(

6), the Complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *NewSpin Sports, LLC v. Arrow Electronics, Inc*., 910 F.3d 293, 299 (7th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court reads the Complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

### C. Analysis

#### 1. Title VII Claims

Defendants move to dismiss all of Plaintiff's Title VII Claims on the basis (among others) that they are time-barred due to Plaintiff's failure to file a charge with the EEOC within 300 days of the alleged unlawful employment practices, as required by 42 U.S.C. § 2000e-5(e)(1). As Plaintiff points out, "[a] plaintiff is not required to plead elements in his or her complaint that overcome affirmative defenses, such as statute-of-limitations defenses." *NewSpin*, 910 F.3d at 299. "However, 'when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate.'" *Id*. at 299-300 (quoting *Indep. Tr. Corp. v. Stewart Info. Servs. Corp*., 665 F.3d 930, 935 (7th Cir. 2012)).

The Court may take judicial notice of the charge that Plaintiff filed with the EEOC, which Defendants attach to the motion to dismiss; Plaintiff does not challenge the accuracy of the charge or the date it was filed. See *Anderson v. Centers for New Horizons, Inc*., 891 F. Supp. 2d 956, 959 (N.D. Ill. 2012) (taking judicial notice of "plaintiff's IDHR and EEOC charges attached to defendants' motion as well as IDHR records submitted by the parties"); *Metz v. Joe Rizza Imports, Inc*., 700 F. Supp. 2d 983, 989 n.2 (N.D. Ill. 2010) (taking judicial notice of EEOC charge and determination letters attached to motion to dismiss).

Plaintiff filed his charge with the EEOC on November 5, 2019. Thus, unless tolling or similar doctrines apply, the following alleged unlawful employment practices, which are alleged in support of some or all of Plaintiff's Title VII claims, would not be actionable because they occurred more 300 days before Plaintiff filed his charge with the EEOC: (a) Plaintiff complained to Tamburro and Morgen about allegedly being the victim of sexual misconduct, but did not receive a response (June 2017); (b) DePaul withdrew its offer for Plaintiff to teach as an adjunct

(October 2017); (c) DePaul issued its determination that Plaintiff violated its sexual harassment policy and barred Plaintiff from future employment (October 2017); (d) DePaul stopped defending Plaintiff in the lawsuit brought by his former student (April 2018); and (e) the *DePaulia* article was published (April 2018). See *Formella v. Brennan*, 817 F.3d 503, 511 (7th Cir. 2016) (doctrines of waiver, estoppel, and equitable tolling apply to limitations periods for employment discrimination claims); cf. *Morgan*, 536 U.S. at 113 (cautioning that doctrines of waiver, estoppel, and equitable tolling "are to be applied sparingly").

### a.    Equitable Estoppel

Plaintiff argues that equitable estoppel should apply to extend the time for filing an EEOC charge because, from the time he "was falsely accused in the summer of 2017 until his trial in April 2019, DePaul leveraged and misled Plaintiff to prevent him from seeking legal action against it." [45] at 3. As the case relied on by Plaintiff explains, see *id.* at 5, equitable estoppel "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations." *Smith v. City of Chicago Heights*, 951 F.2d 834, 840 (7th Cir. 1992). "This doctrine addresses itself to the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forebearing suit within the applicable limitations period." *Id.*

Here, Plaintiff does not allege any facts or make any arguments suggesting that Defendants led Plaintiff to believe that he did not need to comply with the 300-day deadline for filing an EEOC charge. Although Plaintiff and DePaul allegedly signed a Joint Defense Agreement, Plaintiff does not allege that this somehow prevented him from taking legal action against DePaul or led him to believe that any claims he might have against DePaul would be tolled. In short, there is nothing

to suggest that DePaul engaged in any "deliberate design" that it "unmistakably understood would cause [Plaintiff] to delay filing his charge." *Teague v. Northwestern Memorial Hosp.*, 836 F. Supp. 2d 727, 731 (N.D. Ill. 2011); see also *Williamson v. Indiana University*, 345 F.3d 459, 463 (7th Cir. 2003) (former professor could not assert equitable estoppel as defense for her failure to file Title VII gender discrimination claim with EEOC within statutory period, absent showing that defendant university or EEOC took active steps to prevent her from filing).

