**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Laith Saud, | |
| Plaintiff, | Case No. 1:19-cv-03945 |
| v. | Judge Robert M. Dow |
| DePaul University, | |
| Defendant. | |

**DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendant DePaul University, ("DePaul"), by and through the undersigned attorneys, hereby answers the Second Amended Complaint ("SAC") of Plaintiff Laith Saud ("Plaintiff") as follows:

**INTRODUCTION**

1.      This case is about DePaul, Morgen and Tamburro throwing an unprotected employee under the bus to further the university's own legal and public relations interest. Defendants in this case, at every stage of the facts in question, misled the Plaintiff, deprived him of good faith fair dealing and cooperation, colluded with one another to ruin his reputation, discriminated against him on the basis of his gender, race, national origin and religion, retaliated against him for engaging in protected activity, and abused his due process rights.

**Answer:**      DePaul denies the allegations in Paragraph 1.

2.      Plaintiff was a popular lecturer at DePaul for approximately twelve (12) years.  In 2017, Plaintiff was falsely accused of sexual assault.  The accusations were proven false such that Plaintiff was exonerated in court and won a defamation claim against his accuser.  The accuser's pleadings were contrived in such a way so as to make DePaul a party to the suit.  DePaul's General Counsel exploited the Plaintiff's reliance on their legal counsel.  In the process of litigating that suit, DePaul, through Morgen, promised to indemnify and defend Plaintiff, only to use the arrangement as a means to coerce the Plaintiff and to retaliate against him should he not comply with their wishes.  DePaul, Morgen and Tamburro also contrived a false Title IX report in order to protect the legal and public relations interests of DePaul, in direct violation of federal guidelines on such investigations.  In fact, in the process of contriving this report, Defendants did not once speak with Plaintiff's accuser, nor with anyone with direct knowledge of her allegations.  Further, the accuser never filed a Title IX complaint at all, and Defendants suppressed a claim of sexual misconduct made by Plaintiff in this case.  Finally, Defendants placed Plaintiff in false light by publishing an article in DePaul's newspaper that recklessly repeated the false accusations

Defendants knew or should have known were false from their own records and other information at their disposal. These and other actions described more fully below indicate Defendants acted with improper motivations, including discriminatory motives on the basis of Plaintiff's gender, race/ethnicity, national origin, religion and in retaliation for Plaintiff's making a complaint of sexual misconduct and maintaining his innocence throughout the accusations.

**Answer:**     DePaul admits in 2017 Plaintiff and DePaul were named in a lawsuit that accused Plaintiff of sexual assault. The allegations concerning the court proceedings, outcome at trial and the publication in DePaul's student newspaper relate to counts the Court already has dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's Order at Dkt No. 65. DePaul denies the remaining allegations in Paragraph 2.

3.     While Plaintiff was ultimately exonerated by a trial court in the Circuit Court of Cook County, significant damage was done to him as a direct and proximate cause of Defendants' acts and omissions. Defendants, both individually and together in collusion, worked to undermine and deprive Plaintiff of his rights, at the expense of their duties to Plaintiff, and at expense of the truth. DePaul and Morgen first used Plaintiff's job status to mislead him, Plaintiff was informed in July of 2017 that he may be able to return to work at some future date. Within that context, the Plaintiff assumed DePaul's good faith. DePaul and Morgen used that leverage to have Plaintiff enter into a joint defense agreement. DePaul and Morgen used these circumstances to further mislead, leverage and control Plaintiff, communicating to him that if Plaintiff did not comply, he would face detrimental consequences (they also used the arrangement to communicate to him misleading assurances). When the Plaintiff refused to be coerced into a settlement arrangement that was against his interest, DePaul took its first step in retaliating against him by depriving him of attorneys. When the Plaintiff communicated to DePaul that he felt his rights were violated, DePaul punished him again by publishing an article they informed him should not be published. DePaul also used the joint defense agreement up to and through trial, only to attempt to subvert his defense at trial.

**Answer:**     The allegations concerning the court proceedings, outcome at trial and the publication in DePaul's student newspaper relate to counts the Court already has dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's Order at Dkt No. 65. DePaul denies the remaining allegations in Paragraph 3.

### JURISDICTION & VENUE

4.     This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. This action is brought in part pursuant to 42 U.S.C. § 2000e et seq. for sex, race and national origin discrimination, harassment, and retaliation, 20 U.S.C. § 1681 for sex discrimination during the

course of a Title IX investigation, and 42 U.S.C. § 1981 for racial discrimination in employment, among other counts asserted. Plaintiff filed a continuing action charge of discrimination with the Equal Employment Opportunity Commission on November 5, 2019 and was issued a Right to Sue on November 14, 2019.

**Answer:** DePaul admits this action purports to be brought pursuant to 42 U.S.C. § 1981 ("Section 1981") for alleged racial discrimination in employment. The allegations concerning the charge of discrimination Plaintiff allegedly filed with the Equal Employment Opportunity Commission ("EEOC") and the EEOC's issuance of a Right to Sue relate to counts the Court already has dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's Order at Dkt No. 65. DePaul denies the remaining allegations in Paragraph 4.

5. Venue is proper under 28 U.S.C. § 1391(b). The parties reside and/or conduct business in this judicial district, and the events giving rise to the claims asserted herein occurred in this judicial district as well.

**Answer:** DePaul admits venue is proper in this Court. DePaul admits it conducts business in this judicial district. DePaul denies the remaining allegations in Paragraph 5.

## THE PARTIES

6. Plaintiff LAITH SAUD ("Plaintiff") was employed in the Religious Studies department at Defendant DePaul University for twelve years.

**Answer:** DePaul denies the allegations in Paragraph 6.

7. Defendant DEPAUL UNIVERSITY ("DePaul") is a private university organized under the Illinois General Not for Profit Corporation Act, 805 ILCS 105/ et seq. DePaul is being sued under all counts of this complaint.

**Answer:** DePaul admits it is a private university organized under the Illinois General Not for Profit Corporation Act, 805 ILCS 105/101.01 *et seq*. DePaul denies the remaining allegations in Paragraph 7.

8. Defendant MARLA MORGEN ("Morgen"), at all times relevant hereto, was employed as Senior Associate General Counsel at DePaul. In this capacity, Morgen advised DePaul on certain matters pertaining to Plaintiff, which, as elaborated upon below, breached

contractual and fiduciary duties owed to him. Morgen is being sued under Counts IX, XI and XIII of this complaint.

**Answer:** The allegations contained in Paragraph 8 relate to counts the Court already has dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's Order at Dkt No. 65.

