**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LAITH SAUD, | |
| Plaintiff, | |
| v. | No. 1:19-cv-3945 |
| DEPAUL UNIVERSITY, | HON: Judge Joan B. Gottschall |
| Defendant. | Magistrate Judge Susan E. Cox |

## PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT AND DEFENDANT'S ATTORNEY (Opposed)

NOW COMES Plaintiff Laith Saud, by and through his Counsel, and moves the Honorable Court to impose sanctions against Defendant DEPAUL UNIVERSITY and their attorneys at Michael Best, LLP, as permitted under Federal Rule of Civil Procedure 11, Section 1927 of the Judicial Code, and the court's inherent powers. In support of his Petition, Plaintiff states as follows:

### Introduction

Plaintiff brought his complaint against Defendant on June 12, 2019 alleging intentional acts that constituted race discrimination under § 1981. Since then, discovery has revealed sanctionable conduct on the part of the Defendant, including Defendant destroying evidence and advancing false claims in papers presented to this court. Defendant's attorneys have engaged in sanctionable conduct by filing motions based on claims they know to be false. For the conduct outlined below, both Defendant and their attorneys should pay Plaintiff's attorney fees and costs.

On October 25, 2022, Plaintiff sent to Defendant's counsel a letter indicating his intent to pursue sanctions under Rule 11, along with a draft copy of his motion for sanctions. On November 15, 2022, Defendant responded, stating it will not withdraw the summary judgment filings containing the false statements. Exhibit A, Plaintiff's 10/25/2022 Rule 11 Notice Letter; Exhibit B, Defendant's 11/15/2022 Response.

## Central Issue

There are many issues in dispute in this case between the two parties; such as Defendant's *anti-discrimination and anti-harassment* (ADAH) *policy,* whether Plaintiff requested too much money for his adjunct courses, whether Comparator A, being the subject of a rape accusation by a student in 2014 was treated better than Plaintiff, when the Plaintiff's supervisor actually cancelled Plaintiff's courses, whether Defendant targeted Plaintiff through its OIDE office after he was flagged to the President, Provost, VP of OIDE and others for an event dealing with "Muslim Civil Liberties in the age of Trump," the contents of the Title IX investigator's notes and more.

Out of consideration for this court and pursuant to the narrow purposes of Rule 11 and § 1927, Defendant's sanctionable conduct can be boiled down to the advancement of three demonstrably false claims presented in Defendant's papers. (1) Defendant now claims Plaintiff was the subject of two "additional" complaints from former Middle Eastern/Muslim students; (2) that his supervisor cancelled his courses in July 2017 and (3) that DePaul's ADAH policy prohibits relationships between faculty and students. Defendant's policy does not, even if the student is enrolled in the faculty person's class.

The following statement encapsulates a major component of the Defendant's position. In their cross motions for summary judgment Defendant states:

"Plaintiff's incredulous claims that the two former students did not make complaints to Keshk, and Keshk cancelled Plaintiff's classes in May, should be disregarded because 'conclusory statements, unsupported by the evidence of record, are insufficient to avoid summary judgment.'" *Cooper-Schut v. Visteon Aut. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004). (Dkt. 186, p. 7)

There is no evidentiary basis for these claims, and the evidence in fact contradicts the claims. Defendant has shown reckless disregard for the court's time and resources by advancing the claim Middle Eastern/Muslim "former students" complained about Plaintiff or that Khaled Keshk, his supervisor, cancelled Plaintiff's classes in July 2017; not only do these claims have no substantive evidence to support them, these claims were directly refuted at trial in 2019 by the very person Defendant now claims is making them, Keshk.

In April of 2019, trial Judge Cassandra Lewis exonerated Plaintiff of claims of sexual misconduct by a white woman (an actual former student of the Plaintiff); Judge Lewis also awarded Plaintiff his defamation claim against his accuser. Dkt. 164-26, Ex. 35. During that trial some key players in this case testified. Their trial testimony directly contradicts claims Defendant now makes.

### Defendant's False Claims

1. Defendant now claims: "The undisputed facts show Keshk was planning to hire Plaintiff as an adjunct faculty member for the 2017 Fall Quarter until Keshk learned Plaintiff was being sued for sexually assaulting a student and received two other student reports of Plaintiff's misconduct. Within days, Keshk informed Plaintiff he would no longer negotiate salary with Plaintiff for an adjunct position." Dkt. 186, p. 1.

