IN THE FEDERAL DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| LAITH SAUD, | |
| Plaintiff, | |
| v. | Case No.: 19-cv-3945 |
| DEPAUL UNIVERSITY, | |
| Defendant. | Hon. Judge Joan B. Gottschall |
| | Hon. Magistrate Judge Susan E. Cox |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**ORAL ARGUMENT REQUESTED**

NOW COMES Plaintiff LAITH SAUD ("Saud"), by and through undersigned counsel, and moves the Honorable Court pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1 to grant Plaintiff summary judgment as to the liability of Defendant DEPAUL UNIVERSITY ("DePaul") for race discrimination in violation of 42 U.S.C. § 1981. Plaintiff also respectfully requests oral arguments be heard for his motion. In support of his Motion, Saud states as follows:

**Brief Factual Background**

1. In April of 2017, Campus Watch published an article about Plaintiff Laith Saud. Four days later DePaul received the lien letter sent by Martalogu's attorneys, and three days after that OIDE opened its investigation of Saud for two false allegations. OIDE initially cleared Saud, and then later, after it had summarily removed him from the university, determined he violated the ADAH policy on sexual harassment.

2. In so doing, and as more fully elaborated upon in Plaintiff's Memorandum In Support of his Motion for Summary Judgment, DePaul applied a rule to Saud that it did not

1

apply to other faculty. It deprived him of an appeal. It did not treat other similarly situated faculty in the same manner.

## Legal Standard

3. Summary judgment is proper where the "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" FED R. CIV. P. 56(c). When ruling on a summary judgment motion, the court credits all admissible evidence presented by the nonmoving party and draws all justifiable inferences in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). The court does not assess the credibility of witnesses or weigh evidence. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005).

4. The legal standard for employment discrimination cases "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The evidence must be evaluated as a whole. *Id.*, at 766.

5. One method of proving employment discrimination is remains the "indirect" burden shifting method espoused under *McDonnell Douglas Corp v. Green*, 441 U.S. 792 (1973). Under this method, to establish a discrimination claim, a plaintiff must show: (1) membership to a protected class; (2) he met the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) other similarly situated employees were treated more favorably. *Marshall v. Indiana Dep't of Correction*, 973 F.3d 789, 791-92 (7th

Cir. 2020). Thereafter, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 792. "A pretext is a lie." *Id*.

**Summary of Argument**

6. Summary judgment in favor of Saud is appropriate in this case because there are no genuine issues of material fact that: (1) Saud was a member of a protected class; (2) he was meeting DePaul's legitimate expectations; (3) he suffered adverse employment action; and (4) other similarly situated employees were treated more favorably. Moreover, there are no genuine issues of material fact that each reason DePaul supplied for the adverse employment action it took is demonstrable pretext. Viewing the evidence as a whole, Saud has established a *prima facie* case of discrimination and the Court should grant summary judgment in his favor.

7. It cannot be disputed that Saud is Arab, and therefore a member of a protected race under § 1981. *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 614 (1987).

8. It cannot be disputed that Saud was meeting DePaul's legitimate expectations. He received "Good" or higher performance evaluations. He was recommended by his peers for speaking engagements, including by the Chair of the Religious Studies Department, Khaled Keshk. His courses were consistently filled to capacity and students were on waitlists to enroll in his courses. He was recommended for renewal of his contract in 2017. Prior to April of 2017, he had never been the subject of a misconduct complaint.

9. If the Court finds the matter in dispute, then review of this element should be merged with the fourth element of the indirect method of proof to determine whether Saud was treated differently from his comparators. *Rodgers v. White*, 657 F.3d 511, 517 (7th Cir. 2011) ("When a black employee produces evidence that he was disciplined more severely

than white employees who shared similar shortcomings, the second and fourth elements of the indirect method merge.")

10. There is no genuine issue of material fact that Saud was subjected to adverse employment action for several reasons. Contract non-renewal is an adverse employment action. *Darchak v. Chi. Bd. of Educ.*, 580 F.3d 622, 632 (7th Cir. 2009). Additionally, the failure to rehire or reappoint constitutes an adverse employment action under Title VII. See, e.g., *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 644 (7th Cir. 2006) (finding that plaintiff suffered adverse employment action when he was not reappointed as a professor); *Green v. E. Aurora Sch. Dist. No. 131*, 2009 WL 310913, at *4 (N.D. Ill. Feb. 5, 2009) (noting that plaintiff suffered an adverse employment action when he was not reappointed to a coaching position). Here, DePaul chose not to renew Saud's contract to teach as an adjunct in Autumn 2017, he was also determined ineligible for rehire and banned from DePaul events.

11. There is no genuine issue of material fact that Saud's white comparators were treated more favorably. Comparator A was accused of raping a student and, during OIDE's investigation into him, was treated more favorably than Saud. He was allowed to do his own "sleuthing", and the investigation was closed with no formal complaint opened or formal report of investigation rendered. Comparator A taught under the same supervisor as Saud and also had his term faculty contract canceled at the same time as Saud. Like Saud, Comparator A was offered an adjunct contract. Like Saud, he requested enhanced pay, only he requested more money than Saud did. Like Saud, his enhanced pay request was denied, but unlike Saud, he was given a standard adjunct contract.