### b.     Equitable Tolling

Further, the facts alleged in the Complaint undermine any potential equitable tolling argument that Plaintiff might make. "Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chicago Medical School*, 167 F.3d 1170, 1174 (7th Cir. 1999). "When determining whether a plaintiff in fact lacked such vital information, a court must consider whether a reasonable person in the plaintiff's position would have been aware of the possibility" that he or she had a discrimination claim. *Id.*; see also *Haynes v. Indiana University*, 902 F.3d 724, 731 (7th Cir. 2018).

Plaintiff suggests that he did not know about his potential Title VII claims until he discovered at trial in April 2019 that DePaul employees were engaging in some sort of "conspiracy" to discriminate against him. However, Plaintiff never even identifies what, exactly, he discovered at trial that alerted him to his claims. In his response to the motion to dismiss, he vaguely alludes to a "conspiracy" of DePaul employees that "was not complete until the end of trial in April 2019." [45] at 3. In support, Plaintiff cites paragraphs 61 and 62 of the Complaint, which allege that: (1) Tamburro and Keshk testified inconsistently from their depositions and contradicted one another regarding the source of information in Tamburro's October 2017 report;

and (2) DePaul's attorney would not agree to authenticate sign-in records that Plaintiff had subpoenaed from DePaul, when the former student's attorney objected. Taking these allegations as true, they do not provide any insight into how anything that occurred at trial finally alerted Plaintiff to the fact that he may have been discriminated against years earlier.

Long before the time of the trial, DePaul had already told Plaintiff that he violated the sexual harassment policy and was not welcome back due to his relationship with his student (October 2017); told him that DePaul would no longer defend him in the lawsuit against his former student (around February 2018, when DePaul settled with the student); and allegedly caused or encouraged the *DePaulia* article to be published (April 2018). Even earlier, in May 2017, Plaintiff allegedly received a warning from his department chair, Keshk, that "he did not think Plaintiff would be treated fairly" in the sexual harassment investigation "because he is a male of Arab heritage." [40] at 6. And in June 2017, Tamburro and Morgen allegedly ignored his complaints about being the victim of sexual misconduct by the student. Given these allegations, Plaintiff has no plausible argument that it was somehow only at his trial against his former student that he realized that he may have Title VII claims against Defendants.

Finally, even if Plaintiff discovered his claims in April 2019, he does not explain why he waited until November 2019 to file his EEOC charge. "The plaintiff is not entitled to a renewed 300-day window even when tolling is justified." *Haynes*, 902 F.3d at 731. "Instead, tolling is appropriate only for a length of time within which it would have been reasonable to file a complaint." *Id.* (three months from alleged discovery of racial discrimination claim was long enough time for plaintiff to file EEOC charge); see also *Hentosh*, 167 F.3d at 1175 (even if 300-day period for filing EEOC charge were equitably tolled due to employee's lack of information about department chairman's alleged sexual harassment of co-workers, employee's delay of nearly

7 months in filing charge after obtaining such information was unreasonable, rendering charge untimely). Indeed, by June 2019, Plaintiff already had enough information to file this lawsuit, which is based on the same facts alleged in the EEOC charge. Even if tolling were appropriate, Plaintiff waited too long to file his EEOC charge.

### c. Continuing Violation Doctrine and Hostile Work Environment Claim

Plaintiff also asserts that his claims may be timely under a continuing violation theory, which according to Plaintiff is available "where the nature of the claim involves repeated conduct that may not be actionable on its own." [45] at 4. Plaintiff points out that DePaul's ban on his employment and participation in events is ongoing and that the *DePaulia* article is still available online and has the effect of blacklisting Plaintiff from work in his profession. Plaintiff also alludes generally to a "conspiracy" against him that continued until April 2019, as described above.