9. Defendant Karen Tamburro ("Tamburro"), at all times relevant hereto, Tamburro was employed as the Title IX Coordinator at DePaul. In this capacity, Tamburro was responsible for overseeing DePaul's Title IX compliance, which included conducting investigations of complaints of alleged violations of DePaul's Title IX enforcement policy. Tamburro is being sued under Count XIII of this complaint.

**Answer:** The allegations contained in Paragraph 9 relate to counts the Court already has dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's Order at Dkt No. 65.

## FACTUAL ALLEGATIONS

### *Background*

10. Plaintiff is male of Arab heritage. He is Iraqi-American and Muslim.

**Answer:** DePaul is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 10 and, therefore, denies the same.

11. Plaintiff was hired as an adjunct lecturer at DePaul in or around 2005. Plaintiff taught primarily in the Religious Studies Department. Plaintiff's classes were extremely popular, and there were often a number of students on a waitlist to enroll into his courses.

**Answer:** DePaul denies the allegations in Paragraph 11.

12. In part because of his success in bringing up enrollment in the Religious Studies Department, in or around 2010, Plaintiff was promoted to Visiting Assistant Professor ("VAP"). The VAP contract was renewed each academic term after a review of Plaintiff's performance. Plaintiff routinely received exceptional student and faculty evaluations.

**Answer:** DePaul denies the allegations in paragraph 12.

13. In the Spring of 2017, Plaintiff and the only other VAP in the Religious Studies Department were informed that their positions were being shifted due to "budgetary constraints".

The other VAP was a white, non-Muslim, male.

**Answer:** DePaul denies the allegations in Paragraph 13.

14. Meanwhile, because he was so economically important to the Religious Studies department, teaching the most popular classes in the department, the chair of the department, Khaled Keshk, invited Plaintiff to adjunct in Religious Studies. Plaintiff accepted at the amount of $4,800 per course, and arrangements were being made for him to teach in the Fall.

**Answer:** DePaul denies the allegations in Paragraph 14.

15. Plaintiff accepted the offer to adjunct in Religious Studies. At minimum, Plaintiff would receive the base salary for adjuncts of his seniority at DePaul, $4,800 per course taught.

**Answer:** DePaul denies the allegations in Paragraph 15.

16. In June of 2017, in an email to Plaintiff and the other VAP in the department, Keshk invited them to propose bonus pay on the basis of "Enhanced Pay" – a program commonly used for senior adjunct faculty - and told them he would solicit those amounts from the dean of the college.

**Answer:** DePaul denies the allegations in Paragraph 16.

17. Plaintiff responded to Keshk, proposing Enhanced Pay and providing his justifications for the proposed amount. Plaintiff's proposal also did not reject the $4,800 base salary for adjuncts, nor did he ever make Enhanced Pay a condition of his employment.

**Answer:** DePaul denies the allegations in Paragraph 17.

18. Adjunct positions at DePaul (as with most universities) are limited-term contracts that expire at the end of the quarter or semester. They are renewed as an adjunct begins teaching in a new quarter or semester. Adjuncts at DePaul are paid per course.

**Answer:** DePaul is without sufficient knowledge to form a belief as to the truth of Plaintiff's allegations regarding the terms or conditions under which other universities may employ adjunct professors. DePaul denies the remaining allegations in Paragraph 18.

19. Upon information and belief, the other VAP in the department returned to work the next academic year as an adjunct.

**Answer:** DePaul denies the allegations in Paragraph 19.

*former student Falsely Accuses Plaintiff, Sparking Title IX Investigation*

20.     During the Spring of 2017, Plaintiff received a lien letter from an attorney representing a former student.  The former student is a white woman.  The letter advised there was a claim against Plaintiff "with regards to repeated acts of sexual misconduct and reckless behavior involving a student taking one of [Plaintiff's] classes."  The letter did not provide any detail regarding the alleged acts of the Plaintiff.  A letter was also sent to DePaul.

**Answer:**     DePaul is without sufficient knowledge to form a belief as to the truth of Plaintiff's allegations that he received a lien letter from an attorney representing a former student or the contents of the letter.  DePaul admits it was sent a letter.  Answering further, DePaul states it received a letter from attorneys representing a former student asserting Plaintiff engaged in "repeated acts of sexual misconduct and reckless behavior involved a student taking one of [Plaintiff's] courses."

21.     Sometime in or around May of 2017, Plaintiff was informed that DePaul was investigating him for the alleged sexual misconduct.  The investigation was conducted by DePaul's Title IX Coordinator, Defendant Karen Tamburro.

**Answer:**     DePaul admits its investigation into the former student's allegations against Plaintiff was conducted by DePaul's Title IX Coordinator, Karen Tamburro.  DePaul denies the remaining allegations in Paragraph 21.

22.     Plaintiff immediately informed his department chair, Keshk, that he was being investigated.  Keshk warned Plaintiff that he did not think Plaintiff would be treated fairly because he is a male of Arab heritage, considering DePaul's history.

**Answer:**     DePaul denies the allegations in paragraph 22.

23.     In early May of 2017, Plaintiff met with Tamburro.  Plaintiff was not informed of any specific allegations against him.  During this meeting, Plaintiff informed Tamburro that he had a social relationship with the former student that later evolved into a romantic relationship, and that the former student had gotten upset with him in February of 2017 (nearly a year after she had taken his course) when he didn't respond to her text messages within a day.  He further informed Tamburro that he never used his position for sexual favors, and that he gave out A's to all students who attended and participated in his course.

**Answer:**     DePaul admits Tamburro met with Plaintiff in early May of 2017.  DePaul denies the remaining allegations in Paragraph 23.

24.     Tamburro attempted to contact the former student, both directly and through her attorneys.  Neither the former student, nor her attorneys, cooperated with the investigation nor provided further detail regarding the alleged sexual misconduct.

**Answer:**     DePaul admits Tamburro attempted to contact the former student, both directly and through her attorneys. DePaul denies the allegations in Paragraph 24.

25.     Sometime in May 2017, Tamburro completed her investigation and issued a report finding Plaintiff did not violate any of DePaul's policies.

**Answer:**     DePaul denies the allegations in Paragraph 25.

26.     At all times relevant, DePaul did not have a policy prohibiting romantic relationships between students and faculty; DePaul's policy prohibited the abuse of power in the event of such relationships.

**Answer:**     DePaul denies the allegations in Paragraph 26.

27.     Plaintiff informed Keshk regarding the findings.  Keshk congratulated Plaintiff in a text message.  Keshk again congratulated Plaintiff the next time they saw one another in person.

**Answer:**     DePaul denies the allegations in Paragraph 27.

28.     Plaintiff also emailed Tamburro sometime in or around June of 2017, saying he believed he was the victim of sexual misconduct by the former student.  Tamburro never responded to the email, nor did she open an investigation into Plaintiff's claim.  Plaintiff also later emailed Morgen, also stating he believed he was the victim of sexual misconduct by the former student. Morgen also did not acknowledge the complaint.