2. In 2019, Keshk testified the *Dean* declined to rehire Plaintiff for budgetary reasons *only*, nothing about allegations. Dkt. 164-60, Ex. 81, 60:17-21, 61:3-7.

3.      More importantly, at trial in 2019, Keshk was directly asked if there were other complaints about Plaintiff.  Keshk was direct and clear; there were no other complaints about Plaintiff.  Dkt. 164-60, Ex. 81, 64.

4.      Karen Tamburro, DePaul's Title IX investigator, affirmed in her deposition that after speaking with one of the women Defendant now claims complained about Plaintiff, that there was no conduct to investigate. Dkt. 167-6, Ex. 15, 121:12-25.  Tamburro's notes also affirm that the woman made it clear that, according to Tamburro's record of the call, Plaintiff never made any sexual advances or overtures to the woman.  Dkt. 167-12, Ex. 25, p.1.  The woman never made a complaint against Plaintiff nor has even been ascribed as making hearsay comments that could remotely be construed as misconduct.

5.      As for the 'second' student, no student filed a complaint, no student is on record making a complaint, it is not clear what student Defendant is even referring to,[1] the only source of these so-called additional complaints is Khaled Keshk, who directly refuted there were any other complaints against Plaintiff in 2019. Dkt. 164-60, Ex. 81, 64

6.      When asked what exactly constituted the alleged "first additional complaint" Keshk cannot provide an answer, he says: "No. I don't believe she was even detailed to me. She just said something, and I don't remember exactly what she said." Dkt 167-2, Ex 2, 193:14-16.

7.      Regarding the supposed "second complaint" from another student, Keshk cannot identify what the complaint was or who made the complaint. Keshk's answer is so evasive and incoherent it must be reproduced here to be appreciated:

---

[1] Defendant has shuffled around four different women in their presented papers as making two claims against the Plaintiff, in addition to the white woman found liable for defamation against Plaintiff.  Yet there is no "additional two complaints," there is no report of complaints, no record, no affidavits; but all the women were of Middle-Eastern/Muslim background.  *See* Dkt 180 ¶¶ 46-47. It is Plaintiff's contention Defendant attempted to contrive complaints from minority women to off-set the glaring fact Defendant sided with a white woman making false claims against a man of color.

Plaintiff's Attorney: "Which one was it, Dr. Keshk? Was it Dina or was it Roya that you had this conversation with?

A. About whom exactly?

Q. About Laith?

A. No, I know, but I mean –

Q. The investigation.

A. -- what is -- what is that about? She had heard from a friend of a friend that -- what you call -- oh, this was a complaint. Oh, this was somebody that said that -- oh, when somebody said that they named -- oh, before -- okay. This is before -- what's his name -- I knew who that person was." Dkt. 167-2, Ex 2, 199:7-18.

8.    Keshk is then asked why the Title IX coordinator has two different versions of a memo noting Keshk's one conversation, to which Defendant now ties a "second complaint," the content of which we still do not know:

Plaintiff's Attorney: "Do you have any idea as to why there are two versions to this memo, one that claims that you had this conversation with Dina Abdalla and another that claims that you had this conversation with Roya?

A. No. I mean, who wrote this memo?

Q. Well, I got it from Karen Tamburro.

A. Okay. So maybe you should ask her.

Q. Well, I'm trying to ask you who it was and why there'd be two versions of this memo here.

MR. PAUL (Defendant's Attorney): Objection. Asked and answered. Foundation. You can answer if you know.

A. I mean, yeah. I -- I wouldn't know why she would -- what you -- I have no idea

why she would do that, and why she would say Dina and not Roya, and why she

would, you know, have two, you know, versions of it." Dkt. 167-2, Ex. 2, 200:2-

17. (Parenthetical notes added)

9.    As problematic, Defendant repeatedly refers to these women as Plaintiff's former

students, yet none of them were ever the Plaintiff's students. Dkt. 167, Ex. 25.  Defendant

simply uses misleading language to create the impression they were his students and that there

were "complaints" made about Plaintiff. Dkt. 179, Ex. 2, ¶ 21.

10.    Defendant now claims Keshk cancelled Plaintiff's contract in July of 2017 when

"Keshk learned Plaintiff was being sued for sexually assaulting a student and received two

other student reports of Plaintiff's misconduct." Dkt. 186, p. 1.