4

12. Comparator B taught in a different department in LAS, but like Saud was accused of sexual harassment. Like Saud, Tamburro conducted the OIDE investigation. Unlike Saud, Tamburro interviewed and had the cooperation of the complainant. Unlike Saud, Tamburro proactively informed Comparator B that he could file a cross complaint against his accuser. When Saud had reached out to Tamburro to let her know he felt he had been the victim of misconduct, Tamburro ignored his complaint and did not investigate it. Comparator B was not disciplined by the Dean of LAS, but rather by the Chair of his department, and he was not banned from participating in DePaul events.

13. DePaul has proffered various shifting reasons for its decisions regarding Saud. 1) Saud was not given an adjunct contract because he requested too much money in "enhanced pay." 2) Saud (along with DePaul) was the target of a lawsuit, so he was not invited to return to adjunct. 3) Saud was not invited to return to adjunct because he was subject to complaints by other former female students apart from the lawsuit. 4) Saud lied to OIDE and so he was not brought back to adjunct and later in October 2017 was permanently banned. 5) Saud was permanently banned because he was found to have violated DePaul's ADAH policy. As elaborated in Plaintiffs Memorandum in Support of his Motion for Summary Judgment, there is no genuine issue of material fact that all of these reasons were pretext.

14. DePaul's treatment of Saud did not occur in a vacuum, but within the backdrop of a larger pattern at DePaul wherein faculty of color are discriminated against and OIDE is used as a tool to target them. In January of 2017, before any accusations against him, Saud facilitated and moderated a panel entitled "Muslim Civil Liberties in the Age of Trump." Blakley, DePaul's VP of Marketing and Communications, flagged the event to the President's "cabinet," including OIDE.

15. Shortly thereafter, on April 6, 2017, Campus Watch, a website that targets Arab academics and sympathizers published an article about Saud discussing Saud's Arab-American upbringing and his teaching at DePaul. DePaul contracts with a third party to search for and report all references to DePaul on the internet. It was only four (4) days later that DePaul received the lien letter sent by Martalogu's attorneys, and only three (3) days after that before OIDE was investigating Saud for two (2) false reports.

16. Saud's direct supervisor, Keshk, facilitated DePaul's discrimination because he wanted to keep his job safe. Keshk believed Saud would "throw [him] under the bus." Keshk was up for reappointment around the same time DePaul was taking steps to surreptitiously cancel his courses. When Saud first told him he was being investigated by OIDE, Keshk warned him DePaul would discriminate against him. Keshk consulted with DePaul's general counsel and other higher ups the same day he informed Saud he would not return to adjunct. Keshk testified the Dean's office was involved in determining whether to bring Saud back to adjunct because they are "always involved" in those decisions.

17. DePaul has engaged in a pattern of weaponizing OIDE against faculty of color. This includes in 2016, when faculty of color criticized the university administration's handling of student protests after a racist commentator was allowed to speak on campus, their comments were forwarded to OIDE. At least two of those faculty became the subject of OIDE investigations. OIDE's Schaffer acknowledged faculty of color have complained the OIDE process was weaponized against them. On one occasion, an African American faculty member brought a noose to her office in protest. On at least one occasion, an African American member of DePaul's own OIDE office complained of discrimination by Tamburro,

after Tamburro credited Schaffer's statements over hers.  That former employee also stated Tamburro treated white faculty more favorably than faculty of color during investigations.

### Request for Oral Argument

18.     Plaintiff respectfully also requests oral argument for his motion.  This is a factually complicated case and may require the parties to aid the court in understanding the facts and answering questions as they arise.  Plaintiff understands the Court's time is valuable.  In this case it may help save time to allow the parties to present oral arguments so that the Court can address any questions with them directly, rather than having to expend judicial resources examining a voluminous record on its own.

### CONCLUSION

For the foregoing reasons, and as elaborated in Plaintiff's Memorandum in Support of his Motion for Summary Judgment, Plaintiff LAITH SAUD respectfully requests the Honorable Court grant his Motion for Summary Judgment as to Defendant DEPAUL UNIVERSITY's liability for violating 42 USC § 1981.  Plaintiff also respectfully requests oral argument in this matter.

Dated: April 18, 2023

                                              Respectfully Submitted,

                                              /s/Christina Abraham

                                              Christina Abraham
                                              Attorney for the Plaintiff

Attorney No. 6298946
Christina Abraham, Esq.

Abraham Law & Consulting, LLC
161 N. Clark Street, Suite 1600
312-588-7150

## Certificate of Service

The undersigned attorney hereby certifies that she caused a copy of Plaintiff's Motion for Summary Judgment to be served upon the following parties listed below, via the Northern District of Illinois Electronic Case Management System to all parties registered for electronic service on April 18, 2023.

/s/Christina Abraham

Christina Abraham
Attorney for the Plaintiff

Attorney No. 6298946
Christina Abraham, Esq.
Abraham Law & Consulting, LLC
161 N. Clark Street, Suite 1600
312-588-7150