In *Morgan*, the Supreme Court explained that "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" and therefore "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" for purposes of charge-filing requirement. 536 U.S. at 114. "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" *Id.* at 110. A party therefore must file a charge with 300 days of the act, "or lose the ability to recover for it." *Id.* By contrast, hostile work environment claims involve the accumulation of repeated conduct over time, and thus "[i]n order for [a] charge [alleging hostile work environment] to be timely, the employee need only file [it] within ... 300 days of any act that is part of the hostile work environment." *Id.* at 118; see also *Outley v. City of Chicago*, 407 F. Supp. 3d 752, 761-62 (N.D. Ill. 2019). In considering whether the continuing violation doctrine might apply

to Plaintiff's Title VII claims, the Court first considers the discrimination and retaliation claims, and then separately addresses the hostile work environment claim.

The revocation of Plaintiff's offer to adjunct and ban on employment—essentially, termination events—are prototypical "discrete" discriminatory or retaliatory events to which the continuing violation doctrine does not apply. See *Morgan*, 536 U.S. at 114; *Outley*, 407 F. Supp. 3d at 761–62; *Lohrasbi v. Board of Trustees of the University of Illinois*, 147 F. Supp. 3d 746, 753-54 (C.D. Ill. 2015) (placement of professor on administrative leave, issuance of notice of trespass to professor, and denial of emeritus status to professor upon his retirement, were discrete acts of the university board of trustees that could not be tied together under continuous violation theory). The fact that Plaintiff has been barred from future employment and events at DePaul does not transform discrete discriminatory events into a "continuing" violation for which an employer forever remains subject to suit. If that were the law, it would mean that "the EEOC's inclusion of a 300-day filing window would be useless, as the time-limit could never begin to run" when an employer is terminated with the understanding that he will not be rehired. *Lohrasbi*, 147 F. Supp. 3d at 753 (rejecting argument that "employers who decide not to hire, promote, or grant a retirement status to an individual are forever subject to suit because the individual continues to be deprived of the position or title every day thereafter").

The accrual date for Plaintiff's claim based on Tamburro and Morgen allegedly ignoring his complaints about being the victim of sexual misconduct by his former student is less precise than the date his employment was permanently terminated. Nonetheless, at the latest, Plaintiff would have known by the same time he was banned from employment at DePaul for alleged sexual harassment that Tamburro and Morgen were not going to take any action on his emails from months earlier. Finally, DePaul's refusal to defend Plaintiff and the publication of the *DePaulia*

13

article both occurred on discrete and easily identifiable dates—the refusal when DePaul informed Plaintiff of its decision, and the article when it was published. In sum, the facts alleged in the complaint, and the EEOC charge of which the Court can take judicial notice, establish that Plaintiff failed to file an EEOC charge within 300 days of Defendants' (a) rescinding his adjunct offer, (b) banning him from future employment and events at DePaul, (c) ignoring his complaints of discrimination, (d) informing him that DePaul would no longer defend him, or (e) causing or encouraging the original publication of the *DePaulia* article disparaging him.

The Court now turns to the hostile work environment claim, to which the continuing violation doctrine might apply, per *Morgan*. To state a hostile work environment claim, a plaintiff must allege that: (1) he was subject to unwelcome harassment, (2) the harassment was based on his membership in a protected class or in retaliation for protected activity; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability. *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017); see also *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty*., 804 F.3d 826, 833–34 (7th Cir. 2015). The work environment must be both objectively and subjectively offensive, with the objective offensive of a work environment determined by considering "the severity of the conduct, its frequency, whether it is merely offensive as opposed to physically threatening or humiliating, and whether it unreasonably interfered with an employee's work performance." *Swyear v. Fare Foods Corp*., 911 F.3d 874, 881 (7th Cir. 2018).

The Complaint alleges that the following acts constitute "harassment" for purposes of his hostile work environment claim: "DePaul's (continued) publication/posting of the article in The *DePaulia* and on Twitter, DePaul faculty's conduct at trial (including providing false testimony and refusing to authenticate documents as requested by the trial court) and DePaul's (continued)

ban prohibiting Plaintiff from seeking employment or from participating in DePaul sponsored or co-sponsored events constitute harassment." [40] at 22. The problem with these allegations is not timeliness, but the fact that they concern solely events that occurred *after* Plaintiff was terminated—by which point Plaintiff had no "working environment" at DePaul nor "conditions of employment" with the school. Plaintiff has not pointed to, and the Court has not found, any authority for the proposition that a hostile work environment claim may be maintained on such allegations.