**Answer:**     DePaul denies the allegations in Paragraph 28.

### *Former student files lawsuit against Plaintiff and DePaul, DePaul withdraws adjunct offer, DePaul begins to defend and indemnify Plaintiff*

29.     On June 29, 2017, the former student filed a lawsuit naming DePaul and Plaintiff as defendants.  Against Plaintiff, she alleged common law battery and violation of the Illinois Gender Violence Act ("GVA").  Against DePaul, she alleged negligent hiring and supervision.

**Answer:**     DePaul admits that, on June 29, 2017, the former student filed a lawsuit naming DePaul and Plaintiff as defendants.  DePaul admits the former student's lawsuit asserted battery and violation of the Illinois Gender Violence Act against Plaintiff.  DePaul denies the remaining allegations in Paragraph 29.

30. The Chicago Sun-Times published an article about the lawsuit, not naming Plaintiff by name, but noting the case involved DePaul University. This sparked a petition from students, widely circulated on social media, in which comments were made regarding Plaintiff's gender. Upon information and belief, DePaul was aware and was motivated by the petition and these comments. Tamburro, along with several other DePaul administrators, were sent the petition and had access to the comments made in it.

**Answer:** The allegations contained in Paragraph 30 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

31. The former student's lawsuit alleged that Plaintiff had been the subject of "many complaints of harassment" at DePaul, and that DePaul knew or should have known that Plaintiff was engaging in sexual misconduct. In fact, this claim was completely false, DePaul knew it was false, and it was her failure to provide specifics for this claim that later led to DePaul's dismissal from the case.

**Answer:** The allegations contained in Paragraph 31 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65..

32. Against Plaintiff, the former student alleged that on a certain night, Plaintiff picked her up from the DePaul campus, took her out for dinner and drinks, "plied her with alcohol", and then took her back to his apartment where he "forcibly" pursued sex with her, twice. She also alleged a separate incident in Plaintiff's office at DePaul, where she claimed Plaintiff coerced her into touching herself. The only fact alleged in support of her coercion claim was that Plaintiff was her instructor.

**Answer:** DePaul denies the allegations in Paragraph 32.

33. Approximately a week or so later, DePaul's Senior Associate General Counsel, Defendant Marla Morgen, contacted Plaintiff and informed him that, pursuant to the terms of DePaul's Bylaws, DePaul would indemnify and defend Plaintiff. Morgen told Plaintiff that DePaul would select his attorneys for him.

**Answer:** The allegations contained in Paragraph 33 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

34. DePaul selected Plaintiff's attorneys for him and began paying for his defense.

**Answer:** The allegations contained in Paragraph 34 relate to counts the Court already has dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's Order at Dkt No. 65.

35.    DePaul and Plaintiff's attorneys entered into a Joint Defense Agreement ("JDA"). Among the terms was a requirement of written notice to the other party when one party intended to terminate the JDA.

**Answer:** The allegations contained in Paragraph 35 relate to counts the Court already has dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's Order at Dkt No. 65.

36.    DePaul pressured Plaintiff to agree to the JDA.  The JDA gave DePaul access to influence his defense and gain privy to otherwise privileged information, and to manage and control Plaintiff.  Defendant took advantage of the JDA, all the way up until trial.

**Answer:** The allegations contained in Paragraph 36 relate to counts the Court already has dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's Order at Dkt No. 65.

37.    Throughout the course of the lawsuit, DePaul, through its attorneys at Michael Best, warned or implied to Plaintiff that if he did not go along with its wishes, he could face detrimental consequences.  DePaul would later make good on these threats.  This sent a clear signal to Plaintiff that, against the most serious accusations a person could face in life, DePaul would interfere with or refuse to provide information vital to his defense.

**Answer:** The allegations contained in Paragraph 37 relate to counts the Court already has dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's Order at Dkt No. 65.

### *DePaul re-opens investigation*

38.    After the former student filed her lawsuit, Tamburro reopened her investigation regarding the former student's claims.  Once again, neither the former student nor her attorneys cooperated with the investigation.  Upon information and belief, Tamburro was given access to information and documents from the case through Morgen, in violation of the JDA.

**Answer:** DePaul admits Tamburro reopened DePaul's investigation regarding a former student's claims sometime after the former student filed her lawsuit. DePaul denies the remaining allegations in Paragraph 38.

39. Upon information and belief, during her investigation Tamburro contacted Arab and Muslim students that were not enrolled in Plaintiff's classes to discuss the investigation of Plaintiff.

**Answer:** DePaul denies the allegations in Paragraph 39.

40. Tamburro issued a second report in October of 2017. Without any change in the evidence, Tamburro changed her findings in the second report. While she still maintained that a preponderance of the evidence did not support a finding that Plaintiff committed battery or abused his position, she changed her findings regarding sexual harassment. Specifically, Tamburro found that Plaintiff had sexually harassed the former student. Tamburro's methods and findings failed to adhere to federal guidelines on conducting Title IX investigations or DePaul procedures.

**Answer:** DePaul admits Tamburro issued a second report in October of 2017. DePaul also admits Tamburro found Plaintiff violated DePaul's Anti-Discrimination and Anti-Harassment policy. DePaul denies the remaining allegations in Paragraph 40.

41. Following Tamburro's report, DePaul sent Plaintiff a letter stating that he was not eligible for future employment at DePaul, and no longer allowed to participate in any DePaul sponsored events, nor in any events co-sponsored by DePaul.

**Answer:** DePaul denies the allegations in Paragraph 41.

42. Plaintiff was told that the investigation was closed and would not be reopened in spite of the fact evidence was incoming and overwhelmingly in support of the Plaintiff. Additionally, universities often do not conclude Title IX investigations as litigation is ongoing, but DePaul actively discarded that practice precisely because they had a predetermined conclusion in mind.

**Answer:** DePaul denies the allegations in Paragraph 42.

43. Upon information and belief, other similarly situated non-Arab, non-Iraqi, non-Muslim and non-male faculty are treated more favorably during Title IX investigations, and are not subjected to the same punishment for alleged violations of DePaul's sexual harassment policy.

**Answer:** DePaul denies the allegations in Paragraph 43.

***DePaul is dismissed from the lawsuit***

44. Plaintiff filed his verified Answer to the former student's complaint. Specifically, he denied ever using his position or grades for sexual favors, and denied that the encounters alleged by the former student ever took place. Plaintiff also countersued the former student for defamation.