11.    Having established there are no other complaints, discovery has also *indisputably*

revealed Keshk cancelled Plaintiff's Fall Quarter classes in early May, roughly two months

before any lawsuit or even fabricated claims of "other complaints." Dkt. 164-30, Ex. 41; Dkt.

167-2, Ex. 2, pp. 163, 165.

12.    Finally, Defendant repeatedly claims Plaintiff violated DePaul's ADAH policy by

having a relationship with a student during his class.[2]

13.    Elizabeth Ortiz, Defendant's VP of OIDE explicitly testified under oath that DePaul

does not prohibit relationships between faculty and students *even if the student is enrolled in a

faculty member's class*. Dkt. 167-3, Ex. 8 at p. 43  This testimony is corroborated by other

evidence as well.  *See* Dkt. 167-6, Ex. 15 at p. 19; Dkt. 164-16, Ex. 17 at p. 3; Dkt. 164-17,

Ex. 18.

---

[2] Plaintiff has always insisted his class was over when the sexual relationship ensued and explained the circumstances in detail.

**Destroying Evidence**

14.    During her deposition, Karen Tamburro, an attorney and former Title IX coordinator at DePaul University testified she "destroyed" the notes of her meeting with Plaintiff. Dkt. 167-6, Ex. 15, 86:8-9. Tamburro initiated her meeting with Plaintiff after receiving a lien letter. Dkt. 167-6, Ex. 15, 53:19-21.  The moment Defendant received a lien letter; all elements related to those claims, including the notes from her initial meeting with the Plaintiff, were legal evidence.  By destroying those notes, the content of which is an issue in dispute in this case, Defendant violated a fundamental principle of legal procedure, the maintenance of evidence.  See *Trask-Morton v. Motel*, 534 F.3d 672, 681 (7th Cir. 2008)

**Defendant Advancing Demonstrably False Claims in Sworn Documents**

Keshk informed Plaintiff in the summer of 2017, that he was not welcomed back in the Fall of 2017 because Plaintiff a) asked for too much money and b) DePaul projected low enrollment for the upcoming quarter. Dkt 164-39, Ex. 50; Dkt. 167-2, Ex. 2, 145-146.  Discovery has proven those two claims were demonstrably pre-text;[3] so Defendant has created new retroactive reasons for cancelling Plaintiff's classes.  Defendant *now* (as of February 2022) claims the reason they cancelled Plaintiff's contract is because Khaled Keshk, the Plaintiff's former supervisor, discovered "other complaints" about the Plaintiff. Dkt. 149, p. 4.  Yet Keshk himself, under oath, testified in 2019 there were never any other complaints about Plaintiff Dkt. 164-60, Ex. 81, 64.; he also testified it was the Dean who did not rehire Plaintiff strictly for budgetary reasons (i.e. the Plaintiff "asked for too much money") and nothing more. Dkt. 164-60, Ex. 81, 60:17-24 - 61:1-7.

---

[3] Discovery proved that a white colleague, Comparator A, in fact asked for more money than Plaintiff, but was retained.  Defendant then claimed Comparator A was never accused of misconduct; discovery proved that Comparator A was in fact accused of raping a student in 2014, but was retained by the same chair.  Dkt. 163, ¶ 58. Keshk also testified that Plaintiff's classes were always full and that students were on waitlists to get into his class (Dkt. 164-60, Ex 81, 62:6-7).

The Defendant is advancing false claims in papers presented to this court in bad faith. The Defendant, with resources vastly disparate to Plaintiff, has a responsibility to litigate in good faith and truthfully, and not use the legal process as an expensive bludgeon. When Defendant advanced the claims of "two additional complaints," that Keshk cancelled Plaintiff's classes in July 2017 and the ADAH policy prohibits relationships, in sworn documents, they violated Rule 11. When the Defendant advanced claims that rely on false testimony, they violated Section 1927 and by their overall behavior they have violated the spirit of the law.

### Attorney Involvement

Section 1927 pertains to attorney misconduct. Each time the Defendant's attorneys at Michael Best, LLP advance false claims they burden this court with the responsibility of inquiring into them. Attorneys bear that responsibility. The court is not a plaything for well-funded attorneys to throw mud around and see what sticks. The attorneys at Michael Best have made their strategy clear, defame the Plaintiff, a man of color and take advantage of the "aggressive" Arab man stereotype.