Plaintiff maintains that he has a viable hostile work environment claim because "the Seventh Circuit applies a broad interpretation of adverse actions and recognizes post-employment retaliation." [45] at 9. Plaintiff is correct that "former employees, in so far as they are complaining of *retaliation* that impinges on their future employment prospects or otherwise has a nexus to employment, do have the right to sue their former employers." *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 891 (7th Cir. 1996) (emphasis added). Thus, for instance, in *Greengrass v. Int'l Monetary Systems Ltd.*, 776 F.3d 481 (7th Cir. 2015), the Seventh Circuit held that a former employee was subjected to an adverse employment action when, after she left the defendant's employment, the defendant listed her name in publicly available SEC filings and referred to her EEOC complaint as meritless. The appellate court reasoned that a worker's decision to file an EEOC complaint might be negatively viewed by future employers and naming EEOC claimants in publicly available SEC filings could dissuade a reasonable worker from making or supporting a charge of discrimination. *Id*. at 486-87. *Veprinsky* and *Greengrass* both involved retaliation claims, not a hostile work environment claim like Plaintiff is attempting to assert here. Hostile work environment claims are evaluated differently. A plaintiff in a hostile work environment claim is not required to show that he was subjected to an adverse employment action—a term that

the Seventh Circuit has interpreted broadly to include certain post-employment conduct—but rather that he was subject to harassment that was so "severe or pervasive … as to alter the conditions of employment and create a hostile or abusive working environment." *Alamo*, 864 F.3d at 550. Once Plaintiff was terminated, he was no longer in a "working environment" or subject to any "conditions of employment," because he was not an employee at all. The facts alleged do not plausibly suggest that Plaintiff has a viable hostile work environment claim and therefore that claim is dismissed without prejudice.

### d.    Conduct at Trial

The only allegation Plaintiff makes concerning an adverse employment action that occurred within the 300 days before Plaintiff filed his EEOC charge is that Defendants "undermined [him] at trial" in April 2019. [40] at 21, 23. Plaintiff makes this allegation in support of his claims for gender discrimination (Count III) and retaliation (Count IV). The problem with this aspect of Plaintiff's pleading is that the Complaint's allegations do not plausibly support that any conduct at trial constituted an "adverse employment action," which is an element of a claim for either gender discrimination or retaliation.

For purposes of a Title VII retaliation claim, an adverse action is one that is "materially adverse to a reasonable employee, such that a reasonable employee would have been deterred from making or supporting an investigation of discrimination." *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 382 (7th Cir. 2020); see, e.g., *Huri*, 804 F.3d at 833 (employee adequately pleaded Title VII retaliation by alleging that after she filed EEOC charges and made internal complaints, she was subjected to adverse employment actions including screaming, false disciplinary reports, mistreatment of her daughter, exclusion from social functions, and denial of time off). In comparison, "employees who bring a Title VII claim of discrimination (rather than retaliation)

have a heavier burden: an 'adverse employment action' in those cases must visit upon a plaintiff a significant change in employment status, and often involves the employee's current wealth, her career prospects, working conditions, etc." *Id.* at 833, n.3. Thus, for purposes of a Title VII discrimination claim, an "adverse action" must be "more disruptive than a mere inconvenience or an alteration of job responsibilities," but does not require "a change in pay and benefits," with examples of qualifying actions including: "(1) reductions in compensation, fringe benefits, or other financial terms of employment, including termination; (2) preventing an employee from using the skills she developed and in which she is trained, such that those skills atrophy and her long-term career prospects are reduced; or (3) changing an employee's work conditions in a way that subjects h[er] to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in h[er] workplace environment" *Terry v. Gary Community School Corp.*, 910 F.3d 1000, 1005 (7th Cir. 2018) (internal quotation marks and citation omitted).