**Answer:** DePaul admits Plaintiff filed a verified Answer to the former student's complaint.

DePaul admits Plaintiff also countersued the former student for defamation. DePaul denies the

remaining allegations in Paragraph 44.

45. DePaul was first dismissed without prejudice from the lawsuit on the basis that, without more, an employer could not be held vicariously liable for sexual assault by an employee. The former student was given leave to file an Amended Complaint to plead more sufficient facts regarding the negligence claim against DePaul, and did. In February of 2018, DePaul was again dismissed on the same basis, this time with prejudice, because the former student could not plead sufficient facts that Plaintiff had been the subject of any complaints of harassment at all.

**Answer:** The allegations contained in Paragraph 45 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

### DePaul stops defending/indemnifying Plaintiff, and the case proceeds to trial

46. Following DePaul's dismissal in February of 2018, the former student filed a Notice of Appeal.

**Answer:** The allegations contained in Paragraph 46 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

47. Following the former student's notice of appeal, DePaul entered into settlement negotiations with the former student. DePaul also pressured Plaintiff to pay money to his false accuser to settle the case. Plaintiff did not want to pay his accuser, maintaining that the lawsuit was baseless and had been filed in bad faith.

**Answer:** The allegations contained in Paragraph 47 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul.

48. DePaul then informed Plaintiff, via Morgen, that it would no longer defend or indemnify him. DePaul provided no explanation to Plaintiff for its action.

**Answer:**     The allegations contained in Paragraph 48 relate to parties the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

49.     Plaintiff communicated to DePaul, through Morgen, that he believed his rights were
being violated. Morgen responded, stating she disagreed with Plaintiff's characterizations but that
Plaintiff should communicate with her regarding any issues he had. These communications
occurred prior to the publication of the article about Plaintiff.

**Answer:**     The allegations contained in Paragraph 49 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

50.     DePaul entered into an agreement in principle with the former student. After this
agreement in principle was reached, after it stopped indemnifying and defending Plaintiff, and
after Plaintiff complained to Morgen about his treatment, DePaul published an article about
Plaintiff in The DePaulia, as further elaborated upon below. Within 24 hours of the publication,
the former student voluntarily dismissed her appeal against DePaul pursuant to a settlement
agreement with them.

**Answer:**     The allegations contained in Paragraph 50 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

51.     DePaul never notified Plaintiff that it was terminating the JDA.

**Answer:**     The allegations contained in Paragraph 51 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

52.     The case proceeded to trial. Because he could not afford to pay the attorneys
DePaul had obtained for him, Plaintiff was forced to proceed pro se until he found counsel to
represent him pro bono.

**Answer:**     The allegations contained in Paragraph 52 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

53.     DePaul's attorneys later contacted Plaintiff's attorney to obtain updates and information on the case, including when it was preparing to represent two of DePaul's faculty (Tamburro and Keshk) in depositions. Upon information and belief, DePaul maintained the JDA in order to keep leverage over the Plaintiff and to mislead him into providing them with information on the case.

**Answer:**     The allegations contained in Paragraph 53 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

54.     Throughout the course of the litigation, Plaintiff maintained that the former student's complaint was baseless, the events alleged never occurred, he never abused his position, and the pair had a consensual relationship.

**Answer:**     The allegations contained in Paragraph 54 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

55.     Plaintiff obtained evidence that negated the former student's version of events entirely, showing through phone records, receipts and bank records that the events she had alleged could not have occurred. A bench trial was held on the matter on April 15-16, 2019. An attorney from Michael Best and someone from DePaul's Office of General Counsel were present on behalf of DePaul on the first day of trial. The trial judge denied the former student's claims and granted Plaintiff's defamation claim.

**Answer:**     The allegations contained in Paragraph 55 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

56.     Despite the former student's denial there had been a consensual relationship, the trial court found there to have been one due to numerous phone and text messages (most occurring after the course was over), and the former student's own admissions at trial.

**Answer:**     The allegations contained in Paragraph 56 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

57.     More importantly, the trial court found that the former student's allegations could not have happened and the Plaintiff never plied her with alcohol.

**Answer:**     The allegations contained in Paragraph 57 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

58.     The former student also admitted Plaintiff never offered her anything, nor threatened her, nor that there was ever a quid pro quo arrangement between them.  Text messages between them showed the former student had gotten angry with the Plaintiff a few months before filing her lawsuit (and nearly a year after the course was over) when he did not respond to her text messages quickly enough.  This, among other testimony and evidence, allowed the trial court to enter its finding against the former student and for Plaintiff.

**Answer:**     The allegations contained in Paragraph 58 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

59.     Not only did the trial court find the alleged assault never occurred, the trial court found that the Plaintiff never abused his position in pursuit of any relationship.  Tamburro's Title IX investigation report was never reopened or updated to reflect the trial court's findings.

**Answer:**     The allegations contained in Paragraph 59 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

60.     On day one of the bench trial, Tamburro and Keshk testified.  Their testimonies deviated from their depositions.  Keshk and Tumburro contradicted one another regarding sources of information used in Tamburro's October 2017 report, in which she changed her finding with respect to whether Plaintiff violated DePaul's policy on sexual harassment.  Among other inconsistencies, Keshk testified he learned of Plaintiff's alleged misconduct through Tamburro's report, whereas Tamburro testified she obtained information from Keshk to substantiate her findings.

**Answer:**     The allegations concerning the former student's trial against Plaintiff relate to

counts the Court already has dismissed from the SAC and, thus, no response is required from

DePaul.  DePaul denies the remaining allegations in Paragraph 60 pursuant to the Court's Order

at Dkt No. 65.

61.     During discovery in the case, Plaintiff issued a subpoena to DePaul requesting, among other things, the former student's sign-in records at the dormitory where her friend lived. The former student testified that, following the alleged assault, she went to her friend's dorm and was signed in at approximately 1am.  DePaul produced the requested sign- in records in response to the subpoena, which confirmed her sign in at that time.  At trial, the former student's attorneys objected to the admission of the sign-in records as evidence, arguing they were not self-authenticating.  The trial judge agreed and noting DePaul's attorney and someone from DePaul's Office of General Counsel were present in the courtroom, the judge requested Plaintiff to ask DePaul if they would authenticate the sign-in records.  Plaintiff's attorney made the request to DePaul's attorney and DePaul refused to cooperate.  The trial judge ultimately allowed the evidence in with Plaintiff's own testimony authenticating the document.

**Answer:**     The allegations contained in Paragraph 61 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

62.     At trial the Plaintiff realized that any belief in good faith he had in DePaul was completely misplaced and that DePaul had deliberately misled him in order to avoid a lawsuit against themselves.