Defendant's attorneys have been more than willing to present claims to this court already proven defamatory in a court of law. Their attorneys claimed that "Plaintiff admitted, while the Former Student was in his class, he invited her to get a drink after class, which she accepted. Dkt. 44, p. 2. Following the drink, he and the Former Student engaged in a consensual sexual relationship." *Id.* This false claim was the basis of the defamation claim that Plaintiff won against his accuser. Plaintiff proved the event never occurred. Defendant's attorneys know this because they represented Defendant in those proceedings. Dkt. 164-60, Ex. 81, 72:7-13. Defendant is not only willing to repeat the false claim against a person of color, but even pretend the Plaintiff "admitted" to it; when in fact the Plaintiff defended against this very claim and proved it false.

Michael Best, LLP has a history of abusing legal processes and being a bad faith actor.[4] This violation of the spirit of the court is not only abusive; it demonstrates contempt for the court, its time and its purpose.

## Legal Argument

### Sanctions are appropriate under Fed. R. Civ. P. Rule 11

Fed. R. Civ. P. Rule 11 ensures that attorneys do not present papers for improper use and that counsel has inquired into the facts of each claim they present. "[T]he central purpose of Rule 11 is to deter baseless filings in [federal] district court and thus…streamline the administration and procedure of the federal courts." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters.,* 498 U.S. 533, 552 (1991). Under Rule 11(b), a lawyer or party certifies "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after reasonable opportunity for further investigation." Fed. R. Civ. P. 11(b)(1)-(3). If a paper is signed in violation of Rule 11, the court is required to impose an appropriate sanction. The district court employs an objectively reasonable standard in assessing whether an attorney's conduct violates the Rule. See *Schaefer v. Transportation Media Inc.*, 859 F.2d 1251, 1256 (7th Cir. 1988); *Thompson v. Duke*, 940 F.2d 192, 195 (7th Cir. 1991).

When a defendant moves for summary judgment or replies to a motion, there must be a good faith basis for the claims and arguments made. *Littler v. Martinez*, No. 2:16-cv-00472-JMS-DLP at *6 (S.D. Ind. Jan. 3, 2020). The court may sanction a party that files papers that rest on "infirm

---

[4] *Baldus v. Members of the Wis. Gov't Accountability Bd.*, 843 F. Supp. 2d 955 (E.D. Wis. 2012) ("Mindful of the fact that the state's taxpayers would ultimately bear the cost of ... sanctions, the Court will order that the Legislature's attorneys, Eric M. McLeod, Joseph L. Olson, Aaron H. Kastens and Michael Best & Friedrich LLP -- those ultimately responsible for the sand-bagging, hide-the-ball trial tactics that continue to be employed -- jointly and severally, make payment to plaintiffs' counsel in the form of an award of attorneys fees and costs as a sanction by the Court.")

factual foundation." *Equal Emp't Opportunity Comm'n v. CVS Pharmacy, Inc.*, 907 F.3d 968, 977 (7th Cir. 2018); see also Fed. R. Civ. P. 11(b)(3) (requiring that factual contentions have evidentiary support).

Defendant's factual claim that it did not renew Plaintiff's contract because of the Martalogu lawsuit is factually meritless. It became apparent during the course of discovery that Plaintiff's classes for the Autumn 2017 Quarter were cancelled in May 2017 (Dkt. 164-30, Ex. 41; Dkt. 167-2, Ex. 2, pp. 163, 165.), whereas Martalogu's lawsuit was filed on June 29, 2017 (Dkt. 164-5, Ex. 5). That Defendant did not inform Plaintiff of this decision until July does not save it and only goes to show that Defendant's intent to engage in deceptive tactics with Plaintiff began prior to the filing of the Martalogu lawsuit. Defendant's assertion that Keshk terminated Plaintiff because of the Martalogu lawsuit has been asserted by Defendant in filings with the Court, including those referenced above (Dkt. 186, p. 1.). Defendant knew, or should have known with reasonable inquiry, that at the time it made those filings those statements were false.