The Court first considers Title VII discrimination based on sex. Plaintiff implies that DePaul's actions at trial were an adverse employment action because they somehow made it more difficult for Plaintiff to find new employment. See [45] at 8 (acknowledging that "Plaintiff did indeed win his trial, but that is not where the analysis should stop" because "DePaul's conduct has rendered him unemployable"). However, there are no factual allegations in the Complaint, or arguments in Plaintiff's brief, hinting that it was DePaul's conduct at trial—rather than the time-barred adverse actions discussed above—that somehow hurt Plaintiff's career prospects. The Complaint alleges that Tamburro and Keshk testified inconsistently; however, Plaintiff does not identify the inconsistencies or explain their materiality to either the former student's suit against Plaintiff, this suit, or Plaintiff's subsequent attempts to obtain employment. The Complaint also alleges that DePaul's attorney refused to authenticate certain documents. But the documents were

subsequently admitted through Plaintiff's testimony. Perhaps most importantly, Plaintiff won his bench trial—a result that presumably would, if anything, help rather than hurt Plaintiff's employment prospects. In short, there is nothing in the Complaint or Plaintiff's brief that plausibly supports a conclusion that DePaul's alleged behavior at his trial constituted an adverse employment action for purposes of a Title VII discrimination suit.

That leaves retaliation, and the question of whether, taking Plaintiff's allegations as true and drawing all inferences in his favor, a reasonable employee who was subjected to DePaul's treatment at trial would have been deterred from making or supporting an investigation of discrimination. See *Robertson*, 949 F.3d at 382. "[E]xcept in rare cases, conduct occurring within the scope of litigation does not provide grounds for a retaliation claim." *Beltran v. Brentwood North Healthcare Center, LLC*, 426 F. Supp. 2d 827, 833 (N.D. Ill. 2006) (citing *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1995)). The Complaint's allegations about what actually occurred at his trial—considered along with the equally unilluminating response brief—are so threadbare that they do not support the inference needed to plausibly suggest that this is such a "rare case." Perhaps with more detail, Plaintiff might overcome this defect, but as it stands the Complaint is insufficient to support an inference that Tamburro and Keshk acted in some manner at Plaintiff's trial that "a reasonable employee would have been deterred from making or supporting an investigation of discrimination" based on such conduct. *Robertson*, 949 F.3d at 382.

For these various reasons, the Court grants Defendant's motion to dismiss all of Plaintiff's Title VII claims.

### 2. Title IX claim (Count VI)

The Court also grants Defendant's motion to dismiss Plaintiff's Title IX claim, which the Court previously dismissed on Title VII preemption grounds, see [36] at 8-11, and Plaintiff refiled solely to preserve the claim for appeal, see [45] at 9.

### 3. Section 1981 claim

Defendants argue that Plaintiff's new allegations in support of his § 1981 claim (Count VII) should be dismissed, even though the Court previously denied Defendants' motion to dismiss that claim. In particular, Defendants explain that Plaintiff has added a new allegation that DePaul's Title IX investigation, which resulted in banning Plaintiff from future employment at DePaul, "was arbitrary and capricious, and not routinely imposed in all cases involving faculty accused of sexual harassment at DePaul." [44] at 8. Defendants argue that this "new allegation is a thinly veiled attempt to rekindle the due process claims this Court already dismissed and does not state a claim for a § 1981 violation." *Id.* Motions to dismiss are not properly directed at individual factual allegations. See *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). To the extent that, at the litigation proceeds, Plaintiff attempts to revive a claim that has already been dismissed, the Court will take action as necessary.

### 4. State Law Claims and Supplemental Jurisdiction

In its prior opinion, the Court declined to exercise supplemental jurisdiction over Plaintiff's state law claims because none of the facts necessary to resolution of the state law claims are more than tangentially related to sole remaining federal claim, and state law claims would substantially predominate over federal claims. See [36] at 13-17. The only claims that Plaintiff attempted to add since the Court issued that opinion are the Title VII claims, which are all being dismissed for the reasons explained above. Therefore, there is no basis for the Court to reconsider its prior

decision concerning supplemental jurisdiction. The state law claims are therefore dismissed without prejudice.