**Answer:**     The allegations contained in Paragraph 62 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

63.     The trial judge denied all of the former student's claims against Plaintiff, finding the sexual encounter she had alleged never took place and Plaintiff did not abuse his position.  The trial judge also granted Plaintiff's defamation claim against the former student.

**Answer:**     The allegations contained in Paragraph 63 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

### *The DePaulia article*

64.     The DePaulia is DePaul's school newspaper, published through DePaul's College of Communication.  While the articles are written by student journalists, they are advised by faculty at DePaul's College of Communication.  DePaul's College of Communication also offers a course, Writing for The DePaulia (JOUR390), in which students enroll in a course for credit and

write stories for publication in the paper.

**Answer:**     The allegations contained in Paragraph 64 relate to counts the Court already has dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's Order at Dkt No. 65.

65.     The journalists contacted Plaintiff in January of 2018 for a comment on the case. Plaintiff's attorneys advised him that DePaul did not want him to provide a comment to The DePaulia. DePaul conveyed to Plaintiff that the article would likely not be published if he did not provide a comment because the journalists would have had no new information to publish. Plaintiff, relying on Depaul, provided no statement to The DePaulia. Nor did his attorneys.

**Answer:**     The allegations contained in Paragraph 65 relate to counts the Court already has dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's Order at Dkt No. 65.

66.     On April 2, 2018, as DePaul was executing its agreement with the former student, The DePaulia, published an article about the former student's allegations. The article was entitled, "Power Player: Former DePaul student sues ex-professor for sexual coercion."

**Answer:**     The allegations contained in Paragraph 66 relate to counts the Court already has dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's Order at Dkt No. 65.

67.     Upon information and belief, DePaulia journalists or advising faculty were in communication with DePaul administration regarding what content to include in the article, whom to speak with, and when to publish it.

**Answer:**     The allegations contained in Paragraph 67 relate to counts the Court already has dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's Order at Dkt No. 65.

68.     DePaul was responsible for the article's publication and exercised control over its contents and when it would be published. DePaulia journalists wanted to publish the story as early as January but were delayed by DePaul.

**Answer:**     The allegations contained in Paragraph 68 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

69.     DePaul communicated to the Plaintiff they had no influence over the article, however, journalists were given access to Plaintiff's student lists and student contact information by DePaul.

**Answer:**     The allegations contained in Paragraph 69 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

70.     The article repeated the completely baseless allegations contained in the former student's lawsuit, including that Plaintiff had been the subject of "many complaints of harassment" at DePaul, that he had "plied" the former student with alcohol, and that he used his position to coerce the former student into having sex with him.

**Answer:**     The allegations contained in Paragraph 70 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

71.     The article misrepresented Plaintiff's denials and statements in his filed pleadings.

**Answer:**     The allegations contained in Paragraph 71 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

72.     Upon information and belief, one of the journalists working on the piece told one of the students interviewed that she believed DePaul was discriminating against Plaintiff because he was Arab and male.

**Answer:**     The allegations contained in Paragraph 72 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

73.     The article was posted on The DePaulia website. The article was also "pinned" on The DePaulia's Twitter account for several months, which meant that it appeared at the top of the Twitter page regardless of more recent articles published and "tweeted" by the paper. DePaul

actively promoted the article until September of 2018.

**Answer:**     The allegations contained in Paragraph 73 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

73.     The article claimed to have interviewed classmates of the former student, but in fact
never did so.  It is a blatant misrepresentation.

**Answer:**     The allegations contained in Paragraph 74 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

75.     The article also inexplicably discusses Plaintiff's personal background, including
his religion and his religiosity.

**Answer:**     The allegations contained in Paragraph 75 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

76.     Upon information and belief, the journalists were directed to change the subject of
the article to faculty student dating.  In spite of the presence of such relationships at DePaul, the
article never discussed a single other faculty members' personal dating life.

**Answer:**     The allegations contained in Paragraph 76 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

77.     The students' investigation into the litigation was stopped in February and
inexplicably no updates were provided in the intervening months before the article's publication
on April 2.

**Answer:**     The allegations contained in Paragraph 77 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

78.     The article quoted Tamburro and Carol Hughes, Executive Director of Strategic Content and Media at DePaul, who told The DePaulia that Plaintiff was "not currently employed at DePaul" and would not comment on the reason he had left.  DePaul administrators also made no comment in the article regarding the fact that Plaintiff was never the subject of "many complaints" of harassment at the university, as had been alleged by the former student.  This and several of the former student's other false allegations were merely repeated throughout the article without rebuttal, even though DePaul knew or had reason to know of their falsity.

**Answer:**     The allegations contained in Paragraph 78 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

79.     The article made no mention of Plaintiff's countersuit for defamation.  The article about the Plaintiff was pinned on The DePaulia twitter account for several months after it was published.  Upon information and belief, no other article posted on the DePaulia's Twitter page was pinned for that length of time.  The article remains on The DePaulia website today.

**Answer:**     The allegations contained in Paragraph 79 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

### *Plaintiff's damages*

80.     Plaintiff has not been permitted to return to teach at DePaul.  He has also not been permitted to participate in any activities sponsored or co-sponsored by the university.  This ban has not been lifted by the university.

**Answer:**     DePaul admits Plaintiff is not eligible for employment at DePaul.  DePaul denies

the remaining allegations in Paragraph 80.

81.     The DePaulia article remains on the first page of search results when conducting a Google search of Plaintiff's name.  The result of this has been devastating upon the Plaintiff, as it has rendered him unemployable to any employer with an internet search engine.

**Answer:**     The allegations contained in Paragraph 81 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

82.     Plaintiff had been invited to lecture at classes at DePaul, but could not, due to the

restrictions imposed on him by DePaul.

**Answer:** DePaul is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 82 and, therefore, denies the same.

83. Plaintiff has applied for other academic positions but has not received requests for interviews or any offers of employment. In some cases, Plaintiff has been directly told that news of the former student's lawsuit is the reason that he has not been considered for employment.

**Answer:** DePaul is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 83 and, therefore, denies the same.

84. Sometime in 2017, Plaintiff had a one-man show in production with a Chicago theater company. Following the publication of The DePaulia article, the theater company informed Plaintiff that it learned of the lawsuit through The DePaulia article and could not work with Plaintiff as a result.

**Answer:** The allegations contained in Paragraph 84 relate to counts the Court already has dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's Order at Dkt No. 65.

85. Throughout his career at DePaul, Plaintiff was also a frequent guest on local news and radio. Following The DePaulia article, the Plaintiff's relationships with local news contacts were damaged, and he was no longer sought out for his commentary.

**Answer:** The allegations contained in Paragraph 85 relate to counts the Court already has dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's Order at Dkt No. 65.

86. In 2016, Plaintiff performed a TedX talk at DePaul. Following publication of The DePaulia article, DePaul removed Plaintiff's TedX talk from its YouTube channel and other media platforms.

**Answer:** The allegations contained in Paragraph 86 relate to counts the Court already has dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's Order at Dkt No. 65.

87. The aforementioned caused Plaintiff to be without employment for over two (2)

years and counting, severely impacting his ability to provide for his daughter as a single father. Despite the fact that Plaintiff, after spending ten (10) years pursuing his PhD at the University of Chicago, the aforementioned also negatively impacted Plaintiff's professional standing and reputation, destroying his academic career.

**Answer:** The allegations contained in Paragraph 87 relate to counts the Court already has

dismissed from the SAC and, thus, no response is required from DePaul pursuant to the Court's

Order at Dkt No. 65.

## COUNT I
## Title VII – Race

88. Plaintiff reasserts and realleges all previously pled paragraphs as if incorporated fully herein.

**Answer:** This Count was dismissed by the Court and, thus, no response is required from

DePaul.

89. Plaintiff is an Arab American. He was qualified and performed his job excellently, as observed in student and faculty teaching evaluations over the years. Plaintiff was the most popular teacher in the department, his courses were almost always full and students were waitlisted to attend his course. Plaintiff and the only other VAP in the Religious Studies department, a white male, were both offered adjunct positions after they were informed of the budget cuts, and both were invited to request Enhanced Pay. Plaintiff was treated disparately in that he was abruptly informed that he would not be brought back to adjunct, when the other similarly situated colleague was brought back as an adjunct.

**Answer:** This Count was dismissed by the Court and, thus, no response is required from

DePaul.

90. Among other acts and omissions, DePaul also discriminated against Plaintiff when, after the conclusion of the second Title IX investigation, he was prohibited from future employment at DePaul, and from participating in DePaul sponsored or co-sponsored events. The process and basis upon which DePaul imposed this penalty was arbitrary and capricious, and not routinely imposed in all cases involving faculty accused of sexual harassment at DePaul. DePaul also published an article about Plaintiff that remains on The DePaulia website today, which, among other things, disparages Plaintiff's professional reputation. Plaintiff was treated disparately from his white female accuser and also disparately from other similarly situated non-Arab faculty.

**Answer:** This Count was dismissed by the Court and, thus, no response is required from

DePaul.

91.     Defendant's discriminatory conduct caused Plaintiff damages as more fully described above.

**Answer:**     This Count was dismissed by the Court and, thus, no response is required from DePaul.

## COUNT II
## Title VII - National Origin Discrimination

92.     Plaintiff reasserts and realleges all previously pled paragraphs as if incorporated fully herein.

**Answer:**     This Count was dismissed by the Court and, thus, no response is required from DePaul.

93.     Plaintiff's nation of origin is Iraq. He was qualified and performed his job excellently, as observed in student and faculty teaching evaluations over the years. Plaintiff was one of the most popular teachers in the department, his courses were always full and students were waitlisted to attend his course.  Plaintiff and the only other VAP in the Religious Studies department, a white non-Iraqi male, were both offered adjunct positions after they were informed of the budget cuts, and both were invited to request Enhanced Pay. Plaintiff was treated disparately in that he was abruptly informed that he would not be brought back to adjunct, when the other similarly situated colleague was brought back as an adjunct.

**Answer:**     This Count was dismissed by the Court and, thus, no response is required from DePaul.

94.     Among other acts and omissions, Defendant also discriminated against Plaintiff when, after the conclusion of the second Title IX investigation, he was prohibited from future employment at DePaul and from participating in DePaul sponsored or co-sponsored events. The process and basis upon which DePaul imposed this penalty was arbitrary and capricious, and not routinely imposed in all cases involving faculty accused of sexual harassment at DePaul. DePaul also published an article about Plaintiff that remains on The DePaulia website today, which, among other things, disparages Plaintiff's professional reputation. Plaintiff was treated disparately from his white female accuser, and also disparately from other similarly situated non-Iraqi faculty.

**Answer:**     This Count was dismissed by the Court and, thus, no response is required from DePaul.

95.     Defendant's discriminatory conduct caused Plaintiff damages as more fully described above.

**Answer:** This Count was dismissed by the Court and, thus, no response is required from DePaul.

## COUNT III
### Title VII - Gender Discrimination

96. Plaintiff reasserts and realleges all previously pled paragraphs as if incorporated fully herein.

**Answer:** This Count was dismissed by the Court and, thus, no response is required from DePaul.

97. DePaul discriminated against Plaintiff on the basis of his gender, male. This includes, but is not limited to: DePaul did not investigate, nor even respond to Plaintiff's report that he felt he had been the victim of sexual misconduct by the former student. Plaintiff was also treated disparately in that DePaul issued a credibility determination in favor of the former student, and against Plaintiff, when it never actually spoke to the former student and she never actually filed a Title IX claim at all. In addition, during the process of the Title IX investigation, DePaul violated Plaintiff's right to due process. Plaintiff was prohibited from future employment at DePaul, and prohibited from participating in any DePaul-sponsored, or co-sponsored, events. DePaul later imposed another punishment: under its direction and control, The DePaulia published an article discussing Plaintiff by name and disparaging his professional reputation. DePaul also undermined Plaintiff at his trial. Plaintiff was treated disparately from his white female accuser, and also disparately from other similarly situated non-male faculty.

**Answer:** This Count was dismissed by the Court and, thus, no response is required from DePaul.

98. DePaul's termination and refusal to rehire Plaintiff was also motivated by gender bias. DePaul's stated reason for terminating and refusing to hire Plaintiff were pretext for the unlawful discrimination.

**Answer:** This Count was dismissed by the Court and, thus, no response is required from DePaul.

99. Defendant's discriminatory conduct caused Plaintiff damages as more fully described above.

**Answer:** This Count was dismissed by the Court and, thus, no response is required from DePaul.

## COUNT IV
### Title VII – Retaliation

100.     Plaintiff reasserts and realleges all previously pled paragraphs as if incorporated fully herein.

**Answer:**     This Count was dismissed by the Court and, thus, no response is required from DePaul.

101.     Plaintiff engaged in protected activity when he made complaints to Tamburro and Morgen, and when he exercised his right to maintain his innocence. Among other acts and omissions, DePaul retaliated against Plaintiff when it refused to bring him back to teach, banned him from future employment and from participating in events, stopped defending him, caused the article to be published in The DePaulia regarding him and acted to undermine Plaintiff's trial.

**Answer:**     This Count was dismissed by the Court and, thus, no response is required from DePaul.

102.     DePaul's retaliatory conduct caused Plaintiff damages as more fully described above.

**Answer:**     This Count was dismissed by the Court and, thus, no response is required from DePaul.

## COUNT V
### Title VII – Harassment

103.     Plaintiff reasserts and realleges all previously pled paragraphs as if incorporated fully herein.

**Answer:**     This Count was dismissed by the Court and, thus, no response is required from DePaul.

104.     Among other acts or omissions, DePaul's (continued) publication/posting of the article in The DePaulia and on Twitter, DePaul faculty's conduct at trial (including providing false testimony and refusing to authenticate documents as requested by the trial court) and DePaul's (continued) ban prohibiting Plaintiff from seeking employment or from participating in DePaul sponsored or co-sponsored events constitute harassment. Said harassment is motivated by discriminatory bias and in retaliation, as more fully described above.

**Answer:**     This Count was dismissed by the Court and, thus, no response is required from

DePaul.

105.   Said harassment caused Plaintiff damages as more fully described above.

**Answer:**   This Count was dismissed by the Court and, thus, no response is required from

DePaul.

## COUNT VI
## Title IX – Gender Discrimination

106.   Plaintiff reasserts and realleges all previously pled paragraphs as if incorporated fully herein.

**Answer:**   This Count was dismissed with prejudice by the Court and, thus, no response is

required from DePaul.

107.   DePaul discriminated against Plaintiff on the basis of his gender, male. This includes, but is not limited to: DePaul did not investigate, nor even respond to, Plaintiff's report that he felt he had been the victim of sexual misconduct by the former student. Plaintiff was also treated disparately in that DePaul issued a credibility determination in favor of the former student, and against Plaintiff, when it never actually spoke to the former student and she never actually filed a Title IX claim at all.  In addition, during the process of the Title IX investigation, DePaul violated Plaintiff's right to due process. Plaintiff was prohibited from future employment at DePaul, and prohibited from participating in any DePaul-sponsored, or co-sponsored, events. DePaul later imposed another punishment: under its direction and control, The DePaulia published an article discussing Plaintiff by name and disparaging his professional reputation. DePaul also undermined Plaintiff at his trial.

**Answer:**   This Count was dismissed with prejudice by the Court and, thus, no response is

required from DePaul.

108.   Defendant's discriminatory conduct caused Plaintiff damages as more fully described above.

**Answer:**   This Count was dismissed with prejudice by the Court and, thus, no response is

required from DePaul.

## COUNT VII
## 42 U.S.C. § 1981 – Race/Ethnicity Discrimination

109.   Plaintiff reasserts and realleges all previously pled paragraphs as if incorporated fully herein.

**Answer:**     DePaul incorporates by reference its answers to Paragraphs 1-108 of Plaintiff's

SAC as if set forth fully herein.

110.    Plaintiff is an Arab American.  He was qualified and performed his job excellently, as observed in student and faculty teaching evaluations over the years.  Plaintiff was the most popular teacher in the department, his courses were almost always full and students were waitlisted to attend his course.  Plaintiff and the only other VAP in the Religious Studies department, a white male, were both offered adjunct positions after they were informed of the budget cuts, and both were invited to request Enhanced Pay.  Plaintiff was treated disparately in that he was abruptly informed that he would not be brought back to adjunct, when the other similarly situated colleague was brought back as an adjunct.

**Answer:**     DePaul is without sufficient knowledge to form a belief as to the truth of Plaintiff's

allegations that he is Arab American and, therefore, denies the same.  DePaul denies the remaining

allegations in Paragraph 110.

111.    Defendant also discriminated against Plaintiff when, after the conclusion of the second Title IX investigation, he was prohibited from future employment at DePaul, and from participating in DePaul sponsored or co-sponsored events.  The process and basis upon which DePaul imposed this penalty was arbitrary and capricious, and not routinely imposed in all cases involving faculty accused of sexual harassment at DePaul.

**Answer:**     DePaul denies the allegations in Paragraph 111.

112.    Defendant's discriminatory conduct caused Plaintiff damages as more fully described above.

**Answer:**     DePaul denies the allegations in Paragraph 112.

## COUNT VIII
### Breach of Contractual Obligation to Defend and Indemnify

113.    Plaintiff reasserts and realleges all previously pled paragraphs as if incorporated fully herein.

**Answer:**     This Count was dismissed by the Court for lack of subject matter jurisdiction and,

thus, no response is required from DePaul.

114.    As described more fully above, DePaul owed a duty to defend and indemnify Plaintiff. DePaul took up the duty to defend and began substantial performance, even continuing said performance after it was dismissed from the lawsuit.

**Answer:**     This Count was dismissed by the Court for lack of subject matter jurisdiction and, thus, no response is required from DePaul.

115.     DePaul breached its duty to Plaintiff when, after agreeing to defend and indemnify Plaintiff and substantially performing on said agreement, it terminated his defense without cause.

**Answer:**     This Count was dismissed by the Court for lack of subject matter jurisdiction and, thus, no response is required from DePaul.

116.     DePaul's breach caused Plaintiff damage, including, but not limited to, having to bear the costs of his defense while unemployed.

**Answer:**     This Count was dismissed by the Court for lack of subject matter jurisdiction and, thus, no response is required from DePaul.

**COUNT IX**
**Breach of Fiduciary Duties / Defense and Indemnification**

117.     Plaintiff reasserts and realleges all previously pled paragraphs as if incorporated fully herein.

**Answer:**     This Count was dismissed by the Court for lack of subject matter jurisdiction and, thus, no response is required from DePaul.

118.     Defendants DePaul and Morgen owed a fiduciary duty to defend and indemnify Plaintiff.

**Answer:**     This Count was dismissed by the Court for lack of subject matter jurisdiction and, thus, no response is required from DePaul.

119.     As elaborated further above, Defendants violated their fiduciary duties to act in good faith and to deal fairly with Plaintiff.  Defendants placed DePaul's legal and public relations interests above their fiduciary duties to Plaintiff, when, upon DePaul's dismissal from the case, it stopped indemnifying and defending him. Defendants acted with malice or with reckless disregard of their duties toward the Plaintiff.

**Answer:**     This Count was dismissed by the Court for lack of subject matter jurisdiction and, thus, no response is required from DePaul.

120.     Defendants' breach of fiduciary duty to Plaintiff caused him damage including, but not limited to, having to bear the cost of defense while unemployed.

**Answer:**     This Count was dismissed by the Court for lack of subject matter jurisdiction and, thus, no response is required from DePaul.

## COUNT X
## Breach of Employment Contract

121.     Plaintiff reasserts and realleges all previously pled paragraphs as if incorporated fully herein.

**Answer:**     This Count was dismissed by the Court for lack of subject matter jurisdiction and, thus, no response is required from DePaul.

122.     Defendant DePaul offered Plaintiff employment to teach as an adjunct for the upcoming academic year, and Plaintiff accepted. The terms of this contract were specific with respect to duration and the duties to be performed. Plaintiff was to receive a minimum of $4,800 per course. The adjunct contract would have renewed each academic Quarter when new courses began. The classes he was to teach were already determined.

**Answer:**     This Count was dismissed by the Court for lack of subject matter jurisdiction and, thus, no response is required from DePaul.

123.     Defendant DePaul breached this contract when it informed Plaintiff that he would not be brought back to adjunct.

**Answer:**     This Count was dismissed by the Court for lack of subject matter jurisdiction and, thus, no response is required from DePaul.

124.     Defendant DePaul's breach caused Plaintiff damage, as more fully described above.

**Answer:**     This Count was dismissed by the Court for lack of subject matter jurisdiction and, thus, no response is required from DePaul.

## COUNT XI
## Breach of Fiduciary Duty in Employment Contract

125.     Plaintiff reasserts and realleges all previously pled paragraphs as if incorporated fully herein.

**Answer:** This Count was dismissed by the Court for lack of subject matter jurisdiction and, thus, no response is required from DePaul.

126. As elaborated further above, Defendant DePaul violated its fiduciary duty to act in good faith and to deal fairly with Plaintiff when Defendant agreed to have Plaintiff adjunct in the upcoming year and also told him to request Enhanced Pay and then used the Enhanced Pay request as a basis to deny Plaintiff employment as an adjunct. As described more fully above, DePaul's real motivation for the breach was to protect its own legal and public relations interests and to discriminate and retaliate against Plaintiff.

**Answer:** This Count was dismissed by the Court for lack of subject matter jurisdiction and, thus, no response is required from DePaul.

127. Defendants' breach of fiduciary duty caused Plaintiff damage including, but not limited to, that he was not employed the next academic year, as more fully described above.

**Answer:** This Count was dismissed by the Court for lack of subject matter jurisdiction and, thus, no response is required from DePaul.

## COUNT XII
## Promissory Estoppel

128. Plaintiff reasserts and realleges all previously pled paragraphs as if incorporated fully herein.

**Answer:** This Count was dismissed by the Court for lack of subject matter jurisdiction and, thus, no response is required from DePaul.

129. Defendant DePaul made an unambiguous promise that Plaintiff could adjunct in the next academic year and told Plaintiff he could request Enhanced Pay based on his years of experience at DePaul.

**Answer:** This Count was dismissed by the Court for lack of subject matter jurisdiction and, thus, no response is required from DePaul.

130. Plaintiff's reliance on DePaul's promises was expected and foreseeable.

**Answer:** This Count was dismissed by the Court for lack of subject matter jurisdiction and, thus, no response is required from DePaul.

131.    Plaintiff relied on the promises to his detriment when he proposed Enhanced Pay he thought would be fair, and DePaul later used this as a basis to deny him employment as an adjunct, causing him damage, as more fully described above.

**Answer:**    This Count was dismissed by the Court for lack of subject matter jurisdiction and, thus, no response is required from DePaul.

## COUNT XIII
## False Light Invasion of Privacy

132.    Plaintiff reasserts and realleges all previously pled paragraphs as if incorporated fully herein.

**Answer:**    This Count was dismissed by the Court for lack of subject matter jurisdiction and, thus, no response is required from DePaul.

133.    As described more fully above, Defendants DePaul, Tamburro and Morgen, along with other unnamed DePaul faculty and staff, colluded to place Plaintiff in a false light to the public by way of the article published in The DePaulia newspaper.  The false light imputed upon Plaintiff the commission of a crime, as well as conduct that would impute upon his professional integrity, and thus would be highly offensive to a reasonable person.  Defendants acted with knowledge that the statements were false or with reckless disregard for whether the statements were true or false.

**Answer:**    This Count was dismissed by the Court for lack of subject matter jurisdiction and, thus, no response is required from DePaul.

134.    Defendants are responsible for the publication. Defendants determined when to publish the article about Plaintiff, gave journalists access to otherwise private information, and ultimately approved all of the information that was included, and excluded, from the article. Statements that placed Plaintiff in a false light include, but are not limited to: including the former student's false claim, unrebutted, that Plaintiff was the subject of "many complaints" of harassment, when Defendants knew or should have known the statement was false; quoting a student that was not even in the same class as the former student (while claiming she was) who then commented negatively on Plaintiff's professionalism; and omitted the fact that Plaintiff had filed a defamation claim and provided no legal updates on the case, even though DePaul actively promoted the article until September 2018.

**Answer:**    This Count was dismissed by the Court for lack of subject matter jurisdiction and, thus, no response is required from DePaul.

135.    Defendants' conduct caused Plaintiff damage, including, but not limited to, loss of

professional and economic opportunities and significant damage to his professional reputation.

**Answer:**     This Count was dismissed by the Court for lack of subject matter jurisdiction and, thus, no response is required from DePaul.

DePaul denies that Plaintiff is entitled to any of the relief requested following Paragraph 135 of the SAC.

## AFFIRMATIVE DEFENSES

As and for its Affirmative Defenses to Plaintiff's Second Amended Complaint, Defendant DePaul University states as follows:

1.     To the extent Plaintiff has failed to exercise diligence to mitigate his alleged damages, such damages are barred.

2.     DePaul acted reasonably and in good faith at all times to comply with applicable laws; therefore, Plaintiff's claims for punitive damages are barred.

3.     Plaintiff's claims are barred, in whole or in part, by Plaintiff's unclean hands.

DePaul reserves the right to amend its answer and affirmative defenses for purposes of raising any additional affirmative defenses presently existing or that may be learned through discovery and/or further proceedings in this matter.

Dated: January 15, 2021                          Respectfully submitted,

                                                 Defendant DePaul University

                                        By:      /s/ Brian P. Paul
                                                 One of Its Attorneys


Brian P. Paul
Kerryann M. Haase
Michael K. Chropowicz
Michael Best & Friedrich LLP
444 W. Lake Street, Suite 3200
Chicago, IL  60606
Telephone: 312.222.0800

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on January 15, 2021, I electronically filed the foregoing ***Defendant's Answer to Plaintiff's Second Amended Complaint*** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

**Christina W. Abraham**
Abraham Law & Consulting, LLC
161 N. Clark St., Suite 1600
Chicago, Illinois 60601
Email: christina.w.abraham@gmail.com

/s/ Brian P. Paul
*Attorney for Defendant DePaul University*
Michael Best & Friedrich LLP
444 West Lake Street, Suite 3200
Chicago, Illinois 60606
E-mail: bppaul@michaelbest.com