Defendant's factual claim that it did not renew Plaintiff's contract because there were "additional complaints" is also baseless. Dkt. 186, p. 7. There is no evidence any other student made a complaint about Plaintiff. More importantly, Keshk and Tamburro previously testified there had been no other "complaints" regarding Plaintiff. Dkt. 164-60, Ex. 81, 64.; Dkt. 167-6, Ex. 15, 121:12-25. Defendant made the false claim in violation of Fed. R. Civ. P. 11.

Defendant's factual claim that DePaul's ADAH prohibits relationships between faculty and students is also baseless. As confirmed by the testimony of the VP of OIDE and other evidence, the policy does not prohibit such relationships, even when the student is currently enrolled in a faculty member's class. Dkt. 167-3, Ex. 8 at p. 43;Dkt. 167-6, Ex. 15 at p. 19; Dkt. 164-16, Ex. 17 at p. 3; Dkt. 164-17, Ex. 18. Defendant relies on this false statement for the proposition that it

banned Plaintiff for having violated the ADAH policy, after Tamburro "concluded" that the relationship began during the class. Dkt. 149, p. 5  It is irrelevant for the purpose of this motion that Plaintiff disputes the conclusion that the consensual relationship began during the class. Dkt. 166, ¶ 19.  What is relevant for the purpose of this motion is that Defendant has put forth the false claim that the ADAH policy prohibits such relationships, and this claim has no factual support and is contradicted by the evidence. Dkt. 167-3, Ex. 8 at p. 43;Dkt. 167-6, Ex. 15 at p. 19; Dkt. 164-16, Ex. 17 at p. 3; Dkt. 164-17, Ex. 18.

Presenting false claims, such as the claims outlined above is an inherently improper use of sworn documents.  Defendant and their attorneys cannot produce a single witness, affidavit or shred of evidence to substantiate these claims.  The only evidence produced are the self-serving statements of Keshk, who directly negated these claims under oath at trial in 2019. Dkt. 164-60, Ex. 81, 64.  The Defendant and their attorneys know this, yet they made the claims anyway.  This is improper use and a direct violation of a commitment to inquiry. Plaintiff seeks attorney's fees, under Rule 11, as a deterrent to such conduct in the future by Defendant, in this case and others.

### Sanctions are appropriate under § 1927 and the Court's inherent powers

Section 1927 of the Judicial Code allows a court to impose sanctions upon any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" by requiring the offending party to pay for the excess costs that result from the misconduct.  28 U.S.C. § 1927.

These false statements were not made for any legitimate purpose, but were done in order to obstruct and protract the legal process, unethically shield Defendant from liability for conduct it knows it has engaged in, and to harass Plaintiff for having exercised his right to seek relief from the court for Defendant's discrimination. This purposely vexatious conduct is precisely the sort of

conduct § 1927 is meant to deter. The Plaintiff respectfully requests the Court sanction Defendant by granting him attorney's fees and other costs.

## Conclusion

WHEREFORE, Plaintiff respectfully requests the Honorable Court grant his motion for sanctions under Fed. R. Civ. P. 11 and grant the following relief:

1. Bar Defendant from relying on the claim that his supervisor cancelled his courses in July 2017 and strike any assertions thereof in its summary judgment briefs;

2. Bar Defendant from relying on the claim that its ADAH policy prohibits relationships between faculty and students enrolled in their courses and strike any assertions thereof in its summary judgment briefs; and

3. Bar Defendant from relying on the claim that it did not renew Plaintiff's contract because of "additional reports" received by Keshk and strike any assertions thereof in its summary judgment briefs;

4. Award Plaintiff reasonable costs and attorney fees for the additional expenses and protracted litigation incurred by Defendant's attorneys' unreasonable and vexatious conduct.

Respectfully submitted,
LAITH SAUD,
Plaintiff/Petitioner

_____

By:     Christina Abraham
Attorney for Plaintiff

Attorney No. 46497

Christina Abraham, Esq.
Attorney for Plaintiff
161 N. Clark Street, Suite 1600
Chicago, IL 60601
(312) 588-7150

November 18, 2022

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned attorney hereby certifies that she caused a copy of Plaintiff's Motion to be served upon the following parties listed below, via the Northern District of Illinois Electronic Case Management System to all parties registered for electronic service on November 18, 2022.

<u>/s/Christina Abraham</u>

Christina Abraham
Attorney for the Plaintiff

Attorney No. 6298946
Christina Abraham, Esq.
Abraham Law & Consulting, LLC
161 N. Clark Street, Suite 1600
312-588-7150