## III.    Motion for Leave to Amend

Plaintiff seeks leave to file a third amended complaint to add allegations concerning DePaul's alleged recent republication of the *DePaulia* article. Plaintiff explains that he is adding these allegations to (1) address the statute of limitations problem with his "false light" state law claim; and (2) support a proposed new state law IIED claim. See [51] at 1. Defendants oppose amendment on the basis that it would be futile.

Rule 15(a)(2) provides that courts "should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Nonetheless, the Seventh Circuit has upheld the "broad discretion" of district courts "to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). The Court denies Plaintiff's existing motion for leave to amend without prejudice because the proposed amendments would simply add additional state law claims that would further predominate over the federal claims. Simply put, based on the existing pleadings and the Court's rulings, the Court would decline supplemental jurisdiction over the amended false light claim and proposed new IIED claim for the same reasons explained in this and the Court's prior opinions.

However, the case law makes clear that plaintiffs must plead facts sufficient to state a claim and need not identify the appropriate legal theories that match up with those facts, or indeed any legal theories at all. See *Rabe v. United Airlines, Inc.,* 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error") (citing *Williams v. Seniff*, 342 F.3d 774, 792 (7th Cir. 2003)); *KFC Corp. v. Iron Horse of Metairie*

*Road, LLC*, 2020 WL 3892989, at *3 (N.D. Ill. July 10, 2020) ("it is axiomatic that a plaintiff is not required to plead legal theories"); *Kyle v. Brennan*, 2020 WL 1330371, at *4 (N.D. Ill. Mar. 23, 2020) (same). Although all of the acts of retaliation featured in the argument section of Plaintiff's brief occurred more than 300 days before he filed his EEOC charge, and therefore are time barred, he also alleges that the *DePaulia* article at the heart of this litigation was republished. This factual allegation raises at least the possibility of a viable Title VII claim for post-employment retaliation.

While a court should not dismiss viable claims lurking in the factual allegations of a complaint, at the same time it is not the Court's role to investigate the basis for such claims, or to determine whether parties may pursue them consistent with Federal Rule of Civil Procedure 11. For that reason, the Court will allow Plaintiff one more—and barring unforeseen circumstances, likely only one more—opportunity to seek leave to replead. If counsel believes that a Title VII claim for post-employment retaliation can be maintained, Plaintiff may file another motion for leave to replead. As noted above, ff Plaintiff files a renewed motion for leave to amend to add another federal claim, he may also include in the proposed amended complaint his state law claims provided that he also files a motion to reconsider the Court's ruling that declines to exercise supplemental jurisdiction, along with reasons that the new federal claim, if allowed to proceed, shifts the discretionary analysis in regard to maintaining supplemental jurisdiction [see 36, at 13-20]. Any further motions to amend and/or for reconsideration must be filed no later than October 23, 2020. If Plaintiff does not wish to file any additional motions and will proceed on the Section 1981 racial discrimination claim only, he should advise the Courtroom Deputy as soon as that decision is made so that the Court can request a joint status report and/or set the matter for a telephonic status hearing. If one or more motions is filed, the Court will set a briefing schedule.

IV.     **Conclusion**

For these reasons, Defendants' motion to dismiss [43] is granted in part and denied in part. Plaintiffs' Title VII claims are dismissed due to Plaintiff's failure to file a timely charge with the EEOC and/or failure to state a claim. Plaintiff's Section 1981 racial discrimination claim will be allowed to proceed. Plaintiff's Title IX gender discrimination claim, which he filed to preserve his right to appeal the Court's previous dismissal of that claim, see [36] at 8-11, [45] at 9, is dismissed. The Court declines at this time to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, for the same reasons explained in its last opinion, see [36] at 13-20. Plaintiff's motion for leave to file a third amended complaint [51] is denied without prejudice and with leave to refile on the terms stated above. After Plaintiff makes his decision concerning whether to file, if a proper basis exists, (a) a further motion for leave to amend and (b) a motion for reconsideration the Court's decision declining to exercise supplemental jurisdiction, the Court will either set a briefing schedule or a deadline for the submission of a joint status report.

Dated: September 24, 2020

Robert M. Dow, Jr.
United States District